UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD J. ZALAC,

Plaintiff,

v.

CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise, JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC,. a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,

Defendants.

No. 2:12-cv-01474

VERIFICATION OF STATE COURT RECORDS

I am counsel for Defendants The Federal National Mortgage Association, JPMorgan Chase Bank, N.A.[1] (improperly captioned as "JPMorgan Chase, a National Association d/b/a Chase Home Finance, LLC"), and Mortgage Electronic Registration System, Inc. in the above-captioned action. I hereby verify, pursuant to Local Rule 101, that true and correct copies of all pleadings and other papers filed in the King County Superior Court action are

[1] JPMorgan Chase Bank, N.S. is not the 'does business name' of Chase Home Finance, LLC. However, it is the successor by merger to Chase Home Finance, LLC, which no longer exists.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

attached hereto Exhibit A. This verification is being filed within ten days of the filing of the Notice of Removal pursuant to Local Rule 101.

DATED this 29th day of August, 2012.

Davis Wright Tremaine LLP
Attorneys for Defendants JPMorgan Chase, Mortgage Electric Registration Systems, Inc., and the Federal National Mortgage Association

By */s/ William Rasmussen*
*/s/ Matthew Sullivan*
William Rasmussen, WSBA #20029
Matthew Sullivan, WSBA # 40873
Suite 2200, 1201 Third Avenue
Seattle, Washington 98101-3045
Tel: (206) 757-8257
Fax: (206) 757-7257
E-mail: billrasmussen@dwt.com
E-mail: matthewsullivan@dwt.com

VERIFICATION OF
STATE COURT RECORDS— 2
DWT 20238257v2 0036234-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

CERTIFICATE OF SERVICE

I declare under penalty of perjury that on this day I caused a copy of the foregoing Corporate Disclosure Statement to be served upon the following:

| | | |
|---|---|---|
| Mr. Richard l. Jones | ( ) | By U. S. Mail |
| Kovac & Jones PLLC | ( x ) | By E-Mail |
| 2050 – 112th Avenue NE, Suite 230 | ( ) | By Facsimile |
| Bellevue, WA 98004 | ( x ) | By Messenger |
| | | |
| Ms. Heidi E. Buck | ( ) | By U. S. Mail |
| Routh Crabtree Olsen, P.S. | ( x ) | By E-Mail |
| 13555 SE 36th Ave NE, Ste 230 | ( ) | By Facsimile |
| Bellevue, WA 98004 | ( x ) | By Messenger |
| | | |
| Mr. Tim J. Filer | ( ) | By U. S. Mail |
| Mr. Neil A. Dial | ( x ) | By E-Mail |
| Foster Pepper PLLC | ( ) | By Facsimile |
| 1111 Third Avenue, Suite 3400 | ( x ) | By Messenger |
| Seattle, WA 98004 | | |

Declared under penalty of perjury under the laws of the state of Washington dated at Seattle, Washington this 29th day of August, 2012.

*/s/ Rochelle J. Kraft*
Rochelle J. Kraft

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# EXHIBIT A

FILED
12 JUL 12 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| RICHARD J. ZALAC, Plaintiff, v. CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants. | **NO.** **COMPLAINT** *(Clerk's Action Required)* |
|---|---|

**COMES NOW** the Plaintiff, RICHARD J. ZALAC, by and through his attorneys, KOVAC & JONES, PLLC, and files this Complaint against the Defendants, hereby alleging as follows:

## I. PARTIES

1.1 *Plaintiff Richard J. Zalac.* Plaintiff Richard J. Zalac is now and was at all times herein mentioned a resident in King County, Washington. Said Plaintiff is the owner of certain

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

real property situated in King County, State of Washington, commonly described as 40115 - 278th Way Southeast, Enumclaw, WA 98022, which is Plaintiff's primary residence.

Legal Description:

THE SOUTH 150 FEET OF THE NORTH 490 FEET OF THE EAST 240 FEET OF THAT PORTION OF GOVERNMENT LOT 1, SECTION 7, TOWNSHIP 20 NORTH, RANGE 7 EAST, W.M., IN KING COUNTY, WASHINGTON, LYING WESTERLY OF 278TH WAY SOUTHEAST (ALSO KNOWN AS 278TH PLACE SOUTHEAST).

1.2 *Defendant CTX MORTGAGE COMPANY, LLC.* Defendant, CTX MORTGAGE COMPANY, LLC (hereinafter "CTX") is a corporation organized under the laws of the State of Delaware. CTX maintains a registered agent in Olympia, Washington.

1.3 *Defendant Federal National Mortgage Association.* Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION (hereinafter "Fannie Mae"), is a United States government sponsored enterprise. Fannie Mae conducts business within the State of Washington.

1.4 *Defendant JPMorgan Chase Bank, NA.* Defendant, JP MORGAN CHASE BANK, NA (hereinafter "Chase") is a chartered national bank with headquarters in Columbus, Ohio. Said Defendant conducts business in the State of Washington under the name and style of CHASE HOME FINANCE, LLC, which is believed to be, and therefore alleged to be, a wholly owned subsidiary/division of Chase.

1.5 *Defendant Mortgage Electronic Registration Systems, Inc.* Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (hereinafter "MERS") is a corporation organized and existing under the laws of the state of Delaware.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1.6 *Defendant Northwest Trustee Services, Inc.* Defendant, NORTHWEST TRUSTEE SERVICES, INC., (hereinafter "Northwest Trustee") is a corporation organized and existing under the laws of the State of Washington.

1.7 *Doe Defendants.* Doe Defendants 1-10 were at all times mentioned herein, the Defendants, and each of them, were the principals, successors or assigns, agents, servants, representatives and/or employees of each of the remaining Defendants and were acting within the course and scope of such agency or employment. The exact terms and conditions of any succession, assignment, agency, representation or employment relationships are presently unknown to Plaintiff, but when the information is ascertained, leave of court will be sought to insert the appropriate allegations.

1.8 No party named herein is a minor, in the military service of the United States, as defined by the Soldier's and Sailor's Relief Act of 1942, as subsequently amended and re-codified under the Service Members Civil Relief Act, or otherwise incompetent.

1.9 At all times relevant to this cause of action, the above-named Defendants acted, aided and abetted, for and on behalf of themselves, each other, their principals, agents, successors, assigns and, where appropriate, their respective marital communities. Plaintiff asserts claims for civil conspiracy and joint venture liability based upon the facts of this action.

## II. JURISDICTION AND VENUE

2.1 Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

2.2 This Court has jurisdiction over the parties to this complaint because at all times relevant the parties were either residents of the State of Washington, were incorporated under

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

the laws of the State of Washington, or were subject to *RCW 23B.18, et seq*, committed or directed improper, tortious, or fraudulent acts against Plaintiff's interest in the Property, or claimed some interest (whether valid or not) in the Property which is located in King County, Washington, pursuant to *RCW 4.28.185* and *RCW 23B.18.060.*

2.3 The above-entitled Court has jurisdiction over the subject matter of this action.

2.4 Venue is properly placed in this Court by the fact the real property that is the subject matter of this action is located in King County, Washington. *RCW 4.12.010(1).*

## III. FACTS

3.1 Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

3.2 On June 10, 2005, Plaintiff executed a Promissory Note in favor of CTX as lender and the party entitled to payments according to its terms. A true and correct copy of said Note is attached here and incorporated herein by this reference as ***Exhibit "A"***. This transaction was purportedly registered with MERS by CTX under MIN No. 100015902206280560. To secure repayment of the Promissory Note, Plaintiff, as grantor, executed a Deed of Trust. Stewart Title was named the trustee. MERS was named the beneficiary, as nominee for the lender. CTX was identified as the lender. This instrument was recorded under King County Auditor's Receiving No. 20050615002158, encumbering the property. A true and correct copy of said Deed of Trust is attached here and incorporated herein by this reference as ***Exhibit "B."***

3.3 Plaintiff alleges that the terms of the subject Deed of Trust constituted a contract of adhesion in that Plaintiff understood that he was not allowed to modify or re-negotiate any of the terms of the Deed of Trust at time of closing.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

3.4 As of June 10, 2005, and at no time subsequent to June 10, 2005 did Plaintiff owe any monetary or other obligation to MERS, nor has MERS ever been a holder of the subject Promissory Note or other evidence of debt executed contemporaneously with the subject Deed of Trust referenced in Paragraph 3.2, as the term is defined under *RCW 61.24.005(2).*

3.5 In a letter dated August 11, 2005, Plaintiff was notified by Countrywide Home Loans Servicing LP that servicing of his loan was being transferred from CTX to Countrywide Home Loans Servicing LP as of September 1, 2005. Plaintiff received no information regarding any change in ownership of the Note. A true and correct copy of said notice is attached here and incorporated herein by this reference as ***Exhibit "C."*** At this time, Plaintiff reasonably believed that the holder of the subject Promissory Note, as defined under *RCW 61.24.005(2),* remained CTX.

3.6 In a letter dated October 12, 2006, Plaintiff was informed that his loan servicing was again being transferred from Countrywide Home Loans Servicing, LP, to JP Morgan Chase Bank, NA as of November 1, 2006. Again, Plaintiff received no information regarding any change in ownership of the subject Promissory Note. A true and correct copy of said notice is attached here and incorporated herein by this reference as ***Exhibit "D."*** At this time, Plaintiff reasonably believed that the holder of the subject Promissory Note, as defined under *RCW 61.24.005(2),* remained CTX.

3.7 On or about January 25, 2011, Plaintiff learned for the first time that Fannie Mae claimed to be the owner of the subject Promissory Note and loan. A printed copy of Fannie Mae's web page, dated January 25, 2011, evidencing their alleged ownership of the loan is attached here and incorporated herein by this reference as ***Exhibit "E".***

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

3.8 On or about March 28, 2011, Northwest Trustee issued a Notice of Default to Plaintiff, as "duly authorized agent" for Chase. Said Notice of Default was defective in several regards. First, said Notice of Default deceptively and deliberately confused the "beneficiary" with the "note owner" and the "note holder, as the term is defined under *RCW 61.24, et seq.* Specifically, said Notice of Default identifies the "beneficiary (Note Owner)" as "Chase Home Finance LLC." Upon information and belief, Northwest Trustee knew or should have known that neither Chase nor "Chase Home Finance LLC" was the owner or holder of the subject Note and Deed of Trust on March 28, 2011. See Paragraph 3.7, above. Second, the Notice of Default does not identify the "note holder", as the term is defined in *RCW 61.24, et seq*. Third, the Notice of Default includes, by attachment, a "Beneficiary Declaration," that is defective in several particulars. The Declaration fails to identify the beneficiary, as required under *RCW 61.24, et seq*., and fails to support Northwest Trustee's allegation that Chase or "Chase Home Finance LLC" was the owner or holder of the subject Note on March 28, 2011. Moreover, the Declaration contains only a printed image of the signature of the allegedly declarant, Casey Hodges, who apparently affixed the image of his/her signature, or permitted, or had appropriated said image to be printed or affixed on his/her behalf to said Beneficiary Declaration in his/her capacity as an authorized signatory for Chase, making it doubtful that Casey Hodges ever read or reviewed anything relating to the holder of the Note, which Chase clearly was not. A true and correct copy of said Notice of Default, with the Beneficiary Declaration, is attached hereto and incorporated herein by this reference as ***Exhibit "F"***. By issuance of a defective Notice of Default, as alleged hereinabove, and reliance on a patently defective Beneficiary Declaration, Northwest Trustee violated its duty of good faith, pursuant to *RCW 61.24.010*.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

3.9 In a letter dated April 14, 2011, from Chase to Plaintiff, Chase unambiguously stated that Plaintiff's loan was sold into a public security managed by Fannie Mae. A true and correct copy of said letter dated April 14, 2011 is attached here and incorporated herein by this reference as ***Exhibit "G".*** By its own admission, neither Chase nor any of its affiliates, ever owned the subject Note or Deed of Trust, in contradiction to the allegation contained in Defendants' Notice of Default of March 28, 2011 and attached Beneficiary Declaration. Upon information and belief, no Defendant named herein has acted with authority from the true holder of the subject Note and Deed of Trust, in violation of the provisions of *RCW 61.24, et seq.*

3.10 On February 3, 2012, an Assignment of the Deed of Trust was allegedly executed by MERS. Said Assignment was purportedly executed by Paula S. Gardner, an Assistant Secretary for MERS, in Franklin County, Ohio, assigning all beneficial interest under the Deed of Trust to Chase on February 3, 2012. Upon information and belief, Paula S. Gardner was an employee of Chase on February 3, 2012, not MERS, as she alleges. Said Assignment was notarized the same date by Robert D. Williams, a Notary Public for the State of Ohio. Said Assignment was recorded April 9, 2012, under King County Recording No. 20120409000591. A true and correct copy of said Assignment of Deed of Trust is attached hereto and incorporated herein by this reference as ***Exhibit "H".*** Remarkably, this Assignment of Deed of Trust refers to different MERS registration number (MIN No. 100015902206280578) than appears on the Deed of Trust, raising the inference that the document relates to another transaction. At no time relevant to this cause of action did MERS have an interest in the subject Note and the Assignment fails to specify the party on whose behalf it claims to act and makes no mention of its limited authority, as stated in the Deed of Trust. Upon information and belief, MERS executed this Assignment without the authority of its undisclosed principal, the true holder of

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

the Note and Deed of Trust. Further, upon information and belief, said Assignment of Deed of Trust was prepared by Northwest Trustee, not MERS.

3.11 On March 31, 2012, an Appointment of Successor Trustee was executed by Chase, appointing Northwest Trustee as successor trustee under the subject Deed of Trust. Said appointment was executed by Douglas Theener in his capacity as Vice President for Defendant Chase, falsely claiming its authority to do so as the "present beneficiary" of Plaintiff's Deed of Trust. Said Appointment of Successor Trustee was recorded April 9, 2012 under King County Recording No. 20120409000592. A true and correct copy of said Appointment of Successor Trustee is attached hereto and incorporated herein by this reference as ***Exhibit "I."*** Upon information and belief, said Assignment of Deed of Trust was prepared by Northwest Trustee.

3.12 On April 13, 2012, Northwest Trustee executed a Notice of Trustee's Sale, setting a sale date for July 20, 2012. This instrument was recorded under King County Recorder's instrument No. 20120417000698. A true and correct copy of said document is attached here and incorporated herein by this reference as ***Exhibit "J".*** Upon information and belief, said Notice of Trustee's Sale was executed and recorded without the authority of the true holder of the Note and owner of the Deed of Trust, in violation of *RCW 61.24, et seq.*, in violation of Northwest Trustee's duty of good faith, under *RCW 61.24.010.*

3.13 Based upon the foregoing, Plaintiff alleges that Chase is not the legal owner of the Note and Deed of Trust and that Northwest Trustee was wrongfully attempting to enforce the Note and Deed of Trust at the time the Notice of Default and Notice of Trustee's Sale was issued.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## IV. CAUSE OF ACTION FOR WRONGFUL FORECLOSURE

4.1 Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

4.2 At no time relevant to this cause of action did MERS ever hold the subject Promissory Note or otherwise meet the definition of "Beneficiary" under *RCW 61.24.005*. Therefore MERS had no right to initiate a foreclosure of the Deed of Trust or legally assign such right, since that right is specifically reserved to the owner and holder of the subject Promissory Note. It is Plaintiffs' contention, based upon the foregoing, that the subject transaction is nothing more than a sham and therefore the assignment of the Deed of Trust from MERS to any assignee, including the Defendants named herein, is invalid.

4.3 *RCW 61.24.010* states that "the trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."

4.4 *RCW 61.24.020* requires that only those deeds of trust that "secure the performance of an obligation of the grantor or another to the beneficiary may be foreclosed by trustee's sale." At no time relevant to this cause of action was Plaintiff obligated to perform any obligation to MERS.

4.5 Plaintiff alleges that Chase was not the holder of obligation at the time the Notice of Default was issued, in violation of *RCW 61.24.020*. Defendant Northwest Trustee knew or should have known the holder of the obligation prior to engaging in any foreclosure or collection activity under the duty of good faith required by *RCW 61.24.010*.

4.6 Plaintiff alleges that the use of MERS was intended to enable Chase to conceal the true ownership of the obligation and that MERS, Chase and Northwest Trustee knew, or should have known, of this intention. As a result of this conduct, Plaintiff was deprived of

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

information to which he is legally entitled under state and federal law that would facilitate his ability to contest the validity of or negotiate the balance of the underlying obligation.

4.7 Based upon the facts alleged herein the Defendants have engaged in a wrongful foreclosure action against the Plaintiff and Defendants' foreclosure efforts sale should be enjoined, pursuant to *RCW 61.24.130.*

## V. CAUSE OF ACTION VIOLATION OF CONSUMER PROTECTION ACT

5.1 Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

5.2 Defendants Chase, Northwest Trustee and MERS have violated the Consumer Protection Act, *RCW 19.86, et seq.,* through a course of conduct in recording and relying upon documents that it knew or should have known to be false and that have the capacity to deceive a substantial portion of the public.

5.3 Plaintiff specifically alleges that the identification of Chase as the "holder" of the Note in the Notice of Default and Notice of Trustee's Sale was deceptive when Chase and Northwest Trustee knew or should have known that the actual holder was Fannie Mae or a yet unidentified securitized trust purportedly managed by Fannie Mae.

5.4 Plaintiff also alleges that MERS acted deceptively when it purports to act as "the beneficiary under [the] security instrument", when it knows or should know that under Washington law it must hold the Note to be the beneficiary, under *RCW 61.24.005(2).*

5.5 In promulgating false and improperly executed documents, Defendants are engaged in deceptive acts.

5.6 Defendants have violated various provisions of *RCW 61.24*, which constitutes *per se* violations of *RCW 19.86.*

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

5.7 Defendants have engaged in these activities as part of a normal course of business and commerce. Such activities are likely to be repeated affecting the people of the State of Washington as each Defendant has engaged in similar transactions with thousands of residents of the state.

5.8 The public interest is negatively impacted by the pattern of conduct engaged in by Defendants. Additionally, each Defendant has engaged in similar transactions with thousands of residents of the State of Washington.

5.9 As a direct and proximate result of Defendants' misconduct, as alleged herein, Plaintiff has suffered injury and damages in an amount to be proven at time of trial, in addition the distraction and loss of time to pursue business and personal activities due to the necessity of addressing the wrongful conduct through this and other actions. These injuries are solely the result of the conduct of the Defendants in this action.

## VI. RESERVATION OF CLAIMS

Plaintiff specifically reserves the right to amend his claims against Defendant to assert claims for declaratory relief, fraud and misrepresentation, quite title, trespass, violation of the Fair Debt Collection Practices Act, and violation of *RCW 9A.82, et seq.*

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

7.1 For declaratory relief, declaring the actions of the above-named Defendants against Plaintiff to be void and unlawful.

7.2 That judgment be entered against the Defendants, jointly and severally, for all damages directly and proximately caused by Defendants' misconduct, as alleged herein, in an amount to be proven at the time of trial;

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

7.3 That Defendant's foreclosure efforts against Plaintiff be permanently enjoined.

7.4 That the actions of some or all of the Defendants be determined to be unfair and deceptive business practices in violation of *RCW 19.86, et seq.* and that this Court award all such relief to Plaintiff as they may be entitled, including treble damages and an award for costs and attorneys fees;

7.5 That the Plaintiff be awarded consequential damages, including attorney's fees incurred to bring this action and all other attorney's fees incurred in defending against the actions of the Defendants described more particularly above, in an amount to be proved at trial;

7.6 That the Plaintiff have such other and further relief as may be just and equitable, including but not limited to an injunction blocking the sale currently scheduled for July 20, 2012.

**DATED** this 17th day of July, 2012.

**KOVAC & JONES, PLLC.**

Richard Llewelyn Jones, WSBA # 12904
Attorney for Plaintiff

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br>Plaintiff,<br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,<br>Defendants. | No.<br><br>VERIFICATION OF COMPLAINT<br><br>*(Clerk's Action Required)* |

**I, RICHARD J. ZALAC** , hereby declare as follows:

1. I am the Plaintiff named in the above-captioned matter.

2. I have read the Summons and Complaint filed herein, know the contents thereof, and believe the same to be true.

3. I declare, under penalty of perjury under the laws of the State of Washington, that the foregoing is true and correct to the best of my knowledge.

**DATED** this 11 TH day of July, 2012.

Richard J. Zalac

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

# Exhibit "A"

220628056
100015902206280560

# NOTE

| JUNE 10, 2005 | KENT | WASHINGTON |
| --- | --- | --- |
| [Date] | [City] | [State] |

40115 278TH WAY SOUTHEAST
ENUMCLAW, WA 98022
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 352,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

CTX MORTGAGE COMPANY, LLC .

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on 8/01/2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 7/01/2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 650269
DALLAS, TX 75265-0269 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 2,029.19 .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.



220628056

5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other oan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Preseutment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.




220628056

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

RICHARD J. ZALAC _____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

*[Sign Original Only]*

# Exhibit "B"

Return To:

CTX MORTGAGE COMPANY, LLC
P.O. Box 199113, FINAL DOCS
Dallas, TX 75219

Assessor's Parcel or Account Number: 072007 9037 00
Abbreviated Legal Description: PTN. GOV. LOT 1, 7-20-07E

[Include lot, block and plat or section, township and range] Full legal description located on page 3 .
Trustee: STEWART TITLE
18000 INTERNATIONAL BLVD, SOUTH,STE #510 Additional Grantees located on page 2 .
SEATAC,, WASHINGTON 98188

[Space Above This Line For Recording Data]

220628056

# DEED OF TRUST

MIN 100015902206280560

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated 6/10/2005 , together with all Riders to this document.

(B) **"Borrower"** is
RICHARD J. ZALAC A MARRIED MAN, AS HIS SEPARATE ESTATE
SARAH A. ZALAC TO PERFECT LIEN

Borrower is the trustor under this Security Instrument.

(C) **"Lender"** is
CTX MORTGAGE COMPANY, LLC .

220628056

Lender is a A LIMITED LIABILITY COMPANY
organized and existing under the laws of THE STATE OF DELAWARE .
Lender's address is 2828 NORTH HARWOOD
DALLAS, TX 75201-1516 .
(D) "Trustee" is STEWART TITLE
18000 INTERNATIONAL BLVD, SOUTH,STE #510, SEATAC,, WASHINGTON 98188 .

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated 6/10/2005 . The Note states that Borrower owes Lender THREE HUNDRED FIFTY TWO THOUSAND FIVE HUNDRED & 00/100 Dollars (U.S. $ 352,500.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 7/01/2035 .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

P+220628056+CF001+02+15+061005 1438

220628056

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of KING [Name of Recording Jurisdiction]:

THE SOUTH 150 FEET OF THE NORTH 490 FEET OF THE EAST 240 FEET OF THAT PORTION OF GOVERNMENT LOT 1, SECTION 7, TOWNSHIP 20 NORTH, RANGE 7 EAST, W.M., IN KING COUNTY, WASHINGTON, LYING WESTERLY OF 278TH WAY SOUTHEAAST (ALSO KNOWN AS 278TH PLACE SOUTHEAST)

Parcel ID Number: 072007 9037 00 which currently has the address of 40115 278TH WAY SOUTHEAST [Street] ENUMCLAW [City], Washington 98022 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

220628056

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance

P + 2 2 0 6 2 8 0 5 6 + C F 0 0 1 + 0 4 + 1 5 + 0 6 1 0 0 5 1 4 3 8

premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.



Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and sball be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source

P + 2 2 0 6 2 8 0 5 6 + C F 0 0 1 + 0 8 + 1 5 + 0 6 1 0 0 5 1 4 3 8

of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's



notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and

expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified

P + 2 2 0 6 2 8 0 5 6 + C F 0 0 1 + 1 2 + 1 5 + 0 6 1 0 0 5 1 4 3 8

by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

P+220628056+CF001+13+15+0610051438

220628056

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

______________________ _______________________ (Seal)
RICHARD J. ZALAC -Borrower

______________________ _______________________ (Seal)
SARAH A. ZALAC -Borrower
TO PERFECT LIEN

_______________________ (Seal) -Borrower _______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower _______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower _______________________ (Seal) -Borrower

220628056

STATE OF WASHINGTON
County of } ss:

On this day personally appeared before me

RICHARD J. ZALAC
SARAH A. ZALAC TO PERFECT LIEN

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this day of .

Notary Public in and for the State of Washington, residing at

My Appointment Expires on

# Exhibit "C"

CTX Mortgage Company
PO Box 199077
Dallas, TX 75219-9077

CTX MORTGAGE COMPANY®
A SUBSIDIARY OF CENTEX FINANCIAL SERVICES

August 11, 2005

ATTENCION
Si necesita ayuda en interpretar esta carta. Favor de llamar a Customer Service al 1-800-666-5363.

3636

Richard J. Zalac
40115 278th Way Southeast
Enumclaw WA 98022

RE: CTX Loan # 0220628056

Dear Borrower:

Please be advised that your new home loan has been transferred by CTX Mortgage Company, LLC to Countrywide Home Loans LP for future servicing effective with your 09/01/05 installment. This is a common practice in the mortgage industry and has no effect on the terms and conditions of your mortgage. Your escrow requirement may be reanalyzed sometime in the near future; however, your first payment to Countrywide Home Loans LP will remain the same. Your Countrywide Home Loans LP account number is # 71498939.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or at closing.

If you have any questions relating to the transfer of servicing from CTX Mortgage Company, LLC, please do not hesitate to contact us at 1-800-666-5363 between the hours of 8:00 AM to 5:00 PM Central Standard Time Monday through Friday.

Countrywide Home Loans LP will be your new servicer. The business addresses for Countrywide Home Loans LP are:

Send Monthly Payment to:
Countrywide Home Loans LP
Payment Processing
Po Box 10334
Van Nuys, CA 91410-0334
1-800-437-5760

Customer Service Inquiries:
Countrywide Home Loans LP
Po Box 10219
Van Nuys, CA 91410-0219
1-800-437-5760

Countrywide Home Loans LP's Customer Service Department will assist you with questions relating to your mortgage loan and can be contacted toll free at 1-800-437-5760 during the following days and times:

| Days | Times |
|---|---|
| Monday through Friday | 06:00 AM to 05:00 PM Pacific Time |

All written inquiries should be sent to the Customer Service address listed above.

999/3636

# Exhibit "D"



HOME LOANS
P.O. Box 10229
Van Nuys CA 91410-0229

Send Correspondence to:
P.O. Box 5170
Simi Valley CA 93062-5170

Business Address:
450 American Street
Simi Valley CA 93065-6285

**Notice Date:** October 12, 2006

**Account No.:** 71498939
**Property Address:**
40115 278th Way Southeast
Enumclaw, WA

Richard J. Zalac
40115 278th Way Se
Enumclaw, WA 98022-7742

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from **Countrywide Home Loans** to CHASE HOME FINANCE LLC, effective **November 1, 2006**.

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any terms or conditions of the mortgage instruments, other than the terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your *present servicer* send you this notice at least 15 days before the effective date of transfer, or at closing. Your *new servicer* must also send you this notice no later than 15 days after this effective date or at closing.

## YOUR *PRESENT* SERVICER:

Your *present servicer* is **Countrywide.** If you have any questions relating to the transfer of servicing from **Countrywide** call Customer Service, toll-free, at 1-800-669-6607 between 6:00 a.m. and 5:00 p.m. Pacific Time, Monday through Friday.

## YOUR *NEW SERVICER* CONTACT AND PAYMENT REMITTANCE ADDRESS:

Your *new servicer* will be CHASE HOME FINANCE LLC. The business address for your *new servicer* is: 3415 Vision Dr., Columbus, OH 43219. The address to send correspondence is: Attention: Customer Service, P.O. BOX 24696, Columbus, OH 43224-0696. Payments are to be received at: P.O. Box 78420, Phoenix, AZ 85062-8420. The toll-free telephone number of your new servicer is 1-800-848-9136. If you have any questions relating to the transfer of servicing to your new servicer call CHASE HOME FINANCE LLC, Attention: Customer Service toll-free at 1-800-848-9136 between 8:00 a.m. and 8:00 p.m., Eastem Time, Monday through Friday. Your complete loan file is being transferred to your *new servicer.*

## INFORMATION CONCERNING YOUR PAYMENTS:

**The date** that **Countrywide** will stop accepting payments from you is **October 31, 2006. The date** that your ***new servicer*** **CHASE HOME FINANCE LLC** will start accepting payments from you is November 1, 2006. Send all payments on or after that date to your *new servicer.* Your *new servicer* will send you new billing statements. If you have a payment due before you receive your new billing statement, **write your *new* servicer's loan number** on your check and mail it to your *new servicer* at the payment address shown above. Until you receive a new loan number, you may write your old loan number on the check.

If your payments were made by electronic debit, please contact your *new servicer* concerning the continuation of this service. Additionally, if your payments include a premium for life or disability insurance, or any other type of **optional insurance,** you will receive notification at a later date from your *new servicer* if there are any changes concerning the terms or continued availability of this insurance.

## OTHER INFORMATION FROM COUNTRYWIDE:

**Countrywide** will provide you within 60 days of the transfer a statement that shows all loan transactions from the date of your last year-end statement or escrow analysis to the date of transfer. If any check or other instrument received by **Countrywide** is/was retumed unpaid, you remain liable to **Countrywide** for the amount unpaid. At year-end, you will receive a statement of account from Countrywide for payments received and applied to your account through October 31, 2006. This statement is for your use when preparing your tax return. If you have any questions, please contact **Countrywide** at the toll-free number listed above.

Sincerely,

April Rush

## BORROWER'S RIGHTS

You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding Countrywide's servicing of your loan, it must be sent to the following address:

**Countrywide Home Loans Servicing LP**
**Monthly Statements SV3-14B**
**P.O. Box 5170**
**Simi Valley, CA 93062-5170**

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business-Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

# Exhibit "E"



The Fannie Mae Loan Lookup enables mortgage borrowers to quickly determine if Fannie Mae owns their loan by providing a street address, unit, city, state, and ZIP code.

Street Address * 40116 278th Way SE
Unit
City ENUMCLAW
State WA 
Zip Code * 98022

888-995-HOPE
Homeowner's HOPE Hotline
888-995-HOPE (4673)
877-304-9709 TTY

[ ] * I confirm that I am the owner of this property, or have the consent of the owner to look up this information.

* Required Fields

Type the two words:

If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673) or via a TTY at 877-304-9709. The Hotline can help with questions about the program and offers free HUD-certified counseling services in English, Spanish, and other languages.

**Know Your Options - Avoid Foreclosure**

Learn more about avoiding foreclosure and how you can have a more informed discussion with your mortgage company.

Visit: KnowYourOptions.com

Match Found.

Based on the property information entered, it appears Fannie Mae owns a loan at this address.

A "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification.

If you're interested in a refinance, please contact your mortgage lender or servicer (the organization to whom you make your monthly mortgage payments) to confirm these results and ask about the *Home Affordable Refinance Plus* program.

You can find more information at MakingHomeAffordable.gov.

View Frequently Asked Questions for this Loan Lookup tool.

Thank you for contacting Fannie Mae.

The Fannie Mae Loan Lookup is provided as a convenience for borrowers. Fannie Mae makes no representation, warranty, or guarantee regarding the accuracy or completeness of the results. A search that results in a "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification. Information that does not match our records exactly may return inaccurate results. You should contact your mortgage lender to verify these results.

For information about the use of our site and our privacy policy, see Legal Information. Click here for FAQs.

© 2010 Fannie Mae

- FAQ |
- Site Map |
- Privacy |
- Legal

1/25/2011

# Exhibit "F"

# Notice of Default

To:

Richard J. Zalac
40115 278th Way SE
Enumclaw, WA 98022

Sarah A. Zalac
40115 278th Way SE
Enumclaw, WA 98022

Regarding the real property "Property" located at:

**Property Address:**
40115 278TH Way SE
Enumclaw, WA 98022

**If you are the owner of this property and you occupy it as your residence, you should take care to protect your interest in your home. This notice of default (your failure to pay or otherwise perform) is the first step in a process that could result in you losing your home. You should carefully review your options. For example:**

**Can you pay and stop the foreclosure process?**
**Do you dispute the failure to pay?**
**Can you sell your property to preserve your equity?**
**Are you able to refinance this loan or obligation with a new loan or obligation from another lender with payments, terms, and fees that are more affordable?**
**Do you qualify for any government or private homeowner assistance programs?**
**Do you know if filing for bankruptcy is an option? What are the pros and cons of doing so?**

**Do not ignore this notice; because if you do nothing, you could lose your home at a foreclosure sale. (No foreclosure sale can be held any sooner than ninety days after a notice of sale is issued and a notice of sale annot be issued until thirty days after this notice.) Also, if you do nothing to pay what you owe, be careful of people who claim they can help you. There are many individuals and businesses that watch for the notices of sale in order to unfairly profit as a result of borrowers' distress.**

**You may feel you need help understanding what to do. There are a number of professional resources available, including home loan counselors and attorneys, who may assist you. Many legal services are lower-cost or even free, depending on your ability to pay. If you desire legal help in understanding your options or handling this default, you may obtain a referral (at no charge) by contacting the county bar association in the county where your home is located. These legal referral services also provide information about lower-cost or free legal services for those who qualify. You may contact the Department of Financial Institutions or the statewide civil legal aid hotline for possible assistance or referrals.**

A) **Property description:**

The South 150 feet of the North 490 feet of the East 240 feet of that portion of Government Lot 1, Section 7, Township 20 North, Range 7 East, W.M., in King County, Washington, lying Westerly of 278th Way Southeast (also known as 278th Place Southeast)

B) **Deed of Trust information:** King County Auditor's File No.: 20050615002158; Recording Date: 06/15/05

C) **Declaration of payment default:** The beneficiary declares you in default for failing to make payments as required by your note and deed of trust.

**D) Itemized account of the arrears:**

| | |
|---|---|
| Delinquent monthly payments beginning with the 11/01/10 installment. | $12,906.50 |
| Late charges: | $507.30 |
| Lender's Fees and Costs | $28.00 |
| Trustee's fees | $607.50 |
| Costs | |
| Title report (estimate) | $1,153.04 |
| Recording | $30.00 |
| Certified mail | $22.00 |
| Posting | $70.00 |
| **Total arrears and costs due today** | **$15,324.34** |

**E) Itemized account of all other specific charges, costs or fees that grantor or borrower is or may be obliged to pay to reinstate the deed of trust before the recording of the notice of sale.**

| | |
|---|---|
| Additional monthly payment | $2,581.30 |
| Additional late charge | $101.46 |

**F) <u>Amount required to cure payment defaults before notice of sale recorded</u>: $17,977.10**
**In addition, grantor or borrower must timely cure all other defaults before the note and deed of trust are deemed reinstated.**

***Payments and late charges continue to accrue and additional advances may be made. <u>The sums stated above are estimates only</u>. Before attempting to reinstate the loan, call us at 425-586-1900 to learn the exact amounts of monetary defaults and actions required to cure possible other defaults.***

**G) Effect of failure to cure:** Failure to cure all alleged defaults within 30 days of mailing/personal service of this notice may lead to recordation, transmittal and publication of a notice of sale and the Property may be sold at public auction no less than 120 days from the date of this notice.

**H) Effect of recording, transmitting and publication of the notice of sale:** The effect of the recordation, transmittal and publication of the notice of sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property for sale.

**I) Effect of sale of the Property:** The Trustee's sale of the Property will deprive the borrower, grantor and any successor in interest of all their interest in the Property.

**J) Recourse to courts:** The borrower, grantor, any guarantor or any successor in interest has recourse to the courts pursuant to RCW 61.24.130 to contest the default(s) on any proper ground.

**K) Contact Information for Beneficiary (Note Owner) and Loan Servicer.**

The beneficiary of the deed of trust is **Chase Home Finance LLC**, whose address and telephone number are:

10790 Rancho Bernardo Rd
San Diego, CA 92127
800-848-9380

The loan servicer for this loan is Chase Home Finance, LLC, whose address and telephone number are:

800 Brooksedge Boulevard
Westerville, OH 43081
800-848-9380

**L) Notice pursuant to the Federal Fair Debt Collection Practices Act:** If you are the consumer who originally contracted the debt or if you assumed the debt, then you are notified that:

1. As of the date of this notice you owe $335,104.39. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information, write to the address provided in Section 5 below or call us at 425-586-1900.
2. The creditor to whom the debt is owed Chase Home Finance LLC/Chase Home Finance, LLC.
3. Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid.
4. If you notify us within 30 days after receipt of this notice that you dispute the debt or any part of it, we will request that the creditor obtain verification of the debt and mail it to you.
5. If you request within 30 days after receipt of this notice, we will request that the creditor provide you with the name and address of the original creditor, if different from the current creditor.
6. Written requests should be addressed to Northwest Trustee Services, Inc., Post Office Box 997, Bellevue, WA 98009-0997.

**Dated: March 28, 2011**

Chase Home Finance LLC
By Northwest Trustee Services, Inc., its duly authorized agent

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA 98009-0997

**File No:** 7037.75897
**Borrower:** Zalac, Richard J. and Sarah A.
**Client:** Chase Home Finance, LLC

'ECKY BAKER
425-586-1900
FAX 425-586-1997

# BENEFICIARY DECLARATION PURSUANT TO CHAPTER 61.24 RCW (SB 5810) AND "FORECLOSURE LOSS MITIGATION FORM

Borrower(s): RICHARD J ZALAC
Beneficiary:
Loan Servicer: JP MORGAN CHASE BANK NA
Property: 40115 278TH WAY SE
ENUMCLAW WA 98022
Loan No.: 1981157427

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that [check the applicable box and fill in any blanks so that the trustee can insert, on the beneficiary's behalf, the applicable declaration in the notice of default required under chapter 61.24 RCW as specified in SB 5810 ("this act")]: Regarding the above-referenced loan (check applicable box "only ONE choice should apply):

[ ] (1) The beneficiary or beneficiary's authorized agent has contacted the borrower under, and has complied with, section 2 of this act (contact provision to "assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure").

[ X ] (2) The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required in section 2(5) of this act and, after waiting fourteen days after the requirements in section 2 of this act were satisfied, the beneficiary or the beneficiary's authorized agent sent to the borrower(s), by certified mail, return receipt requested, the letter required under section 2 of this act.

[ ] (3) The borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trnstee.

[ ] (4) Under section 2 of this act, the beneficiary or the beneficiary's authorized agent has verified information that, on or before the date of this declaration, the borrower(s) has filed for bankruptcy, and the bankruptcy stay remains in place, or the borrower has filed for bankruptcy and the bankruptcy court has granted relief from the bankruptcy stay allowing the enforcement of the deed of trust."

**SB 5810 Does NOT apply because, regarding the above-referenced loan:**

[ ] The deed of trust was made before January 1, 2003 or after December 31, 2007, inclusive; or

[ ] The property is vacant, as evidenced by the return of the keys or communication in writing from the borrower(s); or

[ ] The deed of trust secures a commercial loan; or

[ ] The deed of trust secures obligations of a grantor who is not the borrower or a guarantor; or

[ ] The deed of trust secures a purchaser's obligations under a seller-financed sale.

Dated: 3/24/2011

JPMorgan Chase Bank N.A.

By: ______________________
(Casey Hodges)
Beneficiary's/Authorized Agent's Signature

# Exhibit "G"



Chase (OH4-7302)
3415 Vision Drive
Columbus, OH 43219-6009

April 14, 2011

00687-01 IF1A 104-000000000000
Richard J. Zalac
40115 278th Way SE
Enumclaw, WA 98022

Re: Account Number: ******7427
Richard J. Zalac

**Loan Investor**

Dear Richard J. Zalac:

I am writing in response to the inquiry Chase received about the loan referenced above.

Your loan was sold into a public security managed by FNMA A/A and may include a number of investors. As the servicer of your loan, Chase is authorized by the security to handle any related concerns on their behalf. The address of your investor is:

13150 WORLDGATE DRIVE
HERNDON VA 20170

FNMA

We appreciate your business. If you have questions, please call us at the telephone number below.

Sincerely,

Chase
(800) 848-9136
(800) 582-0542 TDD / Text Telephone
www.chase.com

CC278

# Exhibit "H"

Unofficial Copy

After Recording Return to:
Northwest Trustee Services, Inc.
Attention: Becky Baker
P.O. Box 997
Bellevue, WA 98009-0997

20120409000591
DOCUMENT PROCE ADT 14.00
PAGE-001 OF 001
04/09/2012 11:25
KING COUNTY, WA

7037.75897/Zalac, Richard J. and Sarah A. MIN# 100015902206280578

5271997
FIRST AM
(1) 14

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to JPMorgan Chase Bank, National Association, whose address is 10790 Rancho Bernardo Rd, San Diego, CA 92127, all beneficial interest under that certain deed of trust, dated 06/10/05, executed by Richard J. Zalac, a married man, as his separate estate, Sarah A. Zalac to perfect lien, Grantors, to Stewart Title, Trustee, and recorded on 06/15/05, under Auditor's File No. 20050615002158, Records of King County, Washington described as follows:

The South 150 feet of the North 490 feet of the East 240 feet of that portion of Government Lot 1, Section 7, Township 20 North, Range 7 East, W.M., in King County, Washington, lying Westerly of 278th Way Southeaast (also known as 278th Place Southeast). More accurately described as: The South 150 feet of the North 490 feet of the East 240 feet of that portion of Government Lot 1, Section 7, Township 20 North, Range 7 East, W.M., in King County, Washington, lying Westerly of 278th Way Southeast (also known as 278th Place Southeast)

Dated February 3, 2012

Mortgage Electronic Registration Systems, Inc.

By: [signature] Paula S Gardner
Title: Assistant Secretary

STATE OF Ohio )
) ss.
COUNTY OF Franklin )

I certify that I know or have satisfactory evidence that Paula S Gardner is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Mortgage Electronic Registration Systems, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 3 Feb 2012

[signature]

NOTARIAL SEAL — STATE OF OHIO
ROBERT D WILLIAMS
NOTARY PUBLIC
STATE OF OHIO
My Comm. Expires January 14, 2017

NOTARY PUBLIC in and for the State of Ohio
Residing at Westerville OH
My commission expires 1/14/2017

# Exhibit "I"

After Recording Return to:
Becky Baker
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

20120409000592
DOCUMENT PROCE AST 14.00
PAGE-001 OF 001
04/09/2012 11:25
KING COUNTY, WA

## Appointment of Successor Trustee

527199A
FIRST AMS
①|14

File No. 7037.75897

Richard J. Zalac, a married man, as his separate estate, Sarah A. Zalac to perfect lien is/are the grantor(s), Stewart Title is the trustee and Mortgage Electronic Registration Systems, Inc, as nominee for CTX MORTGAGE COMPANY, LLC, its successors and assigns is the beneficiary under that certain deed of trust dated 06/10/05 and recorded on 06/15/05 under King County, Washington Auditor's File No. 20050615002158.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

**JPMorgan Chase Bank, National Association**

By [signature]
Douglas Theener Vice President

STATE OF Ohio )
)ss
COUNTY OF Franklin )

I certify that I know or have satisfactory evidence that Douglas Theener is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Vice President of **JPMorgan Chase Bank, National Association** to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 03.31.2012

[signature] Rachel L. Echard
Notary Public in and for the State of Ohio
Residing at Westerville
My appointment expires 02-16-2016

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA 98009-0997
425-586-1900 FAX 425-586-1997

Client: JPMorgan Chase Bank, N.A.
Borrower: Zalac, Richard J. and Sarah A.

NOTARIAL SEAL STATE OF OHIO

RACHEL L. ECHARD
Notary Public, State of Ohio
My Commission Expires
02-16-2016

Unofficial Document

# Exhibit "J"

4
1ST AM

After Recording, Return to:
Heather L. Smith
Northwest Trustee Services, INC.
P.O. Box 997
Bellevue, WA 98009-0997

DOCUMENT PROCE NTS 65.00
PAGE-001 OF 004
04/17/2012 11:21
KING COUNTY, WA

**File No.:** 7037.75897
**Grantors:** Northwest Trustee Services, Inc.
JPMorgan Chase Bank, National Association
**Grantee:** Richard J. Zalac, a married man as his separate estate.
**Ref to DOT Auditor File No.:** 20050615002158
**Tax Parcel ID No.:** 072007-9037-00
**Abbreviated Legal:** PTN. GOV. LOT 1, 7-20-07E

5271997

**Notice of Trustee's Sale**

Pursuant to the Revised Code of Washington 61.24, et seq.

I.

On **July 20, 2012**, at 10:00 a.m. The northwest corner of the ground level parking area located under the Pacific Corporate Center building, 13555 SE 36th Street in the City of Bellevue, State of Washington, the undersigned Trustee (subject to any conditions imposed by the Trustee) will sell at public auction to the highest and best bidder, payable at time of sale, the following described real property "Property", situated in the County(ies) of King, State of Washington:

> The South 150 feet of the North 490 feet of the East 240 feet of that portion of Government Lot 1, Section 7, Township 20 North, Range 7 East, W.M., in King County, Washington, lying Westerly of 278th Way Southeaast (also known as 278th Place Southeast). More accurately described as: The South 150 feet of the North 490 feet of the East 240 feet of that portion of Government Lot 1, Section 7, Township 20 North, Range 7 East, W.M., in King County, Washington, lying Westerly of 278th Way Southeast (also known as 278th Place Southeast)

Commonly known as: 40115 278th Way SE
Enumclaw, WA 98022

which is subject to that certain Deed of Trust dated 06/10/05, recorded on 06/15/05, under Auditor's File No. 20050615002158, records of King County, Washington, from Richard J. Zalac, a married man, as his separate estate, Sarah A. Zalac to perfect lien, as Grantor, to Stewart Title, as Trustee, to secure an obligation "Obligation" in favor of Mortgage Electronic Registration Systems, Inc, as nominee for CTX Mortgage Company, LLC, its successors and assigns, as Beneficiary, the beneficial interest in which was assigned by Mortgage Electronic Registration Systems, Inc. to JPMorgan Chase

Unofficial Document

Bank, National Association, under an Assignment/Successive Assignments recorded under Auditor's File No. 20120409000591.

*The Tax Parcel ID number and Abbreviated Legal Description are provided solely to comply with the recording statutes and are not intended to supplement, amend or supersede the Property's full legal description provided herein.

II.

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the Obligation in any Court by reason of the Grantor's or Borrower's default on the Obligation secured by the Deed of Trust.

III.

The Beneficiary alleges default of the Deed of Trust for failure to pay the following amounts now in arrears and/or other defaults:

| | | Amount due to reinstate by 4/12/2012 |
|---|---|---|
| Monthly Payments | | $47,360.12 |
| Lender's Fees & Costs | | $619.30 |
| Total Arrearage | $47,979.42 | |
| Trustee's Expenses | | |
| (Itemization) | | |
| Trustee's Fee | | $675.00 |
| Title Report | | $1,153.04 |
| Statutory Mailings | | $9.56 |
| Recording Costs | | $14.00 |
| Postings | | $70.00 |
| Total Costs | $1,921.60 | |
| Total Amount Due: | | $49,901.02 |

Other known defaults as follows:

IV.

The sum owing on the Obligation is: Principal Balance of $324,955.57, together with interest as provided in the note or other instrument evidencing the Obligation from 10/01/10, and such other costs and fees as are due under the Obligation, and as are provided by statute.

V.

The Property will be sold to satisfy the expense of sale and the Obligation as provided by statute. The sale will be made without representation or warranty, express or implied regarding title, possession, encumbrances or condition of the Property on July 20, 2012. The default(s) referred to in paragraph III, together with any subsequent payments, late charges, advances costs and fees thereafter due, must be cured by 07/09/12 (11 days before the sale date), to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before the close of the Trustee's business on 07/09/12 (11 days before the sale date), the default(s) as set forth in paragraph III, together with any

Unofficial Document

subsequent payments, late charges, advances, costs and fees thereafter due, is/are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after 07/09/12 (11 days before the sale date), and before the sale by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire balance of principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

NAME AND ADDRESS

Richard J. Zalac
40115 278th Way SE
Enumclaw, WA 98022

Sarah A. Zalac
40115 278th Way SE
Enumclaw, WA 98022

by both first class and either certified mail, return receipt requested on 03/28/11, proof of which is in the possession of the Trustee; and on 03/28/11 Grantor and Borrower were personally served with said written notice of default or the written notice of default was posted on a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.

The Trustee, whose name and address are set forth below, will provide in writing to anyone requesting it a statement of all foreclosure costs and trustee's fees due at any time prior to the sale.

VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their right, title and interest in the Property.

IX.

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.**

EFFECTIVE: 4/12/2012

**Northwest Trustee Services, Inc., Trustee**

**By** [signature]
**Authorized Signature**
**P.O. BOX 997**
**Bellevue, WA 98009-0997**
**Contact: Heather L. Smith**
**(425) 586-1900**

STATE OF WASHINGTON )
) ss.
COUNTY OF KING )

I certify that I know or have satisfactory evidence that Heather Smith is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 4/13/12

JESSICA LYNN CLIFTON
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
03-07-15

[signature]
NOTARY PUBLIC in and for the State of Washington, residing at Fed Way
My commission expires 3/7/15

**NORTHWEST TRUSTEE SERVICES, INC., SUCCESSOR BY MERGER TO NORTHWEST TRUSTEE SERVICES PLLC FKA NORTHWEST TRUSTEE SERVICES, LLC, P.O. BOX 997, BELLEVUE, WA 98009-0997 PHONE (425) 586-1900 FAX (425) 586-1997**

**File No:** 7037.75897
**Client:** JPMorgan Chase Bank, N.A.
**Borrower:** Zalac, Richard J. and Sarah A.

**SERVING WA, OR, ID, CA, NV, AZ, MT HI**

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Unofficial Document

# Exhibit "K"



ROUTH CRABTREE OLSEN, P.S.

13555 SE 36th St., Suite 300
Bellevue, WA 98006
Telephone: 425.458.2121
Fax: 425.458.2131
www.rcolegal.com

Sakae S. Sakai
Attorney
Telephone: 425.247.2025
Fax: 425.974.8047
ssakai@rcolegal.com

January 12, 2012

RECEIVED
JAN 17 2012
OFFICE OF THE ATTORNEY GENERAL
VANCOUVER OFFICE

Attorney General of Washington
Consumer Protection Division
Jim McAdams
1220 Mail Street, Suite 549
Vancouver, WA 98660
**File Number: 398822**

***Re: Richard J. Zalac***
***JPMorgan Chase Bank, National Association/Loan No: 1981157427***
***Property address: 40115 278th Way SE, Enumclaw, WA 98022***
***Our File No: 7037.75897***

Dear Mr. McAdams:

I am writing in response to your email correspondence dated January 6, 2012, concerning a complaint against our firm Routh Crabtree Olsen, P.S. ("Routh Crabtree Olsen") as well as our firm's client, Northwest Trustee Services, Inc. ("NWTS").

The consumer complaint filed by borrower Richard J. Zalac on January 2, 2012 alleges that the Notice of Default prepared by NWTS was defective for multiple reasons.

A copy of our firm's July 5, 2011 response to Mr. Zalac's then attorney Jill Smith, includes a validation of the debt, and is attached as Exhibit 1. That validation addressed Mr. Zalac's concerns regarding (1) the inclusion of Sarah Zalac on the Notice of Default, (2) Chase Home Finance, LLC's ("Chase") standing to enforce the promissory note, and (3) NWTS's role as authorized agent of Chase in issuing the Notice of Default.

On August 15, 2011, Routh Crabtree Olsen sent a second letter to attorney Jill Smith in response to a subsequent correspondence dated July 21, 2011. A copy of that response is attached as Exhibit 2. As relevant to the issues Mr. Zalac raises in his consumer complaint, the response reaffirms the fact that Chase issued the Notice of Default through NWTS as its authorized agent. The response further confirms that no appointment of successor trustee had been recorded as of the date of the response, and that NWTS was acting solely as an agent for Chase, as provided for by state. More specifically, the Washington Deed of Trust Act, at RCW § 61.24.031(a)(a), expressly recognizes that a trustee, beneficiary, *or authorized agent* may issue a Notice of Default.

On October 4, 2011, Routh Crabtree Olsen sent a letter directly to Mr. Zalac as he was no longer then represented by counsel, in response to his correspondence dated August 25, 2011. A copy of Routh Crabtree Olsen's letter is attached as Exhibit 3. The letter incorporated by reference the previous response letters sent by Routh Crabtree Olsen.

Finally, on October 24, 2011, Routh Crabtree Olsen sent a fourth letter, the second addressed to Mr. Zalac. A copy of the fourth response letter is attached as Exhibit 4. As stated in the previous response letters, the fourth letter indicated that Routh Crabtree Olsen was satisfied that its client NWTS was acting in compliance with state and federal laws in the nonjudicial foreclosure process. Moreover, in an effort to assist Mr. Zalac, the letter invited Mr. Zalac to contact Chase's loss mitigation department directly to discuss possible workout options.

Concerning Mr. Zalac's allegations regarding the Federal National Mortgage Association ("FNMA"), the FNMA servicing guidelines[1] and state law clarify FNMA's role as investor, Chase's role as servicer, and Chase's standing to enforce the promissory note.

Pursuant to the Washington Deed of Trust Act, a "beneficiary" is defined as the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation.[2] In turn, a "holder" is defined in part as the person in possession of the negotiable instrument if it is payable to bearer.[3] Pursuant to the Uniform Commercial Code, codified under Washington law, a holder is entitled to enforce the promissory note.[4]

In order to ensure that a servicer is able to perform the services and duties incident to the servicing of a mortgage loan, FNMA, pursuant to its servicing guidelines, temporarily gives the servicer possession of the promissory note whenever the servicer, acting in its own name, represents FNMA's interests in foreclosure actions. This transfer confers "Holder" status on the servicer. In this case, this is Chase. As holder, Chase is a beneficiary as defined by the Washington Deed of Trust Act. Accordingly, NWTS has authority, as Chase's authorized agent, to issue a Notice of Default.

BUT, CHASE
REVEALED THAT
THEY WERE NOT
THE BENEFICIARY
AT THE TIME
THE NOD WAS
ISSUED.

///

[1] Federal National Mortgage Association, Fannie Mae Single Family 2011 Servicing Guide, *available at* https://www.efanniemae.com/sf/guides/ssg/svcg/svc061011.pdf

[2] RCW § 61.24.005(2)

[3] RCW § 62A.1-201(20). A copy of the promissory note is attached as Exhibit 4. The blank indorsement by CTX Mortgage Company, LLC demonstrates that the promissory note is payable to bearer.

[4] RCW § 62A.3-301

It is my hope that the above information is sufficient to address any concerns. If there is anything more that I can provide or if anyone would like to discuss the matter further, please feel free to contact me directly at (425) 247-2025. Thank you.

Sincerely,

ROUTH CRABTREE OLSEN, P.S.

By: ______________________

Sakae S. Sakai
Attorney at Law

Enclosures

13555 S.E. 36th St., Suite 300 | Bellevue, WA 98006 | 425.458.2121 phone | 425.458.2131 fax

AFTER RECORDING MAIL TO:
Richard J. Zalac
40115 278th Way Southeast
Enumclaw, WA 98022

20050615002156
STEWART TITLE WD 19.00
PAGE001 OF 001
06/15/2005 16:01
KING COUNTY, WA

# Statutory Warranty Deed

Escrow Number: 19402K-MH

Grantor(s): Kurtis Stanley Kahne and Beth Lillian Kahne
Grantee(s): Richard J. Zalac
Abbreviated Legal: Ptn. Gov. Lt. 1, 7-20-07E
Assessor's Tax Parcel Number(s): 072007-9037-00

0205110232
STEWART TITLE

THE GRANTOR Kurtis Stanley Kahne and Beth Lillian Kahne, husband and wife for and in consideration of TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION in hand paid, conveys and warrants to Richard J. Zalac, a Married Man as His Separate Estate the following described real estate, situated in the County of King, State of Washington.

THE SOUTH 150 FEET OF THE NORTH 490 FEET OF THE EAST 240 FEET OF THAT PORTION OF GOVERNMENT LOT 1, SECTION 7, TOWNSHIP 20 NORTH, RANGE 7 EAST, W.M., IN KING COUNTY, WASHINGTON, LYING WESTERLY OF 278TH WAY SOUTHEAST (ALSO KNOWN AS 278TH PLACE SOUTHEAST).

SUBJECT TO: 1) Terms, covenants, conditions and restrictions as contained in lot line adjustment under Rec. No. 9005072125

Dated June 10, 2005

Kurtis Stanley Kahne [signature]
Kurtis Stanley Kahne

Beth Lillian Kahne [signature]
Beth Lillian Kahne

STATE OF Washington }
COUNTY OF King } SS:

I certify that I know or have satisfactory evidence that Kurtis Stanley Kahne and Beth Lillian Kahne is/are the person(s) who appeared before me, and said person(s) acknowledged that he/she/they signed this instrument and acknowledge it to be his/her/their free and voluntary act for the uses and purposes mentioned in this instrument.

Dated: 6-13-2005

[signature]
Notary Public in and for the State of Washington
Residing at Seattle
My appointment expires: 2-21-2009

KAREN J. MCMILLAN NOTARY PUBLIC STATE OF WASHINGTON COMMISSION EXPIRES 02-21-09

E2131181
06/15/2005 15:54
KING COUNTY, WA
TAX $8,366.00
SALE $470,000.00

PAGE001 OF 001



20050615002157
STEWART TITLE QCD 19.00
PAGE001 OF 001
06/15/2005 16:01
KING COUNTY, WA

AFTER RECORDING MAIL TO:
Richard Zalac
40115 278th Way Southeast
Enumclaw, WA 98022

E2131182
06/15/2005 15:55
KING COUNTY, WA
TAX $2.00
SALE $0.00
PAGE001 OF 001

## QUIT CLAIM DEED

(1) 2051/0232
STEWART TITLE

Escrow Number: 19402K-MH

Grantor(s): Sarah A. Zalac
Grantee(s): Richard J. Zalac
Abbreviated Legal: Ptn. Gov. Lt. 1, 7-20-07E
Assessor's Tax Parcel Number(s): 072007-9037-00

**THE GRANTOR Sarah A. Zalac, wife of Grantee** for and in consideration of **no consideration, to separate community property only,** conveys and quit claims to **Richard J. Zalac, husband of Grantor** the following described real estate, situated in the County of **King** State of Washington, together with all after acquired title of the grantor(s) therein:

THE SOUTH 150 FEET OF THE NORTH 490 FEET OF THE EAST 240 FEET OF THAT PORTION OF GOVERNMENT LOT 1, SECTION 7, TOWNSHIP 20 NORTH, RANGE 7 EAST, W.M., IN KING COUNTY, WASHINGTON, LYING WESTERLY OF 278TH WAY SOUTHEAST (ALSO KNOWN AS 278TH PLACE SOUTHEAST).

**Dated: June 10, 2005**

Sarah A Zalac
**Sarah A. Zalac**

State of Washington
County of ________ } SS:

I certify that I know or have satisfactory evidence that **Sarah A. Zalac** **is/are** the person(s) who appeared before me, and said person(s) acknowledged that **he/she/they** signed this instrument and acknowledge it to be **his/her/their** free and voluntary act for the uses and purposes mentioned in this instrument.

Dated: June 13, 2005

LISA SHIMIZU
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES 10-9-06

Lisa Shimizu
Notary Public in and for the State of Washington
Residing at: Renton
My appointment expires: 10/09/06

LPB-12

Unofficial Document

FILED
12 JUL 12 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC | NO. 12-2-23547-3 KNT |
| | Order Setting Civil Case Schedule (*ORSCS) |
| Plaintiff(s) | |
| vs | |
| CTX MORTGAGE CORPORATION, et al. | ASSIGNED JUDGE Andrus 35 |
| | FILE DATE: 07/12/2012 |
| Defendant(s) | **TRIAL DATE: 12/02/2013** |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule (*Schedule*)** on the Defendant(s) along with the ***Summons and Complaint/Petition.*** Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the ***Summons and Complaint/Petition*** or (2) service of the Defendant's first response to the ***Complaint/Petition***, whether that response is a ***Notice of Appearance***, a response, or a Civil Rule 12 (CR 12) motion. The ***Schedule*** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

***"I understand that I am required to give a copy of these documents to all parties in this case."***

Print Name | Sign Name

## I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] -- especially those referred to in this ***Schedule***. In order to comply with the ***Schedule***, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].
**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$230** must be paid when any answer that includes additional claims is filed in an existing case.
**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.
**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $220 arbitration fee**. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Thu 07/12/2012 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$220 arbitration fee must be paid** | Thu 12/20/2012 | * |
| **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration. [*See KCLCR 4.2(a) and Notices on Page 2*]. | Thu 12/20/2012 | * |
| **DEADLINE** for Hearing Motions to Change Case Assignment Area. [See *KCLCR 82(e)*] | Thu 01/03/2013 | |
| **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(b)*]. | Mon 07/01/2013 | |
| **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(b)*]. | Mon 08/12/2013 | |
| **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | Mon 08/26/2013 | * |
| **DEADLINE** for Setting Motion for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | Mon 08/26/2013 | * |
| **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | Mon 10/14/2013 | |
| **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | Mon 11/04/2013 | |
| **DEADLINE** for Exchange Witness & Exhibit Lists & Documentary Exhibits [*See KCLCR 4(j)*]. | Tue 11/12/2013 | |
| **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(2)*] | Tue 11/12/2013 | * |
| **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | Mon 11/18/2013 | |
| Joint Statement of Evidence [*See KCLCR (4)(k)*]. | Mon 11/25/2013 | * |
| **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file Proposed Findings of Fact and Conclusions of Law with the Clerk) | Mon 11/25/2013 | * |
| Trial Date [*See KCLCR 40*]. | Mon 12/02/2013 | |

## III. ORDER

Pursuant to King County Local Civil Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Civil Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

**DATED:** 7/11/2012

Richard F. McDermott

**PRESIDING JUDGE**

**IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE**

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:** Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

**CASE SCHEDULE AND REQUIREMENTS**
Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

**A. Joint Confirmation regarding Trial Readiness Report:**
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

The form is available at http://www.kingcounty.gov/courts/superiorcourt.aspx . If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

**B. Settlement/Mediation/ADR**
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial:** Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the King County Superior Cour website http://www.kingcounty.gov/courts/superiorcourt.aspx to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

**MOTIONS PROCEDURES**

**A. Noting of Motions**

**Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Nondispositive Motions:**  These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered.  All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements.  Rather than noting a time of day, the Note for Motion should state "Without Oral Argument."  Local Civil Rule 7 governs these motions, which include discovery motions.  The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge.  All other motions should be noted and heard on the Family Law Motions calendar.  Local Civil Rule 7 and King County Family Law Local Rules govern these procedures.  The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:**   Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time.  However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

### B. Original Documents/Working Copies/ Filing of Documents

**All original documents must be filed with the Clerk's Office.**  Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the new requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court.  The exceptions to the e-filing requirement are also available on the Clerk's Office website.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.  The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom.  Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator.  On June 1, 2009 you will be able to submit working copies through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk.

**Service of documents.** E-filed documents may be electronically served on parties who opt in to E-Service within the E-Filing application.  The filer must still serve any others who are entitled to service but who have not opted in.  E-Service generates a record of service document that can be e-filed.  Please see information on the Clerk's office website at www.kingcounty.gov/courts/clerk regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion.  Do not file the original of the proposed order with the Clerk of the Court.   Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge.  If that judge is absent, contact the assigned court for further instructions.  If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department.** Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. **If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.**

***C. Form***

Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

***IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.***

Richard F. McDermott

**PRESIDING JUDGE**

FILED
12 JUL 12 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| RICHARD J. ZALAC<br><br>VS<br><br>CTX MORTGAGE CORPORATION, et a | NO. 12-2-23547-3 KNT<br><br>CASE INFORMATION COVER SHEET AND AREA DESIGNATION |

CAUSE OF ACTION

**(MSC) -** OTHER COMPLAINTS/PETITIONS

AREA DESIGNATION

**KENT -** Defined as all King County south of Interstate 90 except those areas included in the Seattle Case Assignment Area.

FILED
12 JUL 12 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br><br>Plaintiff,<br><br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants,<br><br>Defendants. | **NO.**<br><br>**SUMMONS**<br><br>*(Clerk's Action Required)* |

A lawsuit has been started against you in the above-entitled court by RICHARD J. ZALAC, Plaintiff. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

If you were served with this Summons and Complaint **within** the State of Washington, then in order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons with 20 days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

what he asks for because you have not responded. If you serve a Notice of Appearance on the undersigned person, you are entitled to Notice before a default judgment may be entered.

If you were served with this Summons and Complaint **outside** the State of Washington, then in order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons with 60 days after service of this Summons and Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons within 60 days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a Notice of Appearance on the undersigned person, you are entitled to Notice before a default judgment may be entered.

You may demand that the Plaintiff(s) file this lawsuit with the Court. If you do so, the demand must be in writing and must be served upon the person signing this Summons. Within 14 days after you serve the demand, the Plaintiff(s) must file this lawsuit wit the Court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

**DATED** this 17th day of July, 2012.

**KOVAC & JONES -PLLC**

Richard Llewelyn Jones, WSBA# 12904
Attorney for Plaintiff

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

FILED
12 JUL 12 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

RICHARD J. ZALAC,

Plaintiff,

v.

CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,

Defendants.

**NO.**

**NOTICE TO DEFENDANTS REGARDING DEFAULT**

*(Clerk's Action Required)*

**NOTICE TO DEFENDANTS REGARDING DEFAULT**

**(*RCW 38.42.050*)**

State and Federal law provide protections to defendants who are on active duty in the military service, and to their dependents. Dependents of a service member are the service member's spouse, the service member's minor child, or an individual for whom the service

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

member provided more than one-half of the individual's support for 1ne hundred eighty days immediately preceding an application for relief.

One protection provided is the protection against the entry of a default judgment in certain circumstances. This notice only pertains to a defendant who is a dependent of a member of the National Guard or military reserve component under a call to active service for a period of more than thirty consecutive days. Other defendants in military service also have protections against default judgments not covered by this notice. If you are the dependent of a member of the National Guard or a military reserve component under a call to active service for a period of more than thirty consecutive days, you should notify the plaintiff or the plaintiff's attorneys in writing of your status as such within twenty days of the receipt of this notice. If you fail to do so, then a court or an administrative tribunal may presume that you are not a dependent of an active duty member of the National Guard or reserves, and proceed with the entry of an order of default and/or a default judgment without further proof of your status. Your response to the plaintiff or plaintiff's attorney about your status does not constitute an appearance for jurisdictional purposes in any pending litigation nor a waiver of your rights.

**This notice is issued pursuant to *RCW 38.42.050(3)(a)*, effective June 7, 2006.**

**DATED** this 11th day of July, 2012.

**KOVAC & JONES, PLLC.**

Richard Llewelyn Jones, WSBA# 12904
Attorney for Plaintiff

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

FILED
12 JUL 12 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br><br>Plaintiff,<br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,<br>Defendants. | **NO.**<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>*(Clerk's Action Required)* |

## I. RELIEF REQUESTED

**COMES NOW** the Plaintiff, RICHARD J. ZALAC, by and through his attorneys, KOVAC & JONES PLLC., and moves this Court for an Order restraining NORTHWEST TRUSTEE SERVICES, INC. from conducting the trustee sale now set for July 20, 2012,

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

regarding real property located at 40115 - 278th Way S.E., Enumclaw, WA 98022 and an Order to Show Cause why a Preliminary Injunction shall not issue.

## II. FACTS

The facts are as alleged by the Verified Complaint filed by the Plaintiff in the above-entitled action and herein incorporated by reference.

## III. ISSUES PRESENTED

1. Whether under *RCW 7.24.080* and *RCW 61.24.130* is Plaintiff entitled to a temporary restraining order when Defendant Northwest Trustee Services, Inc., is attempting to foreclose non-judicially having failed to follow the provisions of *RCW 61.24* and where Plaintiff has demonstrated unfair and deceptive acts and practices under *RCW 19.86* on the part of said Defendant?

2. Whether Plaintiff is entitled to a temporary restraining order when Defendants are attempting to foreclose on property without obtaining proper consent and authority of the Beneficiary/Note Holder.

3. Under *RCW 7.40.020* and *RCW 19.86.090* is the Plaintiff entitled to a preliminary injunction preventing Defendant Regional Trustee from acting in contravention of *RCW 19.86.090* where Plaintiff has demonstrated unfair and deceptive acts and practices under the statute on the part of Defendants and Defendant Regional Trustee is not qualified under *RCW 61.24.010.*

## IV. EVIDENCE RELIED UPON

This motion is based upon the Verified Complaint, on file herein and counsel's certification, sub-joined hereto, the moving papers and accompanying exhibits filed in the above entitled action and the records and files herein.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## V. AUTHORITY AND ARGUMENT

Plaintiff seeks a temporary restraining order under *RCW 61.24.130* and a preliminary injunction under *RCW 19.86.090*. This Court may grant such requests under *RCW 7.40.020*

> When it appears by the complaint that the plaintiff is entitled to the relief demanded and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce great injury to the plaintiff... an injunction may be granted to restrain such act or proceedings until the further order of the court, which may afterwards be dissolved or modified upon motion.

The Washington Supreme Court set forth the purpose of this such an action holding "[T]he object and purpose [of a preliminary injunction] is to preserve and keep things in status quo until otherwise ordered and to restrain an act which if done, would be contrary to equity and good conscience." *Blanchard v. Golden Age Brewing Co.*, 188 Wn 396 (1936).

The moving party must demonstrate a "clear legal and equitable right and a well grounded fear of invasion of that right." *Isthmian Steamship Co. v. National Marine Engineers' Beneficial Assoc.*, 41 Wn.2d 106 (1952). In order to obtain an injunction to restrain such action the a plaintiff must show: (1) they possess a clear legal and equitable right; (2) that he has a well-grounded fear of immediate invasion of that right; and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him. *Kucera v. State Dept. of Transportation*, 140 Wn.2d 200, 995 P.2d 63 (2000). Here the Plaintiff requests a temporary restraining order to prevent an improper sale of her residence through the Defendants' wrongful conduct and an injunction to prevent Defendants' further injurious actions.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

In order to determine whether a party has a clear legal or equitable right, the Court must analyze that party's likelihood of prevailing on the merits. *Tyler Pipe Indus. v. Department of Revenue*, 96 Wn.2d 785 (1982).

**1. Plaintiff is likely to prevail on his claim for declaratory judgment.**

The Defendants have failed to comply with the Deed of Trust Act as codified in *RCW 61.24, et seq.*, as described in the complaint with particularity. The Defendants proceeded in flagrant violation of *RCW 61.24.005, RCW 61.24.010,* and *61.24.030(8)* in a blatant attempt to wrongfully dispossess the Plaintiff of his home.

The acts of Defendants constituted a violation of *RCW 61.24.005(2)* which states:

> "Beneficiary" means **the holder** of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation.
>
> (Emphasis added)

Defendant MERS does not meet the requirements of this statute. It is also apparent from its own admissions that Defendant Chase does not meet the requirements of this statute either, as it is neither the Beneficiary or Holder of the Note/nor is it an agent for the Beneficiary.

In this case there is a clear pattern of collusion and cooperation between the trustee and alleged "beneficiaries" to execute improper documents and proceed unlawfully via non-judicial forcclosure in their scheme to wrongfully deprive the Plaintiff of his home. This includes "robo-signing" of documents by individuals who were not employees of the entities they represented themselves to be. It includes the failure of the Trustee to verify that the party employing the Trustee to foreclose is the actual and legal holder of the obligation.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

On the basis of the publicly recorded documents it appears likely that any designation provided by the Defendants as to which entity was signing a particular document was meant to deceive the Plaintiff and the public. It is also clear from the record that the current entity claiming to be the beneficiary, Chase, is not actually the entity owning the obligation.

The acts of Defendants constituted a violation of RCW 61.24.020 which requires that only those deeds of trust that "secure the performance of an obligation of the grantor or another **to the beneficiary** may be foreclosed by trustee's sale." MERS never held any obligation the Plaintiff may have owed to any party and Chase has admitted that it does not hold any such obligation. For failure to bring the non-judicial foreclosure in the name of the party holding the obligation, the entire process engaged in by the Defendants is fraudulent.

**2. Plaintiff is likely to prevail on his claim for violation of the Consumer Protection Aet.**

In order to prevail on a claim for a violation of the Washington Consumer Protection Act a plaintiff must prove: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) a public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778 (1986).

As demonstrated in the exhibits attached to the Complaint, the Defendants have engaged in several acts that were deceptive and unfair on their face: the unlawful prosecution of non-judicial foreclosure proceedings and the improper execution of documents and the subsequent false representations of their validity. The acts occurred in the trade and commerce of the Defendants, seek to dispossess Plaintiff of real property on the basis of these false assertions, have negatively impacted the Plaintiff's financial standing, and such damages are solely the result of the Defendants' misconduct.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## VI. CONCLUSION

Based on the foregoing, Plaintiff hereby requests that this Court enter a temporary restraining order and issue an order to show cause why a preliminary injunction against Defendant Northwest Trustee Service, Inc., should not be granted.

Respectfully submitted this 11th day of July, 2012.

**KOVAC & JONES PLLC**

Richard Llewelyn Jones, WSBA # 12904
Attorney for Plaintiff

## VII. VERIFICATION OF COUNSEL

**THE UNDERSIGNED** attorney for the Plaintiff named hereinabove declares under penalty of perjury under the laws of the State of Washington that the facts stated herein are true and correct to the best of his knowledge based upon his personal knowledge of the instruments recorded by the King County Recorder and the Complaint herein.

**DATED** this 11th day of July, 2012, at Bellevue, Washington.

Richard Llewelyn Jones, WSBA #12904
Attorney for Plaintiff

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

FILED
12 JUL 12 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br><br>Plaintiff,<br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,<br><br>Defendants. | **NO.**<br><br>**DECLARATION OF RICHARD LLEWELYN JONES**<br><br>*(Clerk's Action Required)* |

**RICHARD LLEWELYN JONES,** hereby declares as follows:

1. I am the attorney of record in this action for the above-named Plaintiff. I have been authorized by my client to make this declaration on his behalf. I have personal and testimonial knowledge of the facts set forth below and am competent to be a witness herein.

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

2. Attached hereto and incorporated herein by this reference as ***Exhibit "A"*** is a true and correct copy of the Notice transmitted via facsimile and served via a registered process server on Northwest Trustee Services at the address listed for service of process in the Notice of Trustee's Sale. In addition to this Notice a full and complete copy of the Summons, Complaint, Motion for Temporary Restraining Order and Injunctive Relief, Proposed Temporary Restraining Order and Order to Show Cause, Declaration of Richard Llewelyn Jones were served upon the trustee as required by statute.

3. I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge.

**DATED** this 11th day of July, 2012, at Bellevue, WA.

**KOVAC & JONES PLLC**

Richard Llewelyn Jones, WSBA No. 12904
Attorneys for Plaintiff

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

# Exhibit "A"

# NOTICE

*(RCW 61.24.130)*

To: Northwest Trustee Services, Inc.
13555 S.E. 36th Street, Suite 100
Bellevue, WA 98006

Fax: 425.458.2131

Your Ref: 7037.75897

**PLEASE TAKE NOTICE** that the Grantors under that certain Deed of Trust, dated June 10, 2005, and recorded with the King County Recorder under instrument No. 20050615002158 on June 15, 2005, has filed suit to restrain the trustee's sale, now set for June 20, 2012. A hearing on Grantors' request for relief shall occur on June 19, 2012 at 9:30 A.M., in the Ex-Parte Department, Courtroom W-325, King County Courthouse, 516 3rd Avenue, Seattle, WA 98104 or such other time as the Court may set.

This Notice is provided in compliance *with RCW 61.24.130(2).*

**DATED** this 11th day of July, 2012.

**KOVAC & JONES PLLC**

Richard Llewelyn Jones, WSBA 12904
Attorneys for Richard J. Zalac

FILED
12 JUL 12 PM 1:54

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br>Plaintiff,<br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,<br>Defendants. | No. 12-2-23547-3<br><br>DECLARATION OF SERVICE<br><br>*(Clerk's Action Required)* |

**DECLARATION OF SERVICE**

**I, DAN L. WILLIAMS,** do hereby certify under penalty of perjury under the laws of the State of Washington that the following is true and correct;

1. That at all times pertinent hereto, I was over eighteen years of age, a citizen of the United States of America, a resident of the State of Washington, competent to be a witness herein; and was not a party to or had an interest in the within cause of action;

**KOVAC & JONES PLLC**
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

2. That on July 11, 2012, at approximately 4:45 PM PDT, I served the following document(s) upon NORTHWEST TRUSTEE SERVICES, INC. at: 13555 S.E. 36th Street, Suite 100, Bellevue, WA 98006, which is its corporate headquarters, by leaving a true and correct copy of each of the documents listed with Marie and Betty, Northwest Trustee Services, Inc.'s receptionists: Notice to Trustee of Hearing for Temporary Restraining Order; Summons; Complaint with Plaintiff Verification and Exhibits attached; Notice to Defendants Regarding Default; Motion for Temporary Restraining Order and Order to Show Cause; Declaration of Richard Llewelyn Jones; Proposed Order for Temporary Restraining Order and Order to Show Cause. Attached hereto and incorporated herein as Exhibit "A" are conforming copies of the first page of each of the documents served as evidenced by Northwest Trustee Services, Inc.'s dated received stamp on the first page of each of the documents.

**DATED** this 11th day of July, 2012.

Dan L. Williams

Dan L. Williams dba Administrative Support Service
also dba Served in Seattle
King Co. Process Server Reg. No.. 1016042

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

# Exhibit "A"

Received
JUL 11 2012
Northwest Trustee Services, Inc.

# NOTICE
(*RCW 61.24.130*)

To: Northwest Trustee Services, Inc.
13555 S.E. 36th Street, Suite 100
Bellevue, WA 98006

Fax: 425.458.2131

Your Ref: 7037.75897

**PLEASE TAKE NOTICE** that the Grantors under that certain Deed of Trust, dated June 10, 2005, and recorded with the King County Recorder under instrument No. 20050615002158 on June 15, 2005, has filed suit to restrain the trustee's sale, now set for June 20, 2012. A hearing on Grantors' request for relief shall occur on June 19, 2012 at 9:30 A.M., in the Ex-Parte Department, Courtroom W-325, King County Courthouse, 516 3rd Avenue, Seattle, WA 98104 or such other time as the Court may set.

This Notice is provided in compliance *with RCW 61.24.130(2).*

**DATED** this 11th day of July, 2012.

**KOVAC & JONES PLLC**

Richard Llewelyn Jones, WSBA 12904
Attorneys for Richard J. Zalac

Received JUL 11 2012 Northwest Trustee Services, Inc.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RICHARD J. ZALAC, Plaintiff, | NO. |
| v. | **SUMMONS** |
| CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants, | *(Clerk's Action Required)* |
| Defendants. | |

A lawsuit has been started against you in the above-entitled court by RICHARD J. ZALAC, Plaintiff. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

If you were served with this Summons and Complaint **within** the State of Washington, then in order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons with 20 days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Received
JUL 11 2012
Trustee Services

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RICHARD J. ZALAC,<br><br>Plaintiff,<br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,<br>Defendants. | **NO.**<br><br>**COMPLAINT**<br><br>*(Clerk's Action Required)* |

**COMES NOW** the Plaintiff, RICHARD J. ZALAC, by and through his attorneys, KOVAC & JONES, PLLC, and files this Complaint against the Defendants, hereby alleging as follows:

## I. PARTIES

1.1 *Plaintiff Richard J. Zalac*. Plaintiff Richard J. Zalac is now and was at all times herein mentioned a resident in King County, Washington. Said Plaintiff is the owner of certain

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Received JUL 11 2012

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RICHARD J. ZALAC, Plaintiff, v. CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants. | **NO.** **NOTICE TO DEFENDANTS REGARDING DEFAULT** *(Clerk's Action Required)* |

**NOTICE TO DEFENDANTS REGARDING DEFAULT**

**(*RCW 38.42.050*)**

State and Federal law provide protections to defendants who are on active duty in the military service, and to their dependents. Dependents of a service member are the service member's spouse, the service member's minor child, or an individual for whom the service

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Received JUL 11 2012

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br>Plaintiff,<br>v.<br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,<br>Defendants. | **NO.**<br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br>*(Clerk's Action Required)* |

## I. RELIEF REQUESTED

**COMES NOW** the Plaintiff, RICHARD J. ZALAC, by and through his attorneys, KOVAC & JONES PLLC., and moves this Court for an Order restraining NORTHWEST TRUSTEE SERVICES, INC. from conducting the trustee sale now set for July 20, 2012,

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Received JUL 11 2012

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RICHARD J. ZALAC, Plaintiff, v. CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants. | **NO.** **DECLARATION OF RICHARD LLEWELYN JONES** *(Clerk's Action Required)* |

**RICHARD LLEWELYN JONES,** hereby declares as follows:

1. I am the attorney of record in this action for the above-named Plaintiff. I have been authorized by my client to make this declaration on his behalf. I have personal and testimonial knowledge of the facts set forth below and am competent to be a witness herein.

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

FILED
12 JUL 16 AM 10:39

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC, Plaintiff, v. CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants. | No. 12-2-23547-3<br><br>DECLARATION OF SERVICE<br><br>*(Clerk's Action Required)* |

**DECLARATION OF SERVICE**

**I, MARIE KAMERER,** do hereby certify under penalty of perjury under the laws of the State of Washington that the following is true and correct;

1. That at all times pertinent hereto, I was over eighteen years of age, a citizen of the United States of America, a resident of the State of Washington, competent to be a witness herein; and was not a party to or had an interest in the within cause of action;

**KOVAC & JONES PLLC**
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

2. That on July 16, 2012, at approximately 10:15 a.m. PDT, I served the following document(s) upon NORTHWEST TRUSTEE SERVICES, INC. at: 13555 S.E. 36th Street, Suite 100, Bellevue, WA 98006, which is its corporate headquarters, by leaving a true and correct copy of the Amended Notice. Attached hereto and incorporated herein as Exhibit "A" is a conformed copy of the document served as evidenced by Northwest Trustee Services, Inc.'s dated received stamp on the document.

**DATED** this 16th day of July, 2012.

[signature]

Marie Kamerer

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

# EXHIBIT A

Received
JUL 16 2012
Northwest Trustee Services, Inc.

**AMENDED NOTICE**
*(RCW 61.24.130)*

To: Northwest Trustee Services, Inc.
13555 S.E. 36th Street, Suite 100
Bellevue, WA 98006

Fax: 425.458.2131

Your Ref: 7037.75897

**PLEASE TAKE NOTICE** that the Grantors under that certain Deed of Trust, dated June 10, 2005, and recorded with the King County Recorder under instrument No. 20050615002158 on June 15, 2005, has filed suit to restrain the trustee's sale, now set for July 20, 2012. A hearing on Grantors' request for relief shall occur on July 19, 2012 at 9:30 A.M., in the Ex-Parte Department, Courtroom W-325, King County Courthouse, 516 3rd Avenue, Seattle, WA 98104 or such other time as the Court may set.

This Notice is provided in compliance *with RCW 61.24.130(2).*

**DATED** this 16th day of July, 2012.

**KOVAC & JONES PLLC**

Richard Llewelyn-Jones, WSBA 12904
Attorneys for Richard J. Zalac

FILED
12 JUL 19 PM 3:16

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br><br>Plaintiff,<br><br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC; NORTHWEST TRUSTEE SERVICES, INC., a Washington corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; and DOE DEFENDANTS 1-10<br><br>Defendants. | No. 12-2-23547-3SEA<br><br>**NOTICE OF UNAVAILABILITY** |

TO: Richard Llewelyn Jones, Attorneys for Plaintiff;

AND TO: The Clerk of the Court:

PLEASE TAKE NOTICE that Heidi Buck will be out of the state or otherwise unavailable from August 6, 2012 through August 22, 2012. It is requested that motions and other court hearings not be scheduled to occur during the time of my absence, and that motions or other hearings be scheduled so that there is sufficient time to prepare for them following the end of my absence.

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

There is no other attorney available with sufficient factual knowledge of this case to respond to any substantive request for relief during my absence.

DATED this 19th day of July, 2012.

**ROUTH CRABTREE OLSEN, P.S.**

Heidi E. Buck, WSBA #41769
Of Attorneys for Defendant Northwest Trustee Services, Inc.

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**Declaration of Service**

The undersigned makes the following declaration:

1. I am now, and at all times herein mentioned was a resident of the State of Washington, over the age of eighteen years and not a party to this action, and I am competent to be a witness herein.

2. That on July 19, 2012, I caused a copy of the **Notice of Unavailability** to be served to the following in the manner noted below:

| | |
|---|---|
| Richard Llewelyn Jones<br>Kovac & Jones, PLLC<br>2050 112th Ave. NE, Suite 230<br>Bellevue, WA 98004<br><br>Attorneys for Plaintiff | [X] US Mail, Postage Prepaid<br>[ ] Hand Delivery<br>[ ] Overnight Mail<br>[ ] Facsimile |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed this 19th day of July, 2012.

Kristine Stephan, Paralegal

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

FILED

12 JUL 19 AM 11:51

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA.

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br><br>Plaintiff,<br><br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10 | **NO.** 12-2-23547-3<br><br>**TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>*(Clerk's Action Required)* |

**THIS MATTER**, having come on regularly for hearing before the undersigned Judge upon presentation of Plaintiff's Motion for Temporary Restraining Order and Injunctive Relief restraining Defendant NORTHWEST TRUSTEE SERVICES, and its successors or assigns, from conducting any further foreclosure proceedings until final judgment is entered in this action. The motion was made pursuant to *RCW 61.24.130* and *RCW 7.40.020.*

**KOVAC & JONES PLLC**
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

The Court having heard the oral argument of counsel, considered the verified Complaint on file herein and the certification of counsel, the records and files herein, and the Court finding good cause has been shown, the Court now makes the following findings of fact:

1. In order to obtain an temporary restraining order, a plaintiff must show that (1) she has a clear legal or equitable right; (2) that she has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to her. *Kucera v. State Department of Transportation*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000). Such criteria is evaluated by balancing the relative interests of the parties, and if appropriate, the interests of the public. *Id.*

2. Plaintiff challenges the lawfulness of Defendants' actions in this declaratory judgment action and have moved the Court for an order restraining Defendant NORTHWEST TRUSTEE SERVICES, and its successors or assigns, from conducting any further foreclosure proceedings related to a parcel of real property located in King County and legally described as follows:

> THE SOUTH 150 FEET OF THE NORTH 490 FEET OF THE EAST 240 FEET OF THAT PORTION OF GOVERNMENT LOT 1, SECTION 7, TOWNSHIP 20 NORTH, RANGE 7 EAST, W.M., IN KING COUNTY, WASHINGTON, LYING WESTERLY OF 278TH WAY SOUTHEAST (ALSO KNOWN AS 278TH PLACE SOUTHEAST).
>
> Commonly known as: 40115 278th Way S.E., Encumclaw, King County, WA 98022 (hereinafter "the property").

3. Plaintiff has sufficiently demonstrated to the Court that he is entitled to a Temporary Restraining Order, restraining the Trustee, NORTHWEST TRUSTEE SERVICES, INC., and its successors or assigns, from sale of Plaintiff's property at sale, scheduled for July 20, 2012. If the trustees' sales and other foreclosure proceedings are not restrained, Plaintiff's

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

rights may be terminated, without recourse, and he could be prevented from litigating his valid claims regarding the propriety of the foreclosure process. It would also extinguish Plaintiff's right to reacquire the subject real property as there are no redemption rights under the provisions of *RCW 61.24, et seq.* The loss of ownership would necessarily cause Plaintiff irreparable injury that could not be sufficiently compensated with an award of money damages. Defendants named herein will not suffer any substantial harm if the sale is restrained for some period of time, since the sale date can be postponed orally for up to 120 days from the original sale date without impacting the foreclosing parties' rights to complete the sale, pursuant to *RCW 61.24.040(6).* In balancing the rights and interests of the parties, it is clear that Plaintiff will suffer greater harm if the sale is not temporarily restrained until such time as Plaintiff's rights are adjudicated.

Based upon the foregoing findings of fact, the Court hereby orders as follows:

1. The Defendant, NORTHWEST TRUSTEE SERVICES, INC. and its successors or assigns, are hereby restrained from conducting any trustee sales of Plaintiff's property, commonly known as 40115 278th Way S.E., Enumclaw, WA 98022, pending further order of the Court.

2. Defendants are directed to appear on July 30th, 2012 at 4pm a.m./p.m. before Judge Andrus of the above-entitled Court, or such other judge/court commissioner as the matter may be assigned, to show cause, if any there be, why the ~~Plaintiff's Motion~~ request for a Preliminary Injunction shall not be granted.

3. CONDITIONED UPON POSTING OF BOND #2581.30 ON 7/19/12 AND MONTHLY ~~[illegible]~~ THEREAFTER

TEMPORARY RESTRAINING ORDER
Page 3

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

DATED this 7/20/12 day ____________, 2012.

Judge/Commissioner

*Presented by:*

**KOVAC & JONES PLLC**

Richard Llewelyn Jones, WSBA# 12904
Attorney for Plaintiffs
2050 – 112th Avenue NE, Suite 230
Bellevue, WA 98004
Ph: 425.462.7322
Fax: 425.450.0249
Email: rlj@richardjoneslaw.com

TEMPORARY RESTRAINING ORDER
Page 4

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

104

FILED

KING COUNTY SUPERIOR COURT
BARBARA MINER
DIRECTOR & SUPERIOR CT CLERK
SEATTLE WA

12-2-23547-3

Rcpt. Date 07/19/2012 Acct. Date 07/20/2012 Time 03:17 PM

Receipt/Item # 2012-09-04046/02 Tran-Code 3100 Docket-Code $TRB
Cashier: RPC

Paid By: ZALAC, RICHARD
Transaction Amount: $2,581.30

FILED
12 JUL 19 PM 3:18
KING COUNTY
SUPERIOR COURT CLERK
KENT, WA

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
COUNTY OF KING

| IN RE Zalac<br><br>Vs<br><br>CTX mortgage et al | NO: 12-2-23547-3KNT<br><br>CASH BOND<br>($BR)<br><br>Amount: $2,581.30 |
|---|---|

The validation above indicates the receipt of a cash bond for the above referenced case.

***PERSON POSTING BOND PLEASE READ:***

The bond may be exonerated and returned only upon Court order. You or an attorney must prepare the order and present it to the Court. If you are the bond payer, your name must be indicated on the order as the recipient of the bond money. The Court may order court costs or fees to be paid from bond proceeds. A $10.00 Trust Account Service fee will be deducted from the bond amount upon return.

**PERSON POSTING BOND MONEY**: ***(Please print)***

Name: Richard & Sarah Zalac

Address: 40115 278th Way SE

City / State / Zipcode: Enumclaw, WA 98022

Signature: Sarah A Zalac

FILED
12 JUL 19 AM 10:02

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

RICHARD J. ZALAC,

Plaintiff,

v.

CTX MORTGAGE CORPORATION, a Delaware corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC; NORTHWEST TRUSTEE SERVICES, INC., a Washington corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; and DOE DEFENDANTS 1-10

Defendants.

No. 12-2-23547-3SEA

**NOTICE OF APPEARANCE OF DEFENDANT NORTHWEST TRUSTEE SERVICES, INC.**

TO: Richard Llewelyn Jones, Attorneys for Plaintiff;

AND TO: The Clerk of the Court:

PLEASE TAKE NOTICE that Heidi E. Buck of Routh Crabtree Olsen, P.S., without waiving defenses of lack of subject matter or personal jurisdiction, improper venue, insufficiency of service of process, or any other valid defense, hereby appears for Defendant Northwest Trustee Services, Inc. in the above-entitled action. You are further notified that service of all pleadings,

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

notices, documents or other papers herein, except original process, shall be served upon said Defendant by service upon the undersigned at:

Heidi E. Buck
Routh Crabtree Olsen, P.S.
13555 SE 36th St., Suite 300
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

DATED this 17th day of July, 2012.

**ROUTH CRABTREE OLSEN, P.S.**

Heidi E. Buck, WSBA #41769
Of Attorneys for Defendant Northwest Trustee Services, Inc.

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**Declaration of Service**

The undersigned makes the following declaration:

1. I am now, and at all times herein mentioned was a resident of the State of Washington, over the age of eighteen years and not a party to this action, and I am competent to be a witness herein.

2. That on July 19, 2012, I caused a copy of the **Notice of Appearance of Defendant Northwest Trustee Services, Inc.** to be served to the following in the manner noted below:

| | |
|---|---|
| Richard Llewelyn Jones<br>Kovac & Jones, PLLC<br>2050 112th Ave. NE, Suite 230<br>Bellevue, WA 98004<br><br>Attorneys for Plaintiff | [X] US Mail, Postage Prepaid<br>[ ] Hand Delivery<br>[ ] Overnight Mail<br>[ ] Facsimile |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed this 19th day of July, 2012.

Kristine Stephan, Paralegal

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131



FILED
KING COUNTY, WASHINGTON

JUL 2 7 2012

SUPERIOR COURT CLERK
BY: PAMELA ANZAI
DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ZALAC,<br><br>Plaintiff,<br><br>v.<br><br>CTX MORTGAGE CORP. ET AL.,<br><br>Defendants. | No. 12-2-23547-3 KNT<br><br>Notice Striking Hearing |

Attached please find a copy of the email striking this matter for hearing.

**Anderson, Eric**

**From:** Susan L. Rodriguez <susan@kovacandjones.com>
**Sent:** Friday, July 27, 2012 1:16 PM
**To:** Anderson, Eric
**Cc:** Rasmussen, William; Richard Jones; hbuck@rcolegal.com; Burnside, Fred; Sullivan, Matthew; Marie Kamerer
**Subject:** Zalac v CTX Mortgage Corp. et al./12-2-23547-3 KNT/ Request to Strike Hearing

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Re: Zalac v CTX Mortgage Corp. et al.
King County Superior Court Cause No. 12-2-23547-3 KNT

Mr. Anderson:

We do hereby request to STRIKE the hearing which is scheduled for Monday, July 30, 2012 @ 4:00 PM. Our office has been notified, and we have confirmed via the trustee's website, that the Trustee Sale has been cancelled. At this time, there is no need for an Injunction.

We kindly ask you to confirm receipt of this communication and request. Thank you for your assistance in this matter.

Respectfully,

*Susan L. Rodriguez*
Legal Assistant
Kovac & Jones, PLLC
2050 - 112th Ave NE
Suite 230
Bellevue, WA 98004
(Phone) 425.462.7322
(Fax) 425.450.0249

FILED
12 AUG 03 AM 11:38

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC, Plaintiff, v. CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants, Defendants. | **NO. 12-2-23547-3 KNT** **SUMMONS ON AMENDED COMPLAINT** *(Clerk's Action Required)* |

A lawsuit has been started against you in the above-entitled court by RICHARD J. ZALAC, Plaintiff. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

If you were served with this Summons on Amended Complaint and Amended Complaint **within** the State of Washington, then in order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons with 20 days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a Notice of

**KOVAC & JONES, PLLC**
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Appearance on the undersigned person, you are entitled to Notice before a default judgment may be entered.

If you were served with this Summons and Complaint **outside** the State of Washington, then in order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons with 60 days after service of this Summons and Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons within 60 days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a Notice of Appearance on the undersigned person, you are entitled to Notice before a default judgment may be entered.

You may demand that the Plaintiff(s) file this lawsuit with the Court. If you do so, the demand must be in writing and must be served upon the person signing this Summons. Within 14 days after you serve the demand, the Plaintiff(s) must file this lawsuit wit the Court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

**DATED** this 2nd day of August, 2012.

**KOVAC & JONES -PLLC**

Richard Llewelyn Jones, WSBA# 12904
Attorney for Plaintiff

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

FILED
12 AUG 03 AM 11:38

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br><br>Plaintiff,<br><br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,<br><br>Defendants. | **NO. 12-2-23547-3 KNT**<br><br>**FIRST AMENDED COMPLAINT**<br><br>*(Clerk's Action Required)* |

**COMES NOW** the Plaintiff, RICHARD J. ZALAC, by and through his attorneys, KOVAC & JONES, PLLC, and files Plaintiff's First Amended Complaint against the Defendants, hereby alleging as follows:

## I. PARTIES

1.1 *Plaintiff Richard J. Zalac*. Plaintiff Richard J. Zalac is now and was at all times herein mentioned a resident in King County, Washington. Said Plaintiff is the owner of certain

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

real property situated in King County, State of Washington, commonly described as 40115 - 278th Way Southeast, Enumclaw, WA 98022, which is Plaintiff's primary residence.

Legal Description:

THE SOUTH 150 FEET OF THE NORTH 490 FEET OF THE EAST 240 FEET OF THAT PORTION OF GOVERNMENT LOT 1, SECTION 7, TOWNSHIP 20 NORTH, RANGE 7 EAST, W.M., IN KING COUNTY, WASHINGTON, LYING WESTERLY OF 278TH WAY SOUTHEAST (ALSO KNOWN AS 278TH PLACE SOUTHEAST).

1.2 *Defendant CTX MORTGAGE COMPANY, LLC.* Defendant, CTX MORTGAGE COMPANY, LLC (hereinafter "CTX") is a corporation organized under the laws of the State of Delaware. CTX maintains a registered agent in Olympia, Washington.

1.3 *Defendant Federal National Mortgage Association.* Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION (hereinafter "Fannie Mae"), is a United States government sponsored enterprise. Fannie Mae conducts business within the State of Washington.

1.4 *Defendant JPMorgan Chase Bank, NA.* Defendant, JP MORGAN CHASE BANK, NA (hereinafter "Chase") is a chartered national bank with headquarters in Columbus, Ohio. Said Defendant conducts business in the State of Washington under the name and style of CHASE HOME FINANCE, LLC, which is believed to be, and therefore alleged to be, a wholly owned subsidiary/division of Chase.

1.5 *Defendant Mortgage Electronic Registration Systems, Inc.* Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (hereinafter "MERS") is a corporation organized and existing under the laws of the state of Delaware.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1.6 *Defendant Northwest Trustee Services, Inc.* Defendant, NORTHWEST TRUSTEE SERVICES, INC., (hereinafter "Northwest Trustee") is a corporation organized and existing under the laws of the State of Washington.

1.7 *Doe Defendants.* Doe Defendants 1-10 were at all times mentioned herein, the Defendants, and each of them, were the principals, successors or assigns, agents, servants, representatives and/or employees of each of the remaining Defendants and were acting within the course and scope of such agency or employment. The exact terms and conditions of any succession, assignment, agency, representation or employment relationships are presently unknown to Plaintiff, but when the information is ascertained, leave of court will be sought to insert the appropriate allegations.

1.8 No party named herein is a minor, in the military service of the United States, as defined by the Soldier's and Sailor's Relief Act of 1942, as subsequently amended and re-codified under the Service Members Civil Relief Act, or otherwise incompetent.

1.9 At all times relevant to this cause of action, the above-named Defendants acted, aided and abetted, for and on behalf of themselves, each other, their principals, agents, successors, assigns and, where appropriate, their respective marital communities. Plaintiff asserts claims for civil conspiracy and joint venture liability based upon the facts of this action.

## II. JURISDICTION AND VENUE

2.1 Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

2.2 This Court has jurisdiction over the parties to this complaint because at all times relevant the parties were either residents of the State of Washington, were incorporated under the laws of the State of Washington, or were subject to *RCW 23B.18, et seq*, committed or

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

directed improper, tortious, or fraudulent acts against Plaintiff's interest in the Property, or claimed some interest (whether valid or not) in the Property which is located in King County, Washington, pursuant to *RCW 4.28.185* and *RCW 23B.18.060.*

2.3 The above-entitled Court has jurisdiction over the subject matter of this action.

2.4 Venue is properly placed in this Court by the fact the real property that is the subject matter of this action is located in King County, Washington. *RCW 4.12.010(1).*

## III. FACTS

3.1 Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

3.2 On June 10, 2005, Plaintiff executed a Promissory Note in favor of CTX as lender and the party entitled to payments according to its terms. A true and correct copy of said Note is attached here and incorporated herein by this reference as ***Exhibit "A"***. This transaction was purportedly registered with MERS by CTX under MIN No. 100015902206280560. To secure repayment of the Promissory Note, Plaintiff, as grantor, executed a Deed of Trust. Stewart Title was named the trustee. MERS was named the beneficiary, as nominee for the lender. CTX was identified as the lender. This instrument was recorded under King County Auditor's Receiving No. 20050615002158, encumbering the property. A true and correct copy of said Deed of Trust is attached here and incorporated herein by this reference as ***Exhibit "B."***

3.3 Plaintiff alleges that the terms of the subject Deed of Trust constituted a contract of adhesion in that Plaintiff understood that he was not allowed to modify or re-negotiate any of the terms of the Deed of Trust at time of closing.

3.4 As of June 10, 2005, and at no time subsequent to June 10, 2005 did Plaintiff owe any monetary or other obligation to MERS, nor has MERS ever been a holder of the subject

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Promissory Note or other evidence of debt executed contemporaneously with the subject Deed of Trust referenced in Paragraph 3.2, as the term is defined under *RCW 61.24.005(2).*

3.5 In a letter dated August 11, 2005, Plaintiff was notified by Countrywide Home Loans Servicing LP that servicing of his loan was being transferred from CTX to Countrywide Home Loans Servicing LP as of September 1, 2005. Plaintiff received no information regarding any change in ownership of the Note. A true and correct copy of said notice is attached here and incorporated herein by this reference as ***Exhibit "C."*** At this time, Plaintiff reasonably believed that the holder of the subject Promissory Note, as defined under *RCW 61.24.005(2),* remained CTX.

3.6 In a letter dated October 12, 2006, Plaintiff was informed that his loan servicing was again being transferred from Countrywide Home Loans Servicing, LP, to JP Morgan Chase Bank, NA as of November 1, 2006. Again, Plaintiff received no information regarding any change in ownership of the subject Promissory Note. A true and correct copy of said notice is attached here and incorporated herein by this reference as ***Exhibit "D."*** At this time, Plaintiff reasonably believed that the holder of the subject Promissory Note, as defined under *RCW 61.24.005(2),* remained CTX.

3.7 On or about January 25, 2011, Plaintiff learned for the first time that Fannie Mae claimed to be the owner of the subject Promissory Note and loan. A printed copy of Fannie Mae's web page, dated January 25, 2011, evidencing their alleged ownership of the loan is attached here and incorporated herein by this reference as ***Exhibit "E".***

3.8 On or about March 28, 2011, Northwest Trustee issued a Notice of Default to Plaintiff, as "duly authorized agent" for Chase. Said Notice of Default was defective in several regards. First, said Notice of Default deceptively and deliberately confused the "beneficiary"

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

with the "note owner" and the "note holder, as the term is defined under *RCW 61.24, et seq.* Specifically, said Notice of Default identifies the "beneficiary (Note Owner)" as "Chase Home Finance LLC." Upon information and belief, Northwest Trustee knew or should have known that neither Chase nor "Chase Home Finance LLC" was the owner or holder of the subject Note and Deed of Trust on March 28, 2011. See Paragraph 3.7, above. Second, the Notice of Default does not identify the "note holder", as the term is defined in *RCW 61.24, et seq*. Third, the Notice of Default includes, by attachment, a "Beneficiary Declaration," that is defective in several particulars. The Declaration fails to identify the beneficiary, as required under *RCW 61.24, et seq*., and fails to support Northwest Trustee's allegation that Chase or "Chase Home Finance LLC" was the owner or holder of the subject Note on March 28, 2011. Moreover, the Declaration contains only a printed image of the signature of the allegedly declarant, Casey Hodges, who apparently affixed the image of his/her signature, or permitted, or had appropriated said image to be printed or affixed on his/her behalf to said Beneficiary Declaration in his/her capacity as an authorized signatory for Chase, making it doubtful that Casey Hodges ever read or reviewed anything relating to the holder of the Note, which Chase clearly was not. A true and correct copy of said Notice of Default, with the Beneficiary Declaration, is attached hereto and incorporated herein by this reference as ***Exhibit "F"***. By issuance of a defective Notice of Default, as alleged hereinabove, and reliance on a patently defective Beneficiary Declaration, Northwest Trustee violated its duty of good faith, pursuant to *RCW 61.24.010.*

3.9 In a letter dated April 14, 2011, from Chase to Plaintiff, Chase unambiguously stated that Plaintiff's loan was sold into a public security managed by Fannie Mae. A true and correct copy of said letter dated April 14, 2011 is attached here and incorporated herein by this reference as ***Exhibit "G".*** By its own admission, neither Chase nor any of its affiliates ever

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

owned the subject Note or Deed of Trust, in contradiction to the allegation contained in Defendants' Notice of Default of March 28, 2011 and attached Beneficiary Declaration. Upon information and belief, no Defendant named herein has acted with authority from the true holder of the subject Note and Deed of Trust, in violation of the provisions of *RCW 61.24, et seq.*

3.10 On February 3, 2012, an Assignment of the Deed of Trust was allegedly executed by MERS. Said Assignment was purportedly executed by Paula S. Gardner, an Assistant Secretary for MERS, in Franklin County, Ohio, assigning all beneficial interest under the Deed of Trust to Chase on February 3, 2012. Upon information and belief, Paula S. Gardner was an employee of Chase on February 3, 2012, not MERS, as she alleges. Said Assignment was notarized the same date by Robert D. Williams, a Notary Public for the State of Ohio. Said Assignment was recorded April 9, 2012, under King County Recording No. 20120409000591. A true and correct copy of said Assignment of Deed of Trust is attached hereto and incorporated herein by this reference as ***Exhibit "H"***. Remarkably, this Assignment of Deed of Trust refers to different MERS registration number (MIN No. 100015902206280578) than appears on the Deed of Trust, raising the inference that the document relates to another transaction. At no time relevant to this cause of action did MERS have an interest in the subject Note and the Assignment fails to specify the party on whose behalf it claims to act and makes no mention of its limited authority, as stated in the Deed of Trust. Upon information and belief, MERS executed this Assignment without the authority of its undisclosed principal, the true holder of the Note and Deed of Trust. Further, upon information and belief, said Assignment of Deed of Trust was prepared by Northwest Trustee, not MERS.

3.11 On March 31, 2012, an Appointment of Successor Trustee was executed by Chase, appointing Northwest Trustee as successor trustee under the subject Deed of Trust. Said

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

appointment was executed by Douglas Theener in his capacity as Vice President for Defendant Chase, falsely claiming its authority to do so as the "present beneficiary" of Plaintiff's Deed of Trust. Said Appointment of Successor Trustee was recorded April 9, 2012 under King County Recording No. 20120409000592. A true and correct copy of said Appointment of Successor Trustee is attached hereto and incorporated herein by this reference as ***Exhibit "I."*** Upon information and belief, said Assignment of Deed of Trust was prepared by Northwest Trustee.

3.12 On April 13, 2012, Northwest Trustee executed a Notice of Trustee's Sale, setting a sale date for July 20, 2012. This instrument was recorded under King County Recorder's instrument No. 20120417000698. A true and correct copy of said document is attached here and incorporated herein by this reference as ***Exhibit "J"***. Upon information and belief, said Notice of Trustee's Sale was executed and recorded without the authority of the true holder of the Note and owner of the Deed of Trust, in violation of *RCW 61.24, et seq*., in violation of Northwest Trustee's duty of good faith, under *RCW 61.24.010.*

3.13 Based upon the foregoing, Plaintiff alleges that Chase is not the legal owner of the Note and Deed of Trust and that Northwest Trustee was wrongfully attempting to enforce the Note and Deed of Trust at the time the Notice of Default and Notice of Trustee's Sale was issued.

## IV. CAUSE OF ACTION FOR WRONGFUL FORECLOSURE

4.1 Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

4.2 At no time relevant to this cause of action did MERS ever hold the subject Promissory Note or otherwise meet the definition of "Beneficiary" under *RCW 61.24.005.* Therefore MERS had no right to initiate a foreclosure of the Deed of Trust or legally assign such

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

right, since that right is specifically reserved to the owner and holder of the subject Promissory Note. It is Plaintiff's contention, based upon the foregoing, that the subject transaction is nothing more than a sham and therefore the assignment of the Deed of Trust from MERS to any assignee, including the Defendants named herein, is invalid.

4.3 *RCW 61.24.010* provides that "the trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."

4.4 *RCW 61.24.020* requires that only those deeds of trust that "secure the performance of an obligation of the grantor or another to the beneficiary may be foreclosed by trustee's sale." At no time relevant to this cause of action was Plaintiff obligated to perform any obligation, financial or otherwise, to MERS.

4.5 Plaintiff alleges that Chase was not the holder of obligation at the time the Notice of Default was issued, in violation of *RCW 61.24.020*. Defendant Northwest Trustee knew or should have known the holder of the obligation prior to engaging in any foreclosure or collection activity under the duty of good faith required by *RCW 61.24.010*.

4.6 Plaintiff alleges that the use of MERS was intended to enable Chase, its successors and assigns, to conceal the true ownership of the obligation and that MERS, Chase and Northwest Trustee knew, or should have known, of this intention. As a result of this conduct, Plaintiff was deprived of information to which he is legally entitled under state and federal law that would facilitate his ability to contest the validity of or negotiate the balance of the underlying obligation.

4.7 Based upon the facts alleged herein the Defendants have engaged in a wrongful foreclosure action against the Plaintiff and Defendants' foreclosure efforts sale should be enjoined, pursuant to *RCW 61.24.130*.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## V. CAUSE OF ACTION VIOLATION OF CONSUMER PROTECTION ACT

5.1 Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

5.2 Defendants Chase, Northwest Trustee and MERS have violated the Consumer Protection Act, *RCW 19.86, et seq.,* through a course of conduct in recording and relying upon documents that it knew or should have known to be false and that have the capacity to deceive a substantial portion of the public.

5.3 Plaintiff specifically alleges that the identification of Chase as the "holder" of the Note in the Notice of Default and Notice of Trustee's Sale was deceptive when Chase and Northwest Trustee knew or should have known that the actual holder was Fannie Mae or a yet unidentified securitized trust purportedly managed by Fannie Mae.

5.4 Plaintiff also alleges that MERS acted deceptively when it purports to act as "the beneficiary under [the] security instrument", when it knows or should know that under Washington law it must hold the Note to be the beneficiary, under *RCW 61.24.005(2).*

5.5 In promulgating false and improperly executed documents, Defendants are engaged in deceptive acts.

5.6 Defendants have violated various provisions of various statutes, including, without limitation, *RCW 61.24*, *et seq., 12 USC 2605, 15 U.S.C. 1692*, *et seq*., and *RCW 9A.82, et seq.,* which constitute *per se* violations of *RCW 19.86.*

5.7 Defendants have engaged in these activities as part of a normal course of business and commerce. Such activities are likely to be repeated affecting the people of the State of Washington as each Defendant has engaged in similar transactions with thousands of residents of the state.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

5.8 The public interest is negatively impacted by the pattern of conduct engaged in by Defendants. Additionally, each Defendant has engaged in similar transactions with thousands of residents of the State of Washington.

5.9 As a direct and proximate result of Defendants' misconduct, as alleged herein, Plaintiff has suffered injury and damages in an amount to be proven at time of trial, in addition the distraction and loss of time to pursue business and personal activities due to the necessity of addressing the wrongful conduct through this and other actions. These injuries are solely the result of the conduct of the Defendants in this action.

## VI. <u>CAUSE OF ACTION FOR VIOLATION OF *RCW 9A.82, et seq.*</u>

6.1 Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

6.2 The above-named Defendants, and each of them, jointly and severally, have engaged in a pattern and practice of willful conspiratorial, deceptive, unconscionable acts, in violation of *RCW 19.82, et seq.*, including, without limitation, the following:

A. Use of deception with the intent of misleading Plaintiff/property owners at their most vulnerable time (the definition of "profiteering"), as well as potential buyers foreclosed properties, Washington State regulators and the public at large, upon which these persons justifiably relied;

B. Recorded fraudulent and false instruments affecting real property titles, thereby impairing the stability of Washington land titles;

C. Circumvented the procedures set forth in *RCW 61.24, et seq.*, to exert possession and control over real property without valid authority and thereby attempting to accomplish theft of said real property through a non-judicial sale of Plaintiff's home;

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

D. Unlawfully charging Plaintiff unjust fees and interest to amount allegedly due which are purportedly secured by the subject Deed of Trust;

E. Utilizing the provisions of *RCW 61.24, et seq.*, to extort payments from Plaintiff to which they had no lawful right or authority to collect; and

F. Establishing a means by which they could resell unlawfully obtained (stolen) home of Plaintiff.

6.3 Plaintiff and a substantial portion of the residents of Washington have suffered damages proximately caused by the above-named Defendants' acts and omissions stated herein, including, without limitation, the following:

A. Diminishment of property values both directly and indirectly;

B. Degradation of surrounding neighborhoods aesthetics, and creating nuisances.

C. Damage to the public perception and reputation of those victimized by Defendants, including, without limitation, humiliation; and

D. Damages, both actual and perceived, to the integrity of the non-judicial foreclosure process in Washington, *RCW 61.24, et seq.;*

6.4 Plaintiff has directly incurred costs of attempting to resolve the issues alleged herein, including substantial out-of-pocket expenses, loss of time, attorney fees, research and the prosecution of this action in defense of their home, inn an amount to be proven at time of trial.

6.5 In addition to Plaintiff's out-of-pocket expenses, Plaintiff are entitled to treble damages and reasonable attorney's fees, as may be deemed appropriate, pursuant to *RCW 9A.82.100(4)(d)*.

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## VII. RESERVATION OF CLAIMS

Plaintiff specifically reserves the right to amend his claims against Defendant to assert claims for declaratory relief, fraud and misrepresentation, quiet title, trespass, and violation of the Fair Debt Collection Practices Act

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

8.1 For declaratory relief, declaring the actions of the above-named Defendants against Plaintiff to be void and unlawful.

8.2 That the Plaintiffs be awarded consequential damages, including attorney's fees incurred to bring this action and all other attorney's fees incurred in defending against the actions of the Defendants described more particularly above, jointly and severally, in an amount to be proved at trial;

8.3 That Defendants' actions in continuing and seeking to foreclose Plaintiff's home under the Deed of Trust are declared unlawful and void under the relevant provisions of *RCW 61.24*;

8.4 That Defendants be temporarily and permanently enjoined from conducting any trustee's sale under the subject Deed of Trust without first obtaining the right and authority under the subject Note and Deed of Trust to do so;

8.5 That the Plaintiffs be awarded any statutory relief, damages and attorney's fees that may be available, for Defendants violation of *12 USC 2605(e)*, *15 U.S.C. 1692, et seq.*, *RCW 9A.82, et seq.*, *RCW 19.86, et seq.*, and *RCW 61.24, et seq.;*

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

8.6 That Plaintiffs' title to their home, legally described hereinabove, be established and quieted in fee simple, against any and all claims of the above-named Defendants under the subject Deed of Trust;

8.7 That the actions of some or all of the Defendants be determined to be unfair and deceptive business practices, in violation of *RCW 19.86, et seq.* and that this Court award all such relief to Plaintiffs as they may be entitled, including treble damages and an award for costs and attorney's fees;

8.8 That Plaintiffs be granted such other and further relief as the Court may be just and equitable under the circumstances, including but not limited to an injunction blocking the sale previously scheduled for July 20, 2012 and now postponed.

**DATED** this 2nd day of August, 2012.

**KOVAC & JONES, PLLC.**

Richard Llewelyn Jones, WSBA # 12904
Attorney for Plaintiff

KOVAC & JONES, PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

# Exhibit "A"

220628056
100015902206280560

# NOTE

JUNE 10, 2005 [Date] KENT [City] WASHINGTON [State]

40115 278TH WAY SOUTHEAST
ENUMCLAW, WA 98022
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 352,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

CTX MORTGAGE COMPANY, LLC .

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on 8/01/2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 7/01/2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 650269 DALLAS, TX 75265-0269 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 2,029.19 .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.



220628056

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other oan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Preseutment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

220628056

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

RICHARD J. ZALAC (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

*[Sign Original Only]*

# Exhibit "B"

Return To:

CTX MORTGAGE COMPANY, LLC
P.O. Box 199113, FINAL DOCS
Dallas, TX 75219

Assessor's Parcel or Account Number: 072007 9037 00
Abbreviated Legal Description: PTN. GOV. LOT 1, 7-20-07E

[Include lot, block and plat or section, township and range] Full legal description located on page 3 .
Trustee: STEWART TITLE
18000 INTERNATIONAL BLVD, SOUTH,STE #510 Additional Grantees located on page 2 .
SEATAC,, WASHINGTON 98188

[Space Above This Line For Recording Data]

220628056

# DEED OF TRUST

MIN 100015902206280560

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated 6/10/2005 , together with all Riders to this document.

(B) **"Borrower"** is
RICHARD J. ZALAC A MARRIED MAN, AS HIS SEPARATE ESTATE
SARAH A. ZALAC TO PERFECT LIEN

Borrower is the trustor under this Security Instrument.

(C) **"Lender"** is
CTX MORTGAGE COMPANY, LLC

220628056

Lender is a A LIMITED LIABILITY COMPANY organized and existing under the laws of THE STATE OF DELAWARE. Lender's address is 2828 NORTH HARWOOD DALLAS, TX 75201-1516.

**(D) "Trustee"** is STEWART TITLE 18000 INTERNATIONAL BLVD, SOUTH,STE #510, SEATAC,, WASHINGTON 98188.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated 6/10/2005. The Note states that Borrower owes Lender THREE HUNDRED FIFTY TWO THOUSAND FIVE HUNDRED & 00/100 Dollars (U.S. $ 352,500.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 7/01/2035.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

220628056

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of KING [Name of Recording Jurisdiction]:

THE SOUTH 150 FEET OF THE NORTH 490 FEET OF THE EAST 240 FEET OF THAT PORTION OF GOVERNMENT LOT 1, SECTION 7, TOWNSHIP 20 NORTH, RANGE 7 EAST, W.M., IN KING COUNTY, WASHINGTON, LYING WESTERLY OF 278TH WAY SOUTHEAAST (ALSO KNOWN AS 278TH PLACE SOUTHEAST)

Parcel ID Number: 072007 9037 00 which currently has the address of
40115 278TH WAY SOUTHEAST [Street]
ENUMCLAW [City], Washington 98022 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance



premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.



Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.



220628056

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and sball be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source

P + 2 2 0 6 2 8 0 5 6 + C F 0 0 1 + 0 8 + 1 5 + 0 6 1 0 0 5 1 4 3 8

of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount tben due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not he released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any sueh loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by redueing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in eonnection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's

P + 2 2 0 6 2 8 0 5 6 + C F 0 0 1 + 1 0 + 1 5 + 0 6 1 0 0 5 1 4 3 8

notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and

P+220628056+CF001+11+15+061005143B

expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified

by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

220628056

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________________________ (Seal)
RICHARD J. ZALAC -Borrower

_______________________________ (Seal)
SARAH A. ZALAC -Borrower
TO PERFECT LIEN

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

220628056

STATE OF WASHINGTON
County of } ss:

On this day personally appeared before me

RICHARD J. ZALAC
SARAH A. ZALAC TO PERFECT LIEN

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this day of .

Notary Public in and for the State of Washington, residing at

My Appointment Expires on

# Exhibit "C"

CTX Mortgage Company
PO Box 199077
Dallas, TX 75219-9077

CTX MORTGAGE COMPANY®
A SUBSIDIARY OF CENTEX FINANCIAL SERVICES

August 11, 2005

ATTENCION
Si necesita ayuda en interpretar esta carta. Favor de llamar a Customer Service al 1-800-666-5363.

3636

Richard J. Zalac
40115 278th Way Southeast
Enumclaw WA 98022

RE: CTX Loan # 0220628056

Dear Borrower:

Please be advised that your new home loan has been transferred by CTX Mortgage Company, LLC to Countrywide Home Loans LP for future servicing effective with your 09/01/05 installment. This is a common practice in the mortgage industry and has no effect on the terms and conditions of your mortgage. Your escrow requirement may be reanalyzed sometime in the near future; however, your first payment to Countrywide Home Loans LP will remain the same. Your Countrywide Home Loans LP account number is # 71498939.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or at closing.

If you have any questions relating to the transfer of servicing from CTX Mortgage Company, LLC, please do not hesitate to contact us at 1-800-666-5363 between the hours of 8:00 AM to 5:00 PM Central Standard Time Monday through Friday.

Countrywide Home Loans LP will be your new servicer. The business addresses for Countrywide Home Loans LP are:

Send Monthly Payment to:
Countrywide Home Loans LP
Payment Processing
Po Box 10334
Van Nuys, CA 91410-0334
1-800-437-5760

Customer Service Inquiries:
Countrywide Home Loans LP
Po Box 10219

Van Nuys, CA 91410-0219
1-800-437-5760

Countrywide Home Loans LP's Customer Service Department will assist you with questions relating to your mortgage loan and can be contacted toll free at 1-800-437-5760 during the following days and times:

| Days | Times |
|---|---|
| Monday through Friday | 06:00 AM to 05:00 PM Pacific Time |

All written inquiries should be sent to the Customer Service address listed above.

999/3636

# Exhibit "D"


HOME LOANS
P.O. Box 10229
Van Nuys CA 91410-0229

Send Correspondence to:
P.O. Box 5170
Simi Valley CA 93062-5170

Business Address:
450 American Street
Simi Valley CA 93065-6285

**Notice Date:** October 12, 2006

**Account No.:** 71498939
**Property Address:**
40115 278th Way Southeast
Enumclaw, WA

Richard J. Zalac
40115 278th Way Se
Enumclaw, WA 98022-7742

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from **Countrywide Home Loans** to CHASE HOME FINANCE LLC, effective **November 1, 2006**.

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any terms or conditions of the mortgage instruments, other than the terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your *present servicer* send you this notice at least 15 days before the effective date of transfer, or at closing. Your *new servicer* must also send you this notice no later than 15 days after this effective date or at closing.

## YOUR *PRESENT* SERVICER:

Your *present servicer* is **Countrywide.** If you have any questions relating to the transfer of servicing from **Countrywide** call Customer Service, toll-free, at 1-800-669-6607 between 6:00 a.m. and 5:00 p.m. Pacific Time, Monday through Friday.

## YOUR *NEW SERVICER* CONTACT AND PAYMENT REMITTANCE ADDRESS:

Your *new servicer* will be CHASE HOME FINANCE LLC. The business address for your *new servicer* is: 3415 Vision Dr., Columbus, OH 43219. The address to send correspondence is: Attention: Customer Service, P.O. BOX 24696, Columbus, OH 43224-0696. Payments are to be received at: P.O. Box 78420, Phoenix, AZ 85062-8420. The toll-free telephone number of your new servicer is 1-800-848-9136. If you have any questions relating to the transfer of servicing to your new servicer call CHASE HOME FINANCE LLC, Attention: Customer Service toll-free at 1-800-848-9136 between 8:00 a.m. and 8:00 p.m., Eastern Time, Monday through Friday. Your complete loan file is being transferred to your *new servicer.*

## INFORMATION CONCERNING YOUR PAYMENTS:

**The date** that **Countrywide** will stop accepting payments from you is **October 31, 2006. The date** that your ***new servicer*** **CHASE HOME FINANCE LLC** will start accepting payments from you is November 1, 2006. Send all payments on or after that date to your *new servicer.* Your *new servicer* will send you new billing statements. If you have a payment due before you receive your new billing statement, **write your *new* servicer's loan number** on your check and mail it to your *new servicer* at the payment address shown above. Until you receive a new loan number, you may write your old loan number on the check.

If your payments were made by electronic debit, please contact your *new servicer* concerning the continuation of this service. Additionally, if your payments include a premium for life or disability insurance, or any other type of **optional insurance,** you will receive notification at a later date from your *new servicer* if there are any changes concerning the terms or continued availability of this insurance.

## OTHER INFORMATION FROM COUNTRYWIDE:

**Countrywide** will provide you within 60 days of the transfer a statement that shows all loan transactions from the date of your last year-end statement or escrow analysis to the date of transfer. If any check or other instrument received by **Countrywide** is/was returned unpaid, you remain liable to **Countrywide** for the amount unpaid. At year-end, you will receive a statement of account from Countrywide for payments received and applied to your account through October 31, 2006. This statement is for your use when preparing your tax return. If you have any questions, please contact **Countrywide** at the toll-free number listed above.

Sincerely,

April Rush

## BORROWER'S RIGHTS

You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding Countrywide's servicing of your loan, it must be sent to the following address:

**Countrywide Home Loans Servicing LP**
**Monthly Statements SV3-14B**
**P.O. Box 5170**
**Simi Valley, CA 93062-5170**

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business-Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

# Exhibit "E"



The Fannie Mae Loan Lookup enables mortgage borrowers to quickly determine if Fannie Mae owns their loan by providing a street address, unit, city, state, and ZIP code.

Street Address * 40116 278th Way SE

Unit

City ENUMCLAW

State WA

Zip Code * 98022

888-995-HOPE
Homeowner's HOPE Hotline
888-995-HOPE (4673)
877-304-9709 TTY

[ ] * I confirm that I am the owner of this property, or have the consent of the owner to look up this information.

* Required Fields

kenuzin often

Type the two words:

Match Found.

Based on the property information entered, it appears Fannie Mae owns a loan at this address.

A "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification.

If you're interested in a refinance, please contact your mortgage lender or servicer (the organization to whom you make your monthly mortgage payments) to confirm these results and ask about the Home Affordable Refinance Plus program.

You can find more information at MakingHomeAffordable.gov.

View Frequently Asked Questions for this Loan Lookup tool.

Thank you for contacting Fannie Mae.

If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673) or via a TTY at 877-304-9709. The Hotline can help with questions about the program and offers free HUD-certified counseling services in English, Spanish, and other languages.

**Know Your Options - Avoid Foreclosure**

Learn more about avoiding foreclosure and how you can have a more informed discussion with your mortgage company.

Visit: KnowYourOptions.com

The Fannie Mae Loan Lookup is provided as a convenience for borrowers. Fannie Mae makes no representation, warranty, or guarantee regarding the accuracy or completeness of the results. A search that results in a "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification. Information that does not match our records exactly may return inaccurate results. You should contact your mortgage lender to verify these results.

For information about the use of our site and our privacy policy, see Legal Information. Click here for FAQs.

© 2010 Fannie Mae

- FAQ |
- Site Map |
- Privacy |
- Legal

1/25/2011

# Exhibit "F"

# Notice of Default

To:

Richard J. Zalac
40115 278th Way SE
Enumclaw, WA 98022

Sarah A. Zalac
40115 278th Way SE
Enumclaw, WA 98022

Regarding the real property "Property" located at:

**Property Address:**
40115 278TH Way SE
Enumclaw, WA 98022

**If you are the owner of this property and you occupy it as your residence, you should take care to protect your interest in your home. This notice of default (your failure to pay or otherwise perform) is the first step in a process that could result in you losing your home. You should carefully review your options. For example:**

**Can you pay and stop the foreclosure process?**
**Do you dispute the failure to pay?**
**Can you sell your property to preserve your equity?**
**Are you able to refinance this loan or obligation with a new loan or obligation from another lender with payments, terms, and fees that are more affordable?**
**Do you qualify for any government or private homeowner assistance programs?**
**Do you know if filing for bankruptcy is an option? What are the pros and cons of doing so?**

**Do not ignore this notice; because if you do nothing, you could lose your home at a foreclosure sale. (No foreclosure sale can be held any sooner than ninety days after a notice of sale is issued and a notice of sale annot be issued until thirty days after this notice.) Also, if you do nothing to pay what you owe, be careful of people who claim they can help you. There are many individuals and businesses that watch for the notices of sale in order to unfairly profit as a result of borrowers' distress.**

**You may feel you need help understanding what to do. There are a number of professional resources available, including home loan counselors and attorneys, who may assist you. Many legal services are lower-cost or even free, depending on your ability to pay. If you desire legal help in understanding your options or handling this default, you may obtain a referral (at no charge) by contacting the county bar association in the county where your home is located. These legal referral services also provide information about lower-cost or free legal services for those who qualify. You may contact the Department of Financial Institutions or the statewide civil legal aid hotline for possible assistance or referrals.**

A) **Property description:**

The South 150 feet of the North 490 feet of the East 240 feet of that portion of Government Lot 1, Section 7, Township 20 North, Range 7 East, W.M., in King County, Washington, lying Westerly of 278th Way Southeast (also known as 278th Place Southeast)

B) **Deed of Trust information:** King County Auditor's File No.: 20050615002158; Recording Date: 06/15/05

C) **Declaration of payment default:** The beneficiary declares you in default for failing to make payments as required by your note and deed of trust.

**D) Itemized account of the arrears:**

| | |
|---|---|
| Delinquent monthly payments beginning with the 11/01/10 installment. | $12,906.50 |
| Late charges: | $507.30 |
| Lender's Fees and Costs | $28.00 |
| Trustee's fees | $607.50 |
| Costs | |
| Title report (estimate) | $1,153.04 |
| Recording | $30.00 |
| Certified mail | $22.00 |
| Posting | $70.00 |
| **Total arrears and costs due today** | **$15,324.34** |

**E) Itemized account of all other specific charges, costs or fees that grantor or borrower is or may be obliged to pay to reinstate the deed of trust before the recording of the notice of sale.**

| | |
|---|---|
| Additional monthly payment | $2,581.30 |
| Additional late charge | $101.46 |

**F) Amount required to cure payment defaults before notice of sale recorded: $17,977.10**
**In addition, grantor or borrower must timely cure all other defaults before the note and deed of trust are deemed reinstated.**

***Payments and late charges continue to accrue and additional advances may be made. The sums stated above are estimates only. Before attempting to reinstate the loan, call us at 425-586-1900 to learn the exact amounts of monetary defaults and actions required to cure possible other defaults.***

**G) Effect of failure to cure:** Failure to cure all alleged defaults within 30 days of mailing/personal service of this notice may lead to recordation, transmittal and publication of a notice of sale and the Property may be sold at public auction no less than 120 days from the date of this notice.

**H) Effect of recording, transmitting and publication of the notice of sale:** The effect of the recordation, transmittal and publication of the notice of sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property for sale.

**I) Effect of sale of the Property:** The Trustee's sale of the Property will deprive the borrower, grantor and any successor in interest of all their interest in the Property.

**J) Recourse to courts:** The borrower, grantor, any guarantor or any successor in interest has recourse to the courts pursuant to RCW 61.24.130 to contest the default(s) on any proper ground.

**K) Contact Information for Beneficiary (Note Owner) and Loan Servicer.**

The beneficiary of the deed of trust is **Chase Home Finance LLC**, whose address and telephone number are:

10790 Rancho Bernardo Rd
San Diego, CA 92127
800-848-9380

The loan servicer for this loan is Chase Home Finance, LLC, whose address and telephone number are:

800 Brooksedge Boulevard
Westerville, OH 43081
800-848-9380

**L) Notice pursuant to the Federal Fair Debt Collection Practices Act:** If you are the consumer who originally contracted the debt or if you assumed the debt, then you are notified that:

1. As of the date of this notice you owe $335,104.39. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information, write to the address provided in Section 5 below or call us at 425-586-1900.
2. The creditor to whom the debt is owed Chase Home Finance LLC/Chase Home Finance, LLC.
3. Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid.
4. If you notify us within 30 days after receipt of this notice that you dispute the debt or any part of it, we will request that the creditor obtain verification of the debt and mail it to you.
5. If you request within 30 days after receipt of this notice, we will request that the creditor provide you with the name and address of the original creditor, if different from the current creditor.
6. Written requests should be addressed to Northwest Trustee Services, Inc., Post Office Box 997, Bellevue, WA 98009-0997.

**Dated: March 28, 2011**

Chase Home Finance LLC
By Northwest Trustee Services, Inc., its duly authorized agent

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

**NORTHWEST TRUSTEE SERVICES, INC.**
**P.O. BOX 997**
**BELLEVUE, WA 98009-0997**

**File No:** 7037.75897
**Borrower:** Zalac, Richard J. and Sarah A.
**Client:** Chase Home Finance, LLC

**'ECKY BAKER**
**425-586-1900**
**FAX 425-586-1997**

BENEFICIARY DECLARATION PURSUANT TO CHAPTER 61.24 RCW (SB 5810) AND FORECLOSURE LOSS MITIGATION FORM

Borrower(s): RICHARD J ZALAC
Beneficiary:
Loan Servicer: JP MORGAN CHASE BANK NA
Property: 40115 278TH WAY SE
ENUMCLAW WA 98022
Loan No.: 1981157427

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that [check the applicable box and fill in any blanks so that the trustee can insert, on the beneficiary's behalf, the applicable declaration in the notice of default required under chapter 61.24 RCW as specified in SB 5810 (this act)]: Regarding the above-referenced loan (check applicable box only ONE choice should apply):

[ ] (1) The beneficiary or beneficiary's authorized agent has contacted the borrower under, and has complied with, section 2 of this act (contact provision to "assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure").

[ X ] (2) The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required in section 2(5) of this act and, after waiting fourteen days after the requirements in section 2 of this act were satisfied, the beneficiary or the beneficiary's authorized agent sent to the borrower(s), by certified mail, return receipt requested, the letter required under section 2 of this act.

[ ] (3) The borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trnstee.

[ ] (4) Under section 2 of this act, the beneficiary or the beneficiary's authorized agent has verified information that, on or before the date of this declaration, the borrower(s) has filed for bankruptcy, and the bankruptcy stay remains in place, or the borrower has filed for bankruptcy and the bankruptcy court has granted relief from the bankruptcy stay allowing the enforcement of the deed of trust."

**SB 5810 Does NOT apply because, regarding the above-referenced loan:**

[ ] The deed of trust was made before January 1, 2003 or after December 31, 2007, inclusive; or

[ ] The property is vacant, as evidenced by the return of the keys or communication in writing from the borrower(s); or

[ ] The deed of trust secures a commercial loan; or

[ ] The deed of trust secures obligations of a grantor who is not the borrower or a guarantor; or

[ ] The deed of trust secures a purchaser's obligations under a seller-financed sale.

Dated: 3/24/2011

JPMorgan Chase Bank N.A.

By: ______________________
(Casey Hodges)
Beneficiary's/Authorized Agent's Signature

# Exhibit "G"

Chase (OH4-7302)
3415 Vision Drive
Columbus, OH 43219-6009

April 14, 2011

00687-01 IF1A 104-000000000000
Richard J. Zalac
40115 278th Way SE
Enumclaw, WA 98022

Re: Account Number: ******7427
Richard J. Zalac

**Loan Investor**

Dear Richard J. Zalac:

I am writing in response to the inquiry Chase received about the loan referenced above.

Your loan was sold into a public security managed by FNMA A/A and may include a number of investors. As the servicer of your loan, Chase is authorized by the security to handle any related concerns on their behalf. The address of your investor is:

13150 WORLDGATE DRIVE
HERNDON VA 20170

FNMA

We appreciate your business. If you have questions, please call us at the telephone number below.

Sincerely,

Chase
(800) 848-9136
(800) 582-0542 TDD / Text Telephone
www.chase.com

CC278

# Exhibit "H"

Unofficial Document

After Recording Return to:
Northwest Trustee Services, Inc.
Attention: Becky Baker
P.O. Box 997
Bellevue, WA 98009-0997

20120409000591
DOCUMENT PROCE ADT 14.00
PAGE-001 OF 001
04/09/2012 11:25
KING COUNTY, WA

7037.75897/Zalac, Richard J. and Sarah A. MIN# 100015902206280578

5237997
FIRST AM
(1) 14

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to JPMorgan Chase Bank, National Association, whose address is 10790 Rancho Bernardo Rd, San Diego, CA 92127, all beneficial interest under that certain deed of trust, dated 06/10/05, executed by Richard J. Zalac, a married man, as his separate estate, Sarah A. Zalac to perfect lien, Grantors, to Stewart Title, Trustee, and recorded on 06/15/05, under Auditor's File No. 20050615002158, Records of King County, Washington described as follows:

The South 150 feet of the North 490 feet of the East 240 feet of that portion of Government Lot 1, Section 7, Township 20 North, Range 7 East, W.M., in King County, Washington, lying Westerly of 278th Way Southeaast (also known as 278th Place Southeast). More accurately described as: The South 150 feet of the North 490 feet of the East 240 feet of that portion of Government Lot 1, Section 7, Township 20 North, Range 7 East, W.M., in King County, Washington, lying Westerly of 278th Way Southeast (also known as 278th Place Southeast)

Dated February 3, 2012

Mortgage Electronic Registration Systems, Inc.

By: [signature] Paula S Gardner
Title: Assistant Secretary

STATE OF Ohio )
) ss.
COUNTY OF Franklin )

I certify that I know or have satisfactory evidence that Paula S Gardner is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Mortgage Electronic Registration Systems, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 3 Feb 2012

NOTARIAL SEAL
STATE OF OHIO
ROBERT D WILLIAMS
NOTARY PUBLIC
STATE OF OHIO
My Comm. Expires January 14, 2017

[signature]
NOTARY PUBLIC in and for the State of Ohio
Residing at Westerville OH
My commission expires 1/14/2017

# Exhibit "I"



After Recording Return to:
Becky Baker
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

20120409000592
DOCUMENT PROCE AST 14.00
PAGE-001 OF 001
04/09/2012 11:25
KING COUNTY, WA

## Appointment of Successor Trustee

FIRST AM 5271999 ① 14

File No. 7037.75897

Richard J. Zalac, a married man, as his separate estate, Sarah A. Zalac to perfect lien is/are the grantor(s), Stewart Title is the trustee and Mortgage Electronic Registration Systems, Inc, as nominee for CTX MORTGAGE COMPANY, LLC, its successors and assigns is the beneficiary under that certain deed of trust dated 06/10/05 and recorded on 06/15/05 under King County, Washington Auditor's File No. 20050615002158.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

**JPMorgan Chase Bank, National Association**

By [signature]
Douglas Theener Vice President

STATE OF Ohio )
)ss
COUNTY OF Franklin )

I certify that I know or have satisfactory evidence that Douglas Theener is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Vice President of **JPMorgan Chase Bank, National Association** to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 03·31·2012

Rachel L Echard
Notary Public in and for the State of Ohio
Residing at Westerville
My appointment expires 02-16-2016

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA 98009-0997
425-586-1900 FAX 425-586-1997

Client: JPMorgan Chase Bank, N.A.
Borrower: Zalac, Richard J. and Sarah A.

NOTARIAL SEAL STATE OF OHIO

RACHEL L. ECHARD
Notary Public, State of Ohio
My Commission Expires
02-16-2016

Unofficial Document

# Exhibit "J"

4
1ST AM

After Recording, Return to:
Heather L. Smith
Northwest Trustee Services, INC.
P.O. Box 997
Bellevue, WA 98009-0997

20120417000698
DOCUMENT PROCE NTS 65.00
PAGE-001 OF 004
04/17/2012 11:21
KING COUNTY, WA

**File No.:** 7037.75897
**Grantors:** Northwest Trustee Services, Inc.
JPMorgan Chase Bank, National Association
**Grantee:** Richard J. Zalac, a married man as his separate estate.
**Ref to DOT Auditor File No.:** 20050615002158
**Tax Parcel ID No.:** 072007-9037-00
**Abbreviated Legal:** PTN. GOV. LOT 1, 7-20-07E

5271997

**Notice of Trustee's Sale**
Pursuant to the Revised Code of Washington 61.24, et seq.

I.

On **July 20, 2012**, at 10:00 a.m. The northwest corner of the ground level parking area located under the Pacific Corporate Center building, 13555 SE 36th Street in the City of Bellevue, State of Washington, the undersigned Trustee (subject to any conditions imposed by the Trustee) will sell at public auction to the highest and best bidder, payable at time of sale, the following described real property "Property", situated in the County(ies) of King, State of Washington:

> The South 150 feet of the North 490 feet of the East 240 feet of that portion of Government Lot 1, Section 7, Township 20 North, Range 7 East, W.M., in King County, Washington, lying Westerly of 278th Way Southeaast (also known as 278th Place Southeast). More accurately described as: The South 150 feet of the North 490 feet of the East 240 feet of that portion of Government Lot 1, Section 7, Township 20 North, Range 7 East, W.M., in King County, Washington, lying Westerly of 278th Way Southeast (also known as 278th Place Southeast)

Commonly known as: 40115 278th Way SE
Enumclaw, WA 98022

which is subject to that certain Deed of Trust dated 06/10/05, recorded on 06/15/05, under Auditor's File No. 20050615002158, records of King County, Washington, from Richard J. Zalac, a married man, as his separate estate, Sarah A. Zalac to perfect lien, as Grantor, to Stewart Title, as Trustee, to secure an obligation "Obligation" in favor of Mortgage Electronic Registration Systems, Inc, as nominee for CTX Mortgage Company, LLC, its successors and assigns, as Beneficiary, the beneficial interest in which was assigned by Mortgage Electronic Registration Systems, Inc. to JPMorgan Chase

Unofficial Document

Bank, National Association, under an Assignment/Successive Assignments recorded under Auditor's File No. 20120409000591.

*The Tax Parcel ID number and Abbreviated Legal Description are provided solely to comply with the recording statutes and are not intended to supplement, amend or supersede the Property's full legal description provided herein.

II.

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the Obligation in any Court by reason of the Grantor's or Borrower's default on the Obligation secured by the Deed of Trust.

III.

The Beneficiary alleges default of the Deed of Trust for failure to pay the following amounts now in arrears and/or other defaults:

| | | Amount due to reinstate by 4/12/2012 |
|---|---|---|
| Monthly Payments | | $47,360.12 |
| Lender's Fees & Costs | | $619.30 |
| Total Arrearage | $47,979.42 | |
| Trustee's Expenses (Itemization) | | |
| Trustee's Fee | | $675.00 |
| Title Report | | $1,153.04 |
| Statutory Mailings | | $9.56 |
| Recording Costs | | $14.00 |
| Postings | | $70.00 |
| Total Costs | $1,921.60 | |
| Total Amount Due: | | $49,901.02 |

Other known defaults as follows:

IV.

The sum owing on the Obligation is: Principal Balance of $324,955.57, together with interest as provided in the note or other instrument evidencing the Obligation from 10/01/10, and such other costs and fees as are due under the Obligation, and as are provided by statute.

V.

The Property will be sold to satisfy the expense of sale and the Obligation as provided by statute. The sale will be made without representation or warranty, express or implied regarding title, possession, encumbrances or condition of the Property on July 20, 2012. The default(s) referred to in paragraph III, together with any subsequent payments, late charges, advances costs and fees thereafter due, must be cured by 07/09/12 (11 days before the sale date), to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before the close of the Trustee's business on 07/09/12 (11 days before the sale date), the default(s) as set forth in paragraph III, together with any

Unofficial Document

subsequent payments, late charges, advances, costs and fees thereafter due, is/are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after 07/09/12 (11 days before the sale date), and before the sale by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire balance of principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

NAME AND ADDRESS

| | |
|---|---|
| Richard J. Zalac<br>40115 278th Way SE<br>Enumclaw, WA 98022 | Sarah A. Zalac<br>40115 278th Way SE<br>Enumclaw, WA 98022 |

by both first class and either certified mail, return receipt requested on 03/28/11, proof of which is in the possession of the Trustee; and on 03/28/11 Grantor and Borrower were personally served with said written notice of default <u>or</u> the written notice of default was posted on a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.

The Trustee, whose name and address are set forth below, will provide in writing to anyone requesting it a statement of all foreclosure costs and trustee's fees due at any time prior to the sale.

VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their right, title and interest in the Property.

IX.

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

Unofficial Document

**The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.**

EFFECTIVE: 4/12/2012

**Northwest Trustee Services, Inc., Trustee**

**By** [signature]
**Authorized Signature**
**P.O. BOX 997**
**Bellevue, WA 98009-0997**
**Contact: Heather L. Smith**
**(425) 586-1900**

STATE OF WASHINGTON )
) ss.
COUNTY OF KING )

I certify that I know or have satisfactory evidence that Heather Smith is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 4/13/12

JESSICA LYNN CLIFTON
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
03-07-15

[signature]
NOTARY PUBLIC in and for the State of Washington, residing at Fed Way
My commission expires 3/7/15

**NORTHWEST TRUSTEE SERVICES, INC., SUCCESSOR BY MERGER TO NORTHWEST TRUSTEE SERVICES PLLC FKA NORTHWEST TRUSTEE SERVICES, LLC, P.O. BOX 997, BELLEVUE, WA 98009-0997 PHONE (425) 586-1900 FAX (425) 586-1997**

**File No:** 7037.75897
**Client:** JPMorgan Chase Bank, N.A.
**Borrower:** Zalac, Richard J. and Sarah A.

**SERVING WA, OR, ID, CA, NV, AZ, MT HI**

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Unofficial Document

# Exhibit "K"



ROUTH CRABTREE OLSEN, P.S.

13555 SE 36th St., Suite 300
Bellevue, WA 98006
Telephone: 425.458.2121
Fax: 425.458.2131
www.rcolegal.com

Sakae S. Sakai
Attorney
Telephone: 425.247.2025
Fax: 425.974.8047
ssakai@rcolegal.com

January 12, 2012

RECEIVED
JAN 17 2012
OFFICE OF THE ATTORNEY GENERAL
VANCOUVER OFFICE

Attorney General of Washington
Consumer Protection Division
Jim McAdams
1220 Mail Street, Suite 549
Vancouver, WA 98660
**File Number: 398822**

***Re:*** ***Richard J. Zalac***
***JPMorgan Chase Bank, National Association/Loan No: 1981157427***
***Property address: 40115 278th Way SE, Enumclaw, WA 98022***
***Our File No: 7037.75897***

Dear Mr. McAdams:

I am writing in response to your email correspondence dated January 6, 2012, concerning a complaint against our firm Routh Crabtree Olsen, P.S. ("Routh Crabtree Olsen") as well as our firm's client, Northwest Trustee Services, Inc. ("NWTS").

The consumer complaint filed by borrower Richard J. Zalac on January 2, 2012 alleges that the Notice of Default prepared by NWTS was defective for multiple reasons.

A copy of our firm's July 5, 2011 response to Mr. Zalac's then attorney Jill Smith, includes a validation of the debt, and is attached as Exhibit 1. That validation addressed Mr. Zalac's concerns regarding (1) the inclusion of Sarah Zalac on the Notice of Default, (2) Chase Home Finance, LLC's ("Chase") standing to enforce the promissory note, and (3) NWTS's role as authorized agent of Chase in issuing the Notice of Default.

On August 15, 2011, Routh Crabtree Olsen sent a second letter to attorney Jill Smith in response to a subsequent correspondence dated July 21, 2011. A copy of that response is attached as Exhibit 2. As relevant to the issues Mr. Zalac raises in his consumer complaint, the response reaffirms the fact that Chase issued the Notice of Default through NWTS as its authorized agent. The response further confirms that no appointment of successor trustee had been recorded as of the date of the response, and that NWTS was acting solely as an agent for Chase, as provided for by state. More specifically, the Washington Deed of Trust Act, at RCW § 61.24.031(a)(a), expressly recognizes that a trustee, beneficiary, *or authorized agent* may issue a Notice of Default.

On October 4, 2011, Routh Crabtree Olsen sent a letter directly to Mr. Zalac as he was no longer then represented by counsel, in response to his correspondence dated August 25, 2011. A copy of Routh Crabtree Olsen's letter is attached as Exhibit 3. The letter incorporated by reference the previous response letters sent by Routh Crabtree Olsen.

Finally, on October 24, 2011, Routh Crabtree Olsen sent a fourth letter, the second addressed to Mr. Zalac. A copy of the fourth response letter is attached as Exhibit 4. As stated in the previous response letters, the fourth letter indicated that Routh Crabtree Olsen was satisfied that its client NWTS was acting in compliance with state and federal laws in the nonjudicial foreclosure process. Moreover, in an effort to assist Mr. Zalac, the letter invited Mr. Zalac to contact Chase's loss mitigation department directly to discuss possible workout options.

Concerning Mr. Zalac's allegations regarding the Federal National Mortgage Association ("FNMA"), the FNMA servicing guidelines[1] and state law clarify FNMA's role as investor, Chase's role as servicer, and Chase's standing to enforce the promissory note.

Pursuant to the Washington Deed of Trust Act, a "beneficiary" is defined as the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation.[2] In turn, a "holder" is defined in part as the person in possession of the negotiable instrument if it is payable to bearer.[3] Pursuant to the Uniform Commercial Code, codified under Washington law, a holder is entitled to enforce the promissory note.[4]

In order to ensure that a servicer is able to perform the services and duties incident to the servicing of a mortgage loan, FNMA, pursuant to its servicing guidelines, temporarily gives the servicer possession of the promissory note whenever the servicer, acting in its own name, represents FNMA's interests in foreclosure actions. This transfer confers "Holder" status on the servicer. In this case, this is Chase. As holder, Chase is a beneficiary as defined by the Washington Deed of Trust Act. Accordingly, NWTS has authority, as Chase's authorized agent, to issue a Notice of Default.

///

[1] Federal National Mortgage Association, Fannie Mae Single Family 2011 Servicing Guide, *available at* https://www.efanniemae.com/sf/guides/ssg/svcg/svc061011.pdf

[2] RCW § 61.24.005(2)

[3] RCW § 62A.1-201(20). A copy of the promissory note is attached as Exhibit 4. The blank indorsement by CTX Mortgage Company, LLC demonstrates that the promissory note is payable to bearer.

[4] RCW § 62A.3-301

It is my hope that the above information is sufficient to address any concerns. If there is anything more that I can provide or if anyone would like to discuss the matter further, please feel free to contact me directly at (425) 247-2025. Thank you.

Sincerely,

ROUTH CRABTREE OLSEN, P.S.

By: ______________________
Sakae S. Sakai
Attorney at Law

Enclosures

13555 S.E. 36th St., Suite 300 | Bellevue, WA 98006 | 425.458.2121 phone | 425.458.2131 fax

AFTER RECORDING MAIL TO:
Richard J. Zalac
40115 278th Way Southeast
Enumclaw, WA 98022

20050615002156
STEWART TITLE WD 19.00
PAGE001 OF 001
06/15/2005 16:01
KING COUNTY, WA

# Statutory Warranty Deed

Escrow Number: 19402K-MH

Grantor(s): Kurtis Stanley Kahne and Beth Lillian Kahne
Grantee(s): Richard J. Zalac
Abbreviated Legal: Ptn. Gov. Lt. 1, 7-20-07E
Assessor's Tax Parcel Number(s): 072007-9037-00

①205110232
STEWART TITLE

THE GRANTOR Kurtis Stanley Kahne and Beth Lillian Kahne, husband and wife for and in consideration of TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION in hand paid, conveys and warrants to Richard J. Zalac, a Married Man as His Separate Estate the following described real estate, situated in the County of King, State of Washington.

THE SOUTH 150 FEET OF THE NORTH 490 FEET OF THE EAST 240 FEET OF THAT PORTION OF GOVERNMENT LOT 1, SECTION 7, TOWNSHIP 20 NORTH, RANGE 7 EAST, W.M., IN KING COUNTY, WASHINGTON, LYING WESTERLY OF 278TH WAY SOUTHEAST (ALSO KNOWN AS 278TH PLACE SOUTHEAST).

SUBJECT TO: 1) Terms, covenants, conditions and restrictions as contained in lot line adjustment under Rec. No. 9005072125

Dated June 10, 2005

[signature] Kurtis Stanley Kahne

[signature] Beth Lillian Kahne

STATE OF Washington }
COUNTY OF King } SS:

I certify that I know or have satisfactory evidence that Kurtis Stanley Kahne and Beth Lillian Kahne is/are the person(s) who appeared before me, and said person(s) acknowledged that he/she/they signed this instrument and acknowledge it to be his/her/their free and voluntary act for the uses and purposes mentioned in this instrument.

Dated: 6-13-2005

[signature]
Notary Public in and for the State of Washington
Residing at Seattle
My appointment expires: 2-21-2009

KAREN J. MCMILLAN NOTARY PUBLIC COMMISSION EXPIRES 02-21-09 STATE OF WASHINGTON

E2131181
06/15/2005 15:54
KING COUNTY, WA
TAX $8,366.00
SALE $470,000.00
PAGE001 OF 001



20050615002157
STEWART TITLE QCD 19.00
PAGE001 OF 001
06/15/2005 16:01
KING COUNTY, WA

AFTER RECORDING MAIL TO:
Richard Zalac
40115 278th Way Southeast
Enumclaw, WA 98022

E2131182
06/15/2005 15:55
KING COUNTY, WA
TAX $2.00
SALE $0.00

PAGE001 OF 001

(1) 20511232
STEWART TITLE

## QUIT CLAIM DEED

**Escrow Number: 19402K-MH**

**Grantor(s): Sarah A. Zalac**
**Grantee(s): Richard J. Zalac**
**Abbreviated Legal: Ptn. Gov. Lt. 1, 7-20-07E**
**Assessor's Tax Parcel Number(s): 072007-9037-00**

**THE GRANTOR Sarah A. Zalac, wife of Grantee** for and in consideration of **no consideration, to separate community property only,** conveys and quit claims to **Richard J. Zalac, husband of Grantor** the following described real estate, situated in the County of **King** State of Washington, together with all after acquired title of the grantor(s) therein:

THE SOUTH 150 FEET OF THE NORTH 490 FEET OF THE EAST 240 FEET OF THAT PORTION OF GOVERNMENT LOT 1, SECTION 7, TOWNSHIP 20 NORTH, RANGE 7 EAST, W.M., IN KING COUNTY, WASHINGTON, LYING WESTERLY OF 278TH WAY SOUTHEAST (ALSO KNOWN AS 278TH PLACE SOUTHEAST).

**Dated: June 10, 2005**

Sarah A Zalac
**Sarah A. Zalac**

State of Washington
County of } SS:

I certify that I know or have satisfactory evidence that **Sarah A. Zalac** is/are the person(s) who appeared before me, and said person(s) acknowledged that he/she/they signed this instrument and acknowledge it to be his/her/their free and voluntary act for the uses and purposes mentioned in this instrument.

Dated: June 13, 2005

LISA SHIMIZU
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES 10-9-06

Notary Public in and for the State of Washington
Residing at: Renton
My appointment expires: 10/09/06

LPB-12

FILED
12 AUG 09 AM 11:10

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC, Plaintiff, v. CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants. | No. 12-2-23547-3<br>DECLARATION OF SERVICE<br>*(Clerk's Action Required)* |

**DECLARATION OF SERVICE**

**I, DAN L. WILLIAMS,** declare as follows:

1. That I am now, and have been at all times relevant hereto, a resident of the State of Washington, over eighteen years of age, competent to be a witness herein and was not a party to or had an interest in the within cause of action.

2. That on August 8, 2012, I caused a copy of the **Summons on Amended Complaint** and **Amended Complaint** to be served to the following party(ies) by depositing

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

said copies in the mails of the United States in an envelope postage prepaid as U.S. First Class Mail and addressed as follows:

Heidi E. Buck
ROUTH CRABTREE OLSEN PS
13555 S.E. 36th St, Suite 300
Bellevue, WA 98006

Attorneys for Northwest Trustee Services, Inc.

**DATED** this 8th day of August, 2012.

Dan L. Williams, Paralegal

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

CERTIFICATE OF SERVICE

I, the undersigned certify under penalty of perjury under the laws of the State of Washington that on August 8, 2012, the foregoing **Declaration of Service** was served on the following party(ies) and in the manner(s) indicated

| | |
|---|---|
| Heidi E. Buck, WSBA No. 41769<br>ROUTH CRABTREE OLSEN PS<br>13555 S.E. 36th St, Suite 300<br>Bellevue, WA 98006<br>Tel. 425 213 5534<br>Fax 425 283 5968<br>Attorneys for Northwest Trustee Services, Inc . | (X) Postage Paid U.S. First Class Mail |
| | |
| William Rasmussen WSBA No. 20029<br>Matt Sullivan WSBA No. 40873<br>DAVIS WRIGHT TREMAINE LLP<br>1201 Third Avenue, Suite 2200<br>Seattle, WA 98101-3045<br>Tel 206 622 3150<br>Attorneys for Defendants JPMorgan Chase; Mortgage Electronic Registration Systems, Inc. and the Federal National Mortgage Association | (X) Postage Paid U.S. First Class Mail |

Dated August 8th, 2012.

Dan L. Williams, Paralegal

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

FILED
12 AUG 09 AM 11:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC, Plaintiff, v. CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants. | No. 12-2-23547-3<br>CERTIFICATE OF SERVICE<br>*(Clerk's Action Required)* |

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that on August 8, 2012, I caused a copy of the **Order Setting Civil Case Schedule** to be served to the following party(ies) and in the manner(s) indicated:

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

| | | |
|---|---|---|
| Heidi E. Buck, WSBA No. 41769<br>ROUTH CRABTREE OLSEN PS<br>13555 S.E. 36th St, Suite 300<br>Bellevue, WA 98006<br>Tel. 425 213 5534<br>Fax 425 283 5968<br>Attorneys for Northwest Trustee Services, Inc . | (X) | Postage Paid U.S. First Class Mail |
| | | |
| William Rasmussen WSBA No. 20029<br>Matt Sullivan WSBA No. 40873<br>DAVIS WRIGHT TREMAINE LLP<br>1201 Third Avenue, Suite 2200<br>Seattle, WA 98101-3045<br>Tel 206 622 3150<br>Attorneys for Defendants JPMorgan Chase; Mortgage Electronic Registration Systems, Inc. and the Federal National Mortgage Association | (X) | Postage Paid U.S. First Class Mail |

Dated this 8th day of August, 2012.

Dan L. Williams, Paralegal

KOVAC & JONES PLLC
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

FILED
12 AUG 10 PM 3:01

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RICHARD J. ZALAC,

Plaintiff,

vs.

CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants,

Defendant(s),

No. 12-2-23547-3 KNT

AFFIDAVIT OF SERVICE

I, MICHAEL W. GRAHAM, of Pierce County, State of Washington, do hereby certify under penalty of perjury under the laws of the state of Washington that the following is true and correct;

I am over eighteen years of age and competent to testify as to the matters herein;

I received one copy of:

- Summons

KKWT PROCESS SERVICES.
P.O. Box 4623
Spanaway, Wa 98387
(253)565-6670

- Summons on Amended Complaint
- Complaint
- First Amended Complaint
- Order Setting Civil Case Schedule (*ORSCS)

The paperwork listed above was served to : **CTX MORTGAGE CORPORATION;** the paperwork listed above was received by: **CORPORATION SERVICE COMPANY** the Registered Agent for this Corporation and accepted by employee: CYNTHIA JONES. Service took place on 10th of AUGUST, 2012 at the hour of 9:00 p.m. / a.m. within the county of Thurston, State of Washington, at the following address:

300 Deschutes Way SW / Suite 304, Tumwater, WA 98501

DATED this 10th day of AUGUST, 2012

Signature: [signature]

Michael W. Graham

**SUBSCRIBED AND SWORN** to before me this 10th day of AUGUST, 2012

JEANNE L. WIXOM COMMISSION EXPIRES NOTARY PUBLIC MAY 12, 2015 STATE OF WASHINGTON

[signature]

Jeanne L. Wixom

**NOTARY PUBLIC** in and for the State of Washington
Residing at Tacoma
Notary Expiration Date: May 12, 2015

**KKWT PROCESS SERVICES.**
P.O. Box 4623
Spanaway, Wa 98387
(253)565-6670

FILED
12 AUG 13 AM 10:40

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br>Plaintiff,<br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,<br>Defendants. | No. 12-2-23547-3<br><br>AFFIDAVIT OF SERVICE<br><br>*(Clerk's Action Required)* |

**KOVAC & JONES, PLLC**
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

# AFFIDAVIT OF SERVICE

COURT NAME: Superior Court of the State of Washington in and for the County of King

CASE #: 12-2-23547-3 KNT

PLAINTIFF/DEFENDANT: Richard Zalac
vs. CTX Mortgage Corp., et al.

DOCUMENTS SERVED: 2 summons, order, Complaint, + first amended Complaint

DATE DOCUMENTS RECEIVED BY PROCESS SERVER: 8/6/2012

DATE AND TIME DOCUMENTS SERVED: 8/7/2012 at 9:15Am

TYPE OF SERVICE (Personal, Corporate, Residential, etc.): Corporate

PERSON/ENTITY DOCUMENTS SERVED UPON (Include Title of person if applicable): Diane Raskin - Legal Department

PLACE SERVED: JP Morgan Chase Bank - 1111 Polaris Parkway Columbus, OH 43240

DESCRIPTION OF PERSON SERVED: SEX F SKIN COLOR White HEIGHT 5'8
WEIGHT 170 APPROX.AGE 40 HAIR COLOR Brownish Blonde GLASSES NO

NAME OF PROCESS SERVER: Erika Cremeans

ADDRESS OF PROCESS SERVER: 2862 Johnstown Rd. Columbus, OH 43219

STATE OF OHIO;
COUNTY OF FRANKLIN;

Erika Cremeans, personally appeared before me, a Notary Public on this 8th day of August, 2012, and being duly sworn, deposes and states that the following information on the above Affidavit of Serviceis true and accurate.

[signature] Erika Cremeans
AFFIANT

[signature]
NOTARY PUBLIC

[Seal: State of Ohio]

Jeffrey A. Cremeans
Notary Public, State of Ohio
My Commission Expires 6-14-14

FILED
12 AUG 17 AM 10:55

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br>Plaintiff,<br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,<br>Defendants. | No. 12-2-23547-3<br><br>AFFIDAVIT OF SERVICE<br><br>*(Clerk's Action Required)* |

**KOVAC & JONES, PLLC**
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RICHARD J. ZALAC,<br>Plaintiff,<br>vs.<br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants,<br>Defendant(s), | No. 12-2-23547-3 KNT<br>AFFIDAVIT OF SERVICE |

I, MICHAEL W. GRAHAM, of Pierce County, State of Washington, do hereby certify under penalty of perjury under the laws of the state of Washington that the following is true and correct;

I am over eighteen years of age and competent to testify as to the matters herein;

I received one copy of:

- Summons

KKWT PROCESS SERVICES.
P.O. Box 4623
Spanaway, Wa 98387
(253)565-6670

- Summons on Amended Complaint
- Complaint
- First Amended Complaint
- Order Setting Civil Case Schedule (*ORSCS)

The paperwork listed above was served to : **CTX MORTGAGE CORPORATION**; the paperwork listed above was received by: **CORPORATION SERVICE COMPANY** the Registered Agent for this Corporation and accepted by employee: CYNTHIA JONES. Service took place on 10th of AUGUST, 2012 at the hour of 9:00 p.m. / a.m. within the county of Thurston, State of Washington, at the following address:

300 Deschutes Way SW / Suite 304, Tumwater, WA 98501

DATED this 10th day of AUGUST, 2012

Signature: [signature]

Michael W. Graham

**SUBSCRIBED AND SWORN** to before me this 10th day of AUGUST, 2012

JEANNE L. WIXOM COMMISSION EXPIRES NOTARY PUBLIC MAY 12, 2015 STATE OF WASHINGTON

[signature]

Jeanne L. Wixom

**NOTARY PUBLIC** in and for the State of Washington
Residing at Tacoma
Notary Expiration Date: May 12, 2015

**KKWT PROCESS SERVICES.**
P.O. Box 4623
Spanaway, Wa 98387
(253)565-6670

FILED
12 AUG 21 PM 2:55

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| RICHARD J. ZALAC,<br>Plaintiff,<br>v.<br><br>CTX MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise ; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICES, INC., a Washington Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10,<br>Defendants. | No. 12-2-23547-3<br><br>AFFIDAVIT OF SERVICE<br><br>*(Clerk's Action Required)* |

**KOVAC & JONES, PLLC**
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

# AFFIDAVIT OF SERVICE

**State of Washington** **County of King** **Superior Court**

Case Number: 12-2-23547-3 KNT Court Date: 12/2/2013

Plaintiff:
**Richard J. Zalac**

vs.

Defendant:
**CTX Mortgage Corporation, a Delaware Corporation; et al.**

Received by ALIASS to be served on **Federal National Mortgage Association (Fannie Mae), 3900 Wisconsin Avenue, N.W., Washington, DC 20016**.

I, Parsippany Howard, being duly sworn, depose and say that on the **9th day of August, 2012 at 2:12 pm, I:**

served a **CORPORATION** by delivering a true copy of the **SUMMONS; COMPLAINT WITH EXHIBITS; ORDER SETTING CIVIL CASE SCHEDULE; SUMMONS ON AMENDED COMPLAINT and FIRST AMENDED COMPLAINT** with the date and hour of service endorsed thereon by me, to: **Christina Dugan** as **Senior Paralegal** for **Federal National Mortgage Association (Fannie Mae)**, at the address of: **3900 Wisconsin Avenue, N.W., Washington, DC 20016**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 31, Sex: F, Race/Skin Color: White, Height: 5'7", Weight: 160, Hair: Dark Blonde, Glasses: N

I solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information and belief and do further affirm I am a competent person over 18 years of age and not party to the case.

Subscribed and Sworn to before me on the 9th day of August, 2012 by the affiant who is personally known to me.

NOTARY PUBLIC

MARTHA L. LAZO RUIZ
COMMONWEALTH OF VIRGINIA
REG. NO. 7205400
EXPIRES 12-31-2012
NOTARY PUBLIC

**Parsippany Howard**
Process Server

**ALIASS**
**10387 Main Street, Suite 202**
**Fairfax, VA 22030**
**(866) 953-6777**

Our Job Serial Number: FFA-2012003900

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5m

FILED
12 AUG 23 PM 4:21

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| RICHARD J. ZALAC,<br>Plaintiff,<br>v.<br>CTS MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICESS, INC., a Washington Corporation, MORGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants,<br>Defendants. | No. 12-2-23547-3 KNT<br>NOTICE OF APPEARANCE |

TO: CLERK OF THE COURT

AND TO: ALL COUNSEL OF RECORD

YOU AND EACH OF YOU PLEASE TAKE NOTICE that Tim J. Filer, and Neil A. Dial of Foster Pepper PLLC, 1111 Third Avenue, Suite 3400, Seattle, Washington 98101, 206-447-4400 hereby appear as counsel for Defendant CTX Mortgage Association, effective immediately. All papers and pleadings in this case, except original process, shall hereafter be served on the appearing attorney at the office address listed below:

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

Tim J. Filer
Neil A. Dial
Foster Pepper PLLC
1111 Third Ave., Ste. 3400
Seattle, WA 98101

DATED this 23rd day of August, 2012.

FOSTER PEPPER PLLC

s/Neil A. Dial
Tim J. Filer, WSBA #16285
Neil A. Dial, WSBA #29599
1111 Third Avenue, Suite 3400
Seattle, Washington 98101-3299
Telephone: (206) 447-4400
Facsimile: (206) 447-9700
E-mail: dialn@foster.com
E-mail: filet@foster.com
Attorneys for Defendants
CTX Mortgage Corporation

NOTICE OF APPEARANCE - 2

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

192

51241157.1

FILED
12 AUG 23 PM 4:21

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| RICHARD J. ZALAC,<br><br>Plaintiff,<br><br>v.<br><br>CTS MORTGAGE CORPORATION, a Delaware Corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC., NORTHWEST TRUSTEE SERVICESS, INC., a Washington Corporation, MORGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE DEFENDANTS 1-10, Defendants,<br><br>Defendants. | No. 12-2-23547-3 KNT<br><br>CERTIFICATE OF SERVICE |

I, the undersigned, declare that I am employed by the firm of Foster Pepper PLLC, I am over the age of 18 years, am not a party to the above entitled litigation, and I am competent to be a witness herein.

On August 23, 2012, I served a true and correct copy of the following document(s) in the above captioned case:

1. Notice of Appearance

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

51241160.1

together with a true and correct copy of this Certificate of Service upon the following counsel for the parties of record in this action by sending same properly addressed and as follows:

| | | |
|---|---|---|
| Richard Llewelyn Jones<br>KOVAC & JONES, PLLC<br>2050 – 112TH Ave NE, Suite 230<br>Bellevue, WA 98004<br>Telephone: 425-462-7322 | ☐<br>☐<br>☐<br>☐<br>☒ | Via U.S. Mail<br>Via Facsimile<br>Via Federal Express<br>Via Email<br>Via Hand Delivery |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Executed at Seattle, Washington on August 23, 2012.

/s/ Janet Shafi
Janet Shafi

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

FILED
12 AUG 27 PM 12:47
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-23547-3 KNT

The Honorable The Honorable Judge Beth M. Andrus

Heidi E. Buck, WSBA #41769
ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th Street, Suite 300
Bellevue, WA 98006
Telephone: 425-213-5534
Facsimile: 425-283-5968

Attorneys for Defendant Northwest Trustee Services, Inc.

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY OF KING**

RICHARD J. ZALAC,

Plaintiff,

v.

CTX MORTGAGE CORPORATION, a Delaware corporation; THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise; JPMORGAN CHASE, a National Association, d/b/a CHASE HOME FINANCE, LLC; NORTHWEST TRUSTEE SERVICES, INC., a Washington corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; and DOE DEFENDANTS 1-10

Defendants.

No. 12-2-23547-3SEA

**DEFENDANT NORTHWEST TRUSTEE SERVICES, INC.'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant Northwest Trustee Services, Inc. ("NWTS") submits this Answer in response to Plaintiff Richard J. Zalac's ("Plaintiff") First Amended Complaint ("Complaint") as follows. All allegations not expressly admitted, denied, or otherwise pled below are hereby to be construed as denied.

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## I. PARTIES

1.1 NWTS lacks sufficient information or belief to either admit or deny the allegations relating to Plaintiff's residency and therefore denies them. NWTS admits the real property that is the subject of the lawsuit is commonly known as: 40115 278th Way Southeast, Enumclaw, Washington 98022.

1.2 NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

1.3 NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

1.4 NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

1.5 NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

1.6 Admit.

1.7 NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

1.8 NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

1.9 NWTS denies the allegations in Paragraph 1.9 as related to NWTS. NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph as related to other defendants in this action and therefore denies the same.

## II. JURISDICTION AND VENUE

2.1 NWTS re-states responses to each and every item and allegation above.

2.2 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information to admit or deny the remaining allegations of this paragraph and on this basis denies them.

2.3 Admit.

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

2.4 Admit.

## III. FACTS

3.1 NWTS re-states responses to each and every item and allegation above.

3.2 NWTS asserts that the Note and Deed of Trust speak for themselves. As to the remaining allegations contained in this paragraph, NWTS lacks sufficient information to admit or deny the remaining allegations and on this basis denies them.

3.3 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information to admit or deny the remaining allegations of this paragraph and on this basis denies them.

3.4 NWTS asserts the Assignment of Deed of Trust speaks for itself. The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information to admit or deny the remaining allegations of this paragraph and on this basis denies them.

3.5 NWTS asserts the notice attached as Exhibit C speaks for itself. NWTS lacks sufficient information or belief to either admit or deny the remaining allegations in this paragraph and therefore denies the same.

3.6 NWTS asserts the letter attached as Exhibit D speaks for itself. NWTS lacks sufficient information or belief to either admit or deny the remaining allegations in this paragraph and therefore denies the same.

3.7 NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

3.8 NWTS asserts Notice of Default speaks for itself. The statement in this paragraph contains several legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

3.9 The statement in this paragraph contains several legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

3.10 NWTS asserts the Assignment of Deed of Trust speaks for itself. The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

3.11 NWTS asserts the Appointment of Successor Trustee speaks for itself. The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

3.12 NWTS asserts the Notice of Trustee's Sale speaks for itself. The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information to admit or deny the remaining allegations of this paragraph and on this basis denies them.

3.13 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

**IV. CAUSE OF ACTION FOR WRONGFUL FORECLOSURE**

4.1 NWTS re-states responses to each and every item and allegation above.

4.2 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

4.3 Admit.

4.4 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

4.5 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same as

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

regarding Plaintiff's allegations involving JP Morgan Chase. NWTS denies the allegations in the remainder of Paragraph 4.5.

4.6 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

4.7 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

## V. CAUSE OF ACTION VIOLATION OF CONSUMER PROTECTION ACT

5.1 NWTS re-states responses to each and every item and allegation above.

5.2 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

5.3 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

5.4 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

5.5 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

5.6 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

5.7 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

5.8 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

5.9 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

## VI. CAUSE OF ACTION VIOLATION OF RCW 9A.82, *et seq.*

6.1 NWTS re-states responses to each and every item and allegation above.

6.2 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

6.3(A)-(F) The statements in these paragraphs contain legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS denies the allegations in this paragraph.

6.4 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

6.5 The statement in this paragraph contains legal conclusions and NWTS is not required to respond. To the extent an answer is required, NWTS lacks sufficient information or belief to either admit or deny the allegations in this paragraph and therefore denies the same.

## VII. PLAINTIFF'S RESERVATION OF CLAIMS

The statements in this paragraph do not require a response from NWTS. To the extent an answer is required, NWTS denies the statements in this paragraph.

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## VIII. PLAINTIFF'S PRAYER FOR RELIEF

8.1 The statements in this paragraph contain a request for relief and NWTS is not required to respond. NWTS denies any implicit assertions contained in this paragraph.

8.2 The statements in this paragraph contain a request for relief and NWTS is not required to respond. NWTS denies any implicit assertions contained in this paragraph.

8.3 The statements in this paragraph contain a request for relief and NWTS is not required to respond. NWTS denies any implicit assertions contained in this paragraph.

8.4 The statements in this paragraph contain a request for relief and NWTS is not required to respond. NWTS denies any implicit assertions contained in this paragraph.

8.5 The statements in this paragraph contain a request for relief and NWTS is not required to respond. NWTS denies any implicit assertions contained in this paragraph.

8.6 The statements in this paragraph contain a request for relief and NWTS is not required to respond. NWTS denies any implicit assertions contained in this paragraph.

8.7 The statements in this paragraph contain a request for relief and NWTS is not required to respond. NWTS denies any implicit assertions contained in this paragraph.

8.8 The statements in this paragraph contain a request for relief and NWTS is not required to respond. NWTS denies any implicit assertions contained in this paragraph.

## IX. AFFIRMATIVE DEFENSES

Having answered Plaintiff's Complaint, NWTS asserts the following affirmative defenses, the assertion of which in no way shift the burden of proof to NWTS:

1. Failure to State a Claim: The assertions in the Complaint fail to state claims upon which relief can be granted.
2. Failure of Damages: Plaintiff cannot allege any cognizable damages resulting from the acts alleged in the Complaint.
3. Mitigation of Damages: Plaintiff has failed to mitigate the alleged damages.
4. Waiver and Estoppel: Plaintiff's claims are barred by the equitable doctrines of waiver and estoppel.

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

5. Breach of Contract: Plaintiff breached the Note and defaulted according to the Deed of Trust by failing to make payment described in the Note and Deed of Trust.
6. Nonperformance of Condition Precedent: Plaintiff breached the Note and defaulted according to the Deed of Trust by failing to make payments described in the Note and Deed of Trust.
7. Laches: The claims asserted in the Complaint are barred in whole or in part by the equitable doctrine of laches.
8. Contributory Fault/Unclean Hands: The claims asserted in the Complaint are barred in whole or in part based on Plaintiff's contributory fault and/or unclean hands.
9. Mootness. Plaintiff's claims are moot and therefore barred at this time.
10. Statutory Exemption. The Plaintiffs claims falls within an exemption from statutory coverage.
11. Insufficient service. Plaintiff has failed to effect proper service of the Complaint.
12. NWTS also asserts the defenses of assumption of risk, mutual mistake, and reserves the right to amend this Answer by way of adding additional affirmative defenses, counter claims, or third party claims as additional facts are discovered, without waiving defenses of lack of subject matter jurisdiction or any other valid defense.

**XII. PRAYER FOR RELIEF**

NWTS prays for judgment against Plaintiff as follows:

1. That Plaintiff's Complaint be dismissed with prejudice;
2. That the Plaintiff recovers nothing on account of the claims made in the Complaint.
3. That NWTS be awarded costs of suit herein; and

//

//

///

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

4. For such other and further relief as the Court deems equitable and just.

DATED this 27th day of August, 2012.

**ROUTH CRABTREE OLSEN, P.S.**

/s/ Heidi E. Buck
Heidi E. Buck, WSBA #41769
Of Attorneys for Defendant Northwest Trustee Services, Inc.

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**Declaration of Service**

The undersigned makes the following declaration:

1. I am now, and at all times herein mentioned was a resident of the State of Washington, over the age of eighteen years and not a party to this action, and I am competent to be a witness herein.

2. That on August 27, 2012, I caused a copy of **Defendant Northwest Trustee Services, Inc.'s Answer to Plaintiffs' First Amended Complaint** to be served to the following in the manner noted below:

| | |
|---|---|
| Richard Llewelyn Jones<br>Kovac & Jones, PLLC<br>2050 112th Ave. NE, Suite 230<br>Bellevue, WA 98004<br><br>Attorneys for Plaintiffs | [X] US Mail, Postage Prepaid<br>[ ] Hand Delivery<br>[ ] Overnight Mail<br>[ ] Facsimile |
| William Rasmussen<br>Matt Sullivan<br>Davis Wright Tremaine, LLP<br>1201 Third Ave., Suite 2200<br>Seattle, WA 98101-3045<br><br>Attorneys for Defendants JPMorgan Chase, Mortgage Electronic Registration Systems, Inc., and Federal National Mortgage Corporation | [X] US Mail, Postage Prepaid<br>[ ] Hand Delivery<br>[ ] Overnight Mail<br>[ ] Facsimile |
| Neil A. Dial<br>Tim J. Filer<br>Foster Pepper, PLLC<br>1111 Third Ave., Suite 3400<br>Seattle, WA 98101-3299<br><br>Attorneys for Defendant CTX Mortgage Corporation | [X] US Mail, Postage Prepaid<br>[ ] Hand Delivery<br>[ ] Overnight Mail<br>[ ] Facsimile |

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed this 27th day of August, 2012.

Kristine Stephan, Paralegal

ROUTH CRABTREE OLSEN, P.S.
13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131