EXHIBIT A

1               UNITED STATES BANKRUPTCY COURT

2               WESTERN DISTRICT OF WASHINGTON

3                        AT SEATTLE

4    _____

5    In re:                      )
                                 )
6    PETER JAMES MEYER and        )        No. 10-23914
     SHAREE LYNN MEYER,           )
7                                 )
                                 )
8           Debtors.             )
     _____)
                                 )
9    PETER JAMES MEYER and        )
     SHAREE LYNN MEYER, et al.,   )
10                                )
            Plaintiffs,          )
11                                )
        vs.                      )        No. 12-01630
12                                )
     U.S. BANK NATIONAL           )
13   ASSOCIATION, et al.,         )
                                 )
14          Defendants.          )
     _____

15
        TRANSCRIPT OF THE DIGITALLY-RECORDED PROCEEDINGS
16
        BEFORE THE HONORABLE KAREN A. OVERSTREET
17
                    SEPTEMBER 28, 2012
18   _____

19

20

21

22

23

24   Reported by:   Robyn Oleson Fiedler
                     CSR #1931
25

```
 1                    A P P E A R A N C E S

 2

 3          For the Defendants:

 4                   MR. BENJAMIN J. ROESCH
                     MS. HEIDI C. ANDERSON
 5                   Attorneys at Law
                     LANE POWELL PC
 6                   1420 Fifth Avenue, Suite 4100
                     Seattle, WA 98101
 7                   Phone:  206-223-7383
                     roeschb@lanepowell.com
 8
                     and
 9                   MS. HEIDI E. BUCK
                     Attorney at Law
10                   ROUTH CRABTREE OLSEN PS
                     13555 S.E. 36th Street, Suite 300
11                   Bellevue, WA 98006
                     Phone:  425-213-5534
12                   hbuck@rcolegal.com

13

            For the Plaintiffs:
14
                     MR. RICHARD L. JONES
15                   Attorney at Law
                     2050 112th Avenue N.E., Suite 230
16                   Bellevue, WA 98004-2992
                     Phone:  425-462-7322
17                   rlj@richardjoneslaw.com

18

19

20

21

22

23

24

25
```

```
1            DIGITALLY RECORDED IN SEATTLE, WASHINGTON

2                    SEPTEMBER 28, 2012

3                       --ooOoo--

4

5            THE COURT:  I think that takes me back now to

6    Meyer.  Is there anyone here on something other than

7    Meyer v. U.S. Bank et al?  Okay.  And Mr. Jones needs

8    to come back in.

9            All right.  He's here.  I think we're up for

10   the Meyers case now.

11           Okay.  Let's have appearances for the record.

12   And I guess we'll start with the moving parties.

13           MR. ROESCH:  Good morning, Your Honor,

14   Benjamin Roesch.  I'm here on behalf of US Bank and

15   ASC.

16           MS. ANDERSON:  Heidi Anderson on behalf of

17   defendants ASC and US Bank.

18           THE COURT:  All right.

19           MS. BUCK:  Heidi Buck on behalf of defendant

20   Northwest Trustee Services.

21           MR. JONES:  Richard Jones appearing on behalf

22   of the plaintiffs, Your Honor.

23           THE COURT:  Okay.  Mr. Roesch, you're at the

24   podium, so I assume you're going to take the lead with

25   regard to the motion.  And I guess what I want to focus
```

3

1    you on is the following.  In looking at your motion, I

2    think what it presents for my consideration is the

3    question after my ruling in the Reinke case wherein I

4    said, I was concerned that we don't want to be in a

5    situation where debtors can file complaints that say

6    nothing other than, you know, they weren't the holder.

7    What I said was, you know, debtor has to have some

8    specific factual basis for challenging the standing or

9    the holder status of the foreclosing entity.  And that

10   was in the context of after-trial burden-shifting.

11           But I think what that statement that I made

12   in that case raises for today's purposes is, what does

13   the debtor have to allege in the complaint in order to

14   get past a 12(b)(6) motion?

15           MR. ROESCH:  Well, Your Honor, I think that

16   the answer -- and that statement that you've just

17   referenced goes directly to the Iqbal/Twombly

18   standards.

19           THE COURT:  Right, what's plausible?

20           MR. ROESCH:  Well, there need to be specific

21   facts.  And what we have here are a series of

22   allegations that are based upon information and belief.

23   There are no facts to which the Court has pointed.

24           THE COURT:  So do you think it's as simple as

25   if he were to take out the words, "on information and

                                                    4

1    belief"?  Is that the problem?

2          MR. ROESCH:  No, Your Honor.  I think that

3    the problem is that there's simply no factual basis for

4    the allegation that US Bank isn't the holder.  I think

5    that when we look at what's actually transpired in the

6    servicing of the loan and in the main bankruptcy case,

7    we see exactly the opposite.  We have an identification

8    of ASC by plaintiffs as the secured creditor.  We have

9    a stipulation with US Bank to lift the stay.  We then

10    have negotiations and mediation under the Foreclosure

11    Fairness Act with, again, the servicer.  And --

12          THE COURT:  I'm not sure how I look at any of

13    that in the context of a 12(b)(6) motion.  I mean, your

14    brief gives almost lip service to that by saying I can

15    look at anything and I can take judicial notice of this

16    or that.  But you know, judicial notice is something

17    that I have to take individually as to each pleading.

18    Why not raise those issues on a summary judgment when

19    you actually have them as an evidentiary component of

20    the case?  I mean, what's your legal argument that I

21    can just look at all this other stuff when it's not a

22    summary judgment motion?

23          MR. ROESCH:  Well, the law is clear, Your

24    Honor, that you may take into account documents, for

25    example, that are attached to the complaint.

1           THE COURT:  I am taking those into account.

2           MR. ROESCH:  Absolutely.  And so what we see

3    in those documents, again, is a consistent

4    identification at all times of ASC as the servicer of

5    -- US Bank's the beneficiary.  And so when we bring

6    that back to the complaint, and we need to take a look

7    at whether there are facts alleged in the complaint

8    that would cast any of those documents into doubt, I

9    would submit to Your Honor that the complaint is devoid

10   of anything.

11          There's no allegation, for example, that

12   anyone other than ASC has served as the servicer on

13   this loan.  There's no allegation that anyone other

14   than US Bank has sought to foreclose as the beneficiary

15   under the deed of trust.

16          And so without any sort of factual basis upon

17   which this speculation is made, I think that the

18   complaint does fail under the 12(b)(6) standard set

19   forth in Iqbal and Twombly.

20          THE COURT:  Well, assuming Mr. Jones was able

21   to identify -- and I think he has -- some

22   irregularities in the documentation, why isn't it

23   enough for him to say, at the time the notice of

24   default was issued, US Bank was not the holder, and

25   Northwest Trustee Service was not acting as its agent?

6

1    What more should he have to say?  He's subject to Rule

2    11, so he's got to have a reasonable basis for saying

3    that.

4              MR. ROESCH:  Well, Your Honor, I think we go

5    back to the beneficiary declaration that was attached

6    to the complaint.  That was executed by US Bank on June

7    24 --

8              THE COURT:  It wasn't executed by US Bank at

9    all.

10             MR. ROESCH:  Well, it was executed by, I

11   believe it was Wells Fargo as attorney in fact for US

12   Bank.

13             THE COURT:  When I looked at it, I thought

14   Wells Fargo?  How did Wells Fargo enter the picture?  I

15   mean, maybe ASC is a subsidiary of Wells Fargo, but

16   that does not make them the same.  And once again, the

17   MERS language that you give us to work with, the

18   lenders give us to work with is "nominee," not a word

19   that anybody uses.  And so now Bain and I have to

20   debate, is a nominee an agent?  Should it be an agent?

21   Does it have to be an agent?  Bain said it has to be an

22   agent.

23             Now here's the new word that the lenders are

24   giving us, attorney in fact.  What is that?  Who is

25   that?  Why does US Bank need Wells Fargo NA to be its

                                                    7

1       attorney in fact?

2               MR. ROESCH:  Your Honor, part of that can be

3       answered with respect to the caption in this case.  And

4       plaintiffs allege that America's Servicing Company is a

5       division of Wells Fargo Bank NA.

6               So ASC is servicing the loan on behalf of US

7       Bank.  And there's been no allegation to the contrary

8       in the complaint.

9               THE COURT:  So now you're going to make an

10      argument that under that new Washington state statute,

11      the servicer can execute the beneficiary declaration.

12              MR. ROESCH:  Well, I think that the Bain

13      court even was clear, Your Honor, that a beneficiary

14      may act through an agent.  Here that's precisely what

15      the beneficiary has chosen to do.

16              THE COURT:  So I think this is a form, but

17      wouldn't it have been better than, in the declaration,

18      to say, Wells Fargo NA acts as attorney in fact for the

19      beneficiary and therefore as its agent?  And then that

20      would be a statement under oath that Wells Fargo Bank

21      is actually acting in that capacity?  Where here we

22      have a party who's not related to the transaction at

23      all, so far as I can tell -- Wells Fargo National Bank,

24      its attorney in fact.

25              MR. ROESCH:  Well, Your Honor, I do think

                                                            8

1    that the beneficiary declaration states the capacity

2    under which Wells Fargo Bank is acting.  And because

3    Wells Fargo Bank is, for legal purposes, ASC here --

4    ASC is just a division of Wells Fargo -- I don't think

5    that there's any basis calling that into question.

6            And that, I think, is the standard --

7            THE COURT:  Well, so would I get there by

8    going to the complaint and looking at an allegation in

9    the complaint that ASC is a division of Wells Fargo?

10           MR. ROESCH:  Well, yes, I think so, Your

11   Honor.

12           THE COURT:  Because it's a wholly-owned

13   subsidiary, that doesn't make it a division.

14   Wholly-owned subsidiary is a separate corporation with

15   its own governing body and its own assets and its own

16   separate capacity.

17           MR. ROESCH:  I would submit, Your Honor, the

18   plaintiffs can't get around that by making

19   contradictory allegations in their own complaint.

20   Citing ASC in the caption is one thing, and then making

21   an allegation in the body of their complaint to the

22   contrary.

23           THE COURT:  Well, this may be a stupid

24   question, but if ASC has signed the other -- ASC signed

25   the Foreclosure Loss Mitigation form, right?

9

1          MR. ROESCH:  Yes, I believe so, Your Honor.

2          THE COURT:  Okay.  And therefore, if ASC

3    signed that form, then why wouldn't ASC just sign the

4    beneficiary declaration?

5          MR. ROESCH:  Well, I think -- I don't have --

6    I certainly can't testify to that answer, Your Honor.

7    I think that, again, we go back to the fact that ASC,

8    as identified in the caption, is not legally distinct

9    from Wells Fargo.

10         Moreover, US Bank can designate whoever it

11   wants as its attorney in fact.  That doesn't

12   necessarily have to be its servicer with respect to the

13   loan.  And again, there's been no allegation in the

14   record that Wells Fargo is not US Bank's attorney in

15   fact.  So I would submit that the declaration has been

16   properly signed in this case, Your Honor.

17         Moreover, Your Honor, as I indicated in the

18   reply briefing, the declaration is not only sufficient,

19   it's also accurate.  US Bank has possession of the

20   original note endorsement in blank.  I don't know that

21   we need a parade, but --

22         THE COURT:  We don't.  We don't need to bring

23   it out, because I thought what my opinion in Reinke

24   made clear was what matters with regard to a

25   foreclosure is who is the holder of the note when the

                                                    10

1    notice of default is issued?  So whether you have it in

2    the courtroom today is irrelevant to me.  The question

3    is who was -- was US Bank the holder of the note when

4    the Notice of Default was issued to the borrowers?

5            MR. ROESCH:  And my answer would be that the

6    beneficiary declaration was executed several weeks

7    before the Notice of Default was issued to the

8    borrowers and is sufficient to establish that US Bank

9    was the holder.

10           Moreover, Your Honor, I think we have an

11   argument from the plaintiffs that, separately from

12   being the holder of the note and the beneficiary, US

13   Bank has to prove that it's the owner under subsection

14   0307(a).

15           THE COURT:  And I'm not sure I agree with

16   that.  I know where he gets it, because Bain used the

17   word "owner."  But I just -- it seems to me like it's

18   -- maybe you agree with me that it's a misuse of the

19   word.  It doesn't really belong in the analysis.

20           MR. ROESCH:  I would agree, Your Honor.  And

21   I think we go to the second sentence of that

22   subsection, which just says that the beneficiary will

23   execute a declaration under penalty of perjury stating

24   that it's the actual holder.  And that's what we have

25   here before the Court, Your Honor.  And there's nothing

11

```
1     in the record, there's nothing in the complaint, that
2     suggests that the relationships set forth in the
3     beneficiary declaration, the relationships between ASC
4     and US Bank as alleged in the complaint and as
5     identified in every one of the documents attached to
6     the complaint, that are related to the nonjudicial
7     foreclosure in this case.
8              THE COURT:  So from a pleading standpoint --
9     I mean, because let's talk about it from a pleading
10    standpoint.  Would it then be the case that what's
11    required is, given this beneficiary declaration, that
12    the plaintiff allege -- not upon information and
13    belief, but allege that Wells Fargo NA is not the agent
14    and/or attorney in fact of US Bank, and therefore, the
15    beneficiary declaration is a nullity.
16             MR. ROESCH:  I think that's exactly right,
17    Your Honor.  And I don't think we see that anywhere in
18    the record.  I think that issue is dispositive with
19    respect to all of the claims made against ASC and
20    against US Bank, with the possible exception of the
21    RESPA claim, to which there's been no opposition.
22             THE COURT:  Well, and also, the one that has
23    to do with the -- Mr. Jones puts this one routinely in
24    there -- liable, defamation of title.
25             MR. ROESCH:  Right.  The slander of title is
```

1     not opposed either.

2              THE COURT:  Right.  That's different.

3              MR. ROESCH:  Certainly, Your Honor.  But

4     again, that very claim goes back to the idea that US

5     Bank was not the beneficiary of the deed of trust.  And

6     as the documents and the allegations of the complaint

7     establish, there's no basis to think otherwise.

8     There's certainly been no factual -- specific factual

9     basis alleged, which if true, would prove otherwise.

10             So under those circumstances, Your Honor, I

11    think that it's -- it is entirely appropriate to

12    dismiss at this stage.

13             If Your Honor would like, I can address the

14    issues raised by plaintiff with respect to the CPA

15    claims that were discussed in Bain.  But again, I think

16    that --

17             THE COURT:  Well, I mean, that claim relies

18    first and foremost on the question of whether US Bank

19    was the holder.

20             MR. ROESCH:  Yes, that's exactly correct,

21    Your Honor.

22             THE COURT:  But the one thing that you didn't

23    mention -- which is mentioned in Bain -- is that you do

24    have an assignment of deed of trust that is executed by

25    MERS as the beneficiary, which is exactly what Bain

                                                          13

1    says.  What Bain says is you might have a presumption

2    -- a presumptively misrepresentative document when MERS

3    represents wrongfully that it is the beneficiary.  And

4    unlike the Reinke deed of trust, which didn't have that

5    -- neither deed of trust in the Reinke case had a

6    declaration, had an assignment of deed of trust like

7    this one where MERS represents, "The undersigned

8    beneficiary, MERS, grants, conveys and assigns and

9    transfers to US National Bank as trustee."

10            So isn't that exactly what Bain said could

11   get you presumptive misrepresentation under the state

12   CPA statute.

13            MR. ROESCH:  Well, I think there's a couple

14   distinguishing factors here, Your Honor.  In Bain, MERS

15   itself had appointed the successor trustee.  The Bain

16   court said, that's a problem.

17            THE COURT:  Well, MERS was conducting the

18   foreclosure in the Bain case, right?  Totally

19   different.

20            MR. ROESCH:  Absolutely.

21            THE COURT:  After that scenario, MERS stopped

22   that.

23            MR. ROESCH:  Right.

24            THE COURT:  So even in my case, in Reinke,

25   MERS was not the foreclosing entity.

                                                        14

1              MR. ROESCH:  Moreover, Your Honor, I think to

2      the extent that the assignment by MERS to US Bank has

3      any effect at all -- and I would suggest to Your Honor

4      that there were two possible scenarios:  MERS was

5      acting in its capacity as nominee, as agent for the

6      holder of the note, in which case, no problem; or it

7      was not.  Now, there's no indication why that might be,

8      why --

9              THE COURT:  You mean it was not acting as an

10     agent.

11             MR. ROESCH:  Somehow acting on its own rather

12     than, as we had seen in the deed of trust, as nominee

13     for the lender, its assigns and successors.  If it's

14     not, if MERS isn't the beneficiary, isn't acting on the

15     beneficiary's behalf, then the assignment of the deed

16     of trust is simply a nullity.  But again, we come back

17     to what are we relying on in order to conduct this

18     foreclosure.  We're not relying on that assignment.

19     We're relying on the fact that we're the holder, the

20     owner and the beneficiary.

21             So I think we can set that to the side.  More

22     to the point, there's nothing particularly deceptive, I

23     think, or deceptive at all, Your Honor, about the

24     assignment of the beneficial interest in the deed of

25     trust, whether or not the assignment is a nullity, to

                                                        15

1    the actual beneficiary.  It night be a different case,

2    Your Honor, if MERS had signed the beneficial interest

3    in the deed of trust to me, through Ms. Anderson.  It

4    didn't.  It assigned it to US Bank, who, in fact, is

5    the beneficiary.

6              And the theme we see running through here is

7    that at all times, the borrowers knew with whom they

8    needed to deal:  ASC as the servicer, US Bank as the

9    beneficiary.  And that's consistent through all of the

10   documents related to the foreclosure.  And in fact,

11   they mediated under that understanding.

12             THE COURT:  Well, the question is we don't

13   know, because when Washington State Supreme Court took

14   up these issues, clearly, the facts weren't there.  I

15   mean, whenever you certify questions, you certify the

16   questions not totally in a vacuum, but almost in a

17   vacuum.  So you have the court making these statements

18   without really knowing what the underlying fact are.

19   Because now the question in Bain is with regard to the

20   assignment of deed of trust, was the Washington court

21   saying, you actually -- like the Oregon courts have

22   said, you've actually got to have an assignment that

23   goes from the original beneficiary to -- under these

24   circumstances, the original beneficiary to the holder,

25   the new holder of the note.

16

1          Or do they buy my analysis in <u>Reinke</u>, which

2    is as long as MERS is doing this as the nominee and

3    agent for the original beneficiary, it works.

4          MR. ROESCH:  Well, Your Honor, I think the

5    answer is in <u>Reinke</u>.  And this Court recognized that an

6    assignment of the deed of trust is not necessary prior

7    to a foreclosure.  And that's is certainly not what we

8    are relying on in order to conduct the foreclosure.  So

9    I think that is one distinguishing factor.

10          I think there's nothing in the <u>Bain</u> case that

11   suggests that an assignment by MERS somehow nullifies

12   the entire, you know, deed of trust or renders all

13   subsequent proceedings invalid as long as those

14   proceedings are done in compliance with the Deed of

15   Trust Act.

16          And that's precisely what we see here.  There

17   are no allegations, specific allegations, that the

18   notice of default was issued improperly, except that US

19   Bank is not the beneficiary, holder, and owner.  And

20   then there's simply no facts to back that up.

21          And again, I think it would be different if

22   MERS had assigned the deed of trust to someone else,

23   for example, if there were two purported beneficiaries

24   attempting to foreclose.  And that's the precise

25   example that the <u>Bain</u> court gave on a situation in

17

1    which he might have a CPA claim.

2            THE COURT:  Because the Bain court is

3    concerned that now the borrower doesn't know who the

4    lender is or doesn't know who owns the deed of trust.

5            MR. ROESCH:  That's exactly right, Your

6    Honor.  And frankly, we have a clear and consistent

7    record of exactly who that is.  And to the extent that

8    the assignment of the deed of trust is relevant at all

9    to the Court's analysis, it merely confirms that US

10   Bank is the beneficiary.

11           So I think there's no factual basis upon

12   which to speculate otherwise.  And that isn't

13   sufficient to get over the plausibility standard and

14   get into a bunch of discovery about whether every

15   single, you know, document related to foreclosure is a

16   fraud, whether the Meyers were mistaken somehow in

17   identifying ASC as the secured creditor here.

18           There's simply nothing but speculation

19   underlying the complaint, Your Honor.  And for that

20   reason, I think we ask that it be dismissed.

21           THE COURT:  Okay.  Let me ask, Ms. Buck, you

22   filed a, Me, too, so I'm going to have you make your

23   comments before I ask Mr. Jones to respond.

24           MS. BUCK:  Okay.  Good morning.  So I just

25   first of all wanted to point out a few factual

1    distinctions that -- from Reinke.  As you know, I'm

2    rather familiar with the Reinke facts.

3              THE COURT:  Yes, you are.  As am I.

4              MS. BUCK:  As are you.  In that case, as you

5    pointed out, the notice of default was transmitted

6    prior to an assignment of deed of trust being recorded.

7              THE COURT:  Correct.

8              MS. BUCK:  That's not the case here, and

9    that's evident by the allegations in the complaint.  It

10   looks like the appointment of a successor trustee in

11   this case was recorded July 1st, 2009, and the notice

12   of default was transmitted dated July 9th, 2010.

13             THE COURT:  The only thing that I noticed

14   that I thought was odd about Northwest Trustee Service,

15   was that Northwest Trustee Service signed -- or at

16   least Mr. Jones alleges that an employee of Northwest

17   Trustee Service signed a document almost a year before

18   it's appointed as the trustee.  So on March 10, 2009,

19   paragraph 3.5, an assignment of deed of trust was

20   executed by Jeff Stenman in his purported capacity as

21   vice president for MERS.  And that was an entire year

22   before Northwest Trustee arguably was involved in this

23   in any way.

24             MS. BUCK:  First of all, Jeff Stenman signs

25   -- when he signs in his capacity as a vice president of

19

1    MERS, he's not doing it in his capacity as an employee

2    of Northwest Trustee Services.  He is -- there's a

3    signing authority agreement that appoints him

4    individually, not in his capacity as an employee of

5    Northwest Trustee Services, to sign documents on behalf

6    of MERS.

7          And as far as the timing goes on this, I

8    would have to review -- you know, it's not in the

9    complaint exactly.  I mean, with the intervening

10    bankruptcy and --

11          THE COURT:  Well, the appointment of the

12    successor trustee actually did occur -- I mean, if you

13    just look at the complaint, paragraph 3.8, on March

14    26th, 2009, an appointment of successor trustee was

15    executed by Anne Neeley, who purports to be the vice

16    president for loan documents -- again, here comes Wells

17    Fargo -- for Wells Fargo Bank acting as attorney in

18    fact for US Bank.  So now Northwest Trustee Service is

19    the trustee, if that document is valid.  And the notice

20    of default is issued almost an entire year later.

21          MS. BUCK:  Well, I think what occurred

22    between that time was the bankruptcy, which would have

23    solved the nonjudicial foreclosure process from

24    continuing.  So I mean, I don't really know -- yes, the

25    appointment of successor trustee happened in March of

1    2009.  Yes, it was done as it was done.  But I don't

2    know if that matters.

3                THE COURT:  I don't either.

4                MS. BUCK:  I mean, I don't think that it

5    does.  I don't know that -- if I'm clear on what you're

6    asking, I don't think that a lapse of time between an

7    appointment of successor trustee and then a notice of

8    default being issued a year later actually presents any

9    issue.

10               THE COURT:  I don't think it does either.

11               MS. BUCK:  I don't think it does either.  Did

12   I answer what you were --

13               THE COURT:  Yes.

14               MS. BUCK:  Okay.  I would also just like to

15   point out that, you know, given the fact that time the

16   of successor trustee was recorded appointing Northwest

17   Trustee Services as successor trustee prior to any of

18   its conduct in this case, as far as the nonjudicial

19   foreclosure goes, further supports dismissal of

20   Northwest Trustee Services.

21               I think it was the Michelson case where Judge

22   Pechman kind of looked at a situation where -- and that

23   was in regard to an original trustee under a deed of

24   trust.  But she said that there is no independent duty

25   of a trustee, original or successor trustee, to go and

21

1    conduct a secondary investigation into the truthfulness

2    or veracity of documents that it relies on.

3            So in this example, an appointment of

4    successor trustee that appoints Northwest Trustee

5    Services representing that it's being appointed by US

6    Bank and that it is the beneficiary authorized to

7    appoint Northwest Trustee Services as successor

8    trustee, I think under Washington law, Northwest

9    Trustee Services is entitled to rely on that.

10           And any allegation that US Bank was not the

11    beneficiary at the time that the appointment of

12    successor trustee is simply is a legal conclusion.

13    There are no facts here that support that legal

14    conclusion.  And as you know, that's not something that

15    you would need to take as -- as true in a motion to

16    dismiss.

17           THE COURT:  Is that the same argument that

18    you would make -- I guess it is -- on 12(b)(6), because

19    you would say, as a matter of law -- if, as a matter of

20    law, the trustee can rely on these documents, then the

21    trustee can also rely on the beneficiary declaration

22    that's signed by Wells Fargo Bank.

23           MS. BUCK:  Correct.  And as far as just what

24    the facts present from the allegations in the

25    complaint, it's completely consistent.  US Bank

1     appointed Northwest Trustee Services.  US Bank was

2     identified as the beneficiary in the notice of default.

3     US Bank was identified as the beneficiary in the notice

4     of sale that was recorded in 2010, in the amended

5     notice of sale that was recorded in 2010, and the

6     second notice of sale following the bankruptcy that was

7     recorded in 2012.  There's nothing inconsistent about,

8     you know, who Northwest Trustee Services was conducting

9     a foreclosure on behalf of.

10          And there's nothing -- there are no

11    allegations that would raise any questions or issues

12    that could legally state a claim that Northwest Trustee

13    should have known or done something to halt the

14    foreclosure based on what they were presented.

15          THE COURT:  All right.  Mr. Jones?

16          MR. JONES:  Good morning, Your Honor.  The

17    Washington Supreme Court ruled definitively that MERS

18    is an ineligible beneficiary under the Washington Deed

19    of Trust Statute.  It wasn't really sure, based upon

20    the status of the litigation that Judge Coughenour

21    threw at them -- I'm sure the Court is painfully aware

22    that most appellate courts hate the situation in which

23    there's no findings of fact that have been adduced,

24    there's no discovery been conducted.  Ms. Huelsman, in

25    Bain, had done some discovery, and in the Seilkiwitz

23

1    matter, which was mine, no discovery had been done.   In

2    fact, no scheduling order had been entered.   We were

3    just fresh out of the box.

4             So the Supreme Court punted on the second

5    question of what the ramifications of that might be.

6             THE COURT:  Right.

7             MR. JONES:  And did go on to say that there

8    are consumer protection claims that could be adduced

9    from the fact that MERS is not an eligible beneficiary.

10            Primarily, and I'll get to this in a moment

11   -- the Supreme Court said that the first two elements

12   -- I would imagine the first three elements, because I

13   don't think anybody in their right mind is suggesting

14   that MERS is not a business -- that the first two

15   elements would be presumably in play, leaving the issue

16   of injury.  And I apologize to this Court, as I did to

17   Judge Dore earlier this morning, that, you know, when

18   it comes to consumer protection claims, the issue of

19   injury versus damage is material, particularly in view

20   of the Bain case.

21            But the first point we come to is the issue

22   of whether or not MERS is a valid beneficiary or an

23   eligible beneficiary.  The Supreme Court has said no.

24   I've heard a lot of talk in support of the motion,

25   basically, a hamster wheel argument, that we start all

24

```
 1    this stuff going and we presume certain issues, like,
 2    for instance, US Bank is the beneficiary and the
 3    holder.
 4           The only evidence we have that US Bank has
 5    ever been a beneficiary goes to the assignment of note
 6    and deed of trust.  It's called an assignment of deed of
 7    trust.  It is -- and I would like to spend a little
 8    time -- Exhibit C to the complaint.
 9           THE COURT:  Well, we're not here on summary
10    judgment.
11           MR. JONES:  Oh, I get that.
12           THE COURT:  So I mean, the question is -- and
13    I'm not sure you have alleged clearly in the complaint
14    that at the time the notice of default was issued, US
15    Bank was not the holder.
16           MR. JONES:  I'm going to get to that.
17           THE COURT:  Okay.
18           MR. JONES:  Turning to the assignment, the
19    only basis upon which US Bank can claim that it is a
20    beneficiary, the holder of the note and deed of trust,
21    is through this assignment.
22           THE COURT:  Okay.  But at length, in Reinke,
23    I explained that to be the beneficiary in Washington
24    state law only requires that you be the holder of the
25    note.  And I think Bain confirms that.  It didn't say
```

                                                        25

1   anything about the fact that you have to both be the

2   holder of the note and be the assignee of the deed of

3   trust.

4        MR. JONES:  We have no other evidence.  And

5   I'm suggesting, Your Honor, that if this document is

6   false -- and I would also say it's fraudulent, it's

7   fraudulent for this reason, that MERS had no authority

8   the true owner to do this act.  Presumably, it couldn't

9   be US Bank, because US Bank was the beneficiary of this

10  act.  We have nothing to suggest that US Bank was ever

11  involved in this at the outset or -- and certainly the

12  allonge that we have is not dated.  The form is a 1999

13  form that they use.

14       THE COURT:  So what do you think is required?

15  I mean, what we're talking about is what do you have to

16  allege to get past 12(b)(6)?  I mean, if we were here

17  on summary judgment, you're absolutely right.  I would

18  be looking for their declaration, clearly executed by

19  someone with personal knowledge, that says when the

20  notice of default was issued, US Bank was the holder of

21  the original note and the note was held in such and

22  such a warehouse by so and so.

23       And the fact of the matter, in thinking about

24  it, that's what MERS is supposed to do, right?  MERS is

25  supposed to keep track of where the notes are and who

26

1    has them and own them at every single point in time,

2    right?  So presumably if I said, Mr. Roesch, give me a

3    declaration that tells me definitively who had that

4    note, who was the holder of that note in 2010 when this

5    notice of default was issued, he should be able to

6    provide me that information from MERS.

7         But that -- how can that be the issue today

8    when what we're talking about is just have you made out

9    a plausible claim in the complaint.

10        MR. JONES:  I would point out, Your Honor,

11   that throughout the complaint, I allege -- my clients

12   allege that at no time relevant to this cause of action

13   were any of these defendants true and lawful owners and

14   holders of the note or the deed of trust.  At all times

15   relevant to this cause of action -- it's throughout the

16   complaint -- these defendants were nothing more than

17   servicers for an undisclosed principal.

18        These defendant have create amongst

19   themselves -- and I will put Mr. Stenman right up there

20   as an officer of -- and I believe he's an attorney with

21   RCO, but he's certainly an officer of Northwest

22   Trustee.  He signs his declaration on behalf of MERS,

23   and frankly, Northwest Trustee is the ultimate

24   beneficiary.  By this document -- and you've got to

25   believe that it's true, or at least they believed it to

27

1    be true --

2            THE COURT:  The assignment of trust you're

3    talking about?

4            MR. JONES:  Yes, the assignment of deed of

5    trust.  They are attempting to assign the note as well.

6    MERS never had the note.

7            THE COURT:  Right.  But in Reinke I said that

8    doesn't work.  I said very clearly in Reinke that

9    MERS's attempt -- any beneficiary's attempt in an

10   assignment of deed of trust to also transfer the note

11   is invalid.  It doesn't work.  You have to have an

12   endorsement on the note.

13           MR. JONES:  Agreed.  And so I am suggesting

14   that since there's no -- nothing on the note that we

15   have ever seen that suggests that the note was ever

16   assigned prior to this assignment of deed of trust,

17   that in fact, this proceeded any allonge or

18   endorsement.  That's the problem.  That's why I say --

19           THE COURT:  If you're right, if I were to

20   adopt your analysis, in a complaint a borrower has to

21   do nothing more than allege no specific facts.  I mean,

22   as they point out here, everything says US Bank on it.

23   So what's the specific fact?  Why do you have the right

24   to have them prove up that they were the original

25   holder of the note at the time the notice of default

                                                      28

1    was issued?

2         MR. JONES:  I think we addressed that in

3    Jacobson, that there has to be something more than mere

4    servicers running around saying, I've got the note.

5    I've got the note.  They wanted to seize my clients of

6    their property based upon documents the Court, I think,

7    would acknowledge, are contradictory.

8         And frankly, when US Bank -- I have this

9    fact.  When Mr. Katz was in FFA mediation and sent me

10   that letter -- which I've attached to my declaration --

11   he says to me, US Bank is the beneficiary or the

12   servicer, that's somewhat --

13        THE COURT:  Well, I thought what he said was

14   he was representing -- and I would agree with you, that

15   that's a very strange way of presenting yourself --

16   this firm and the undersigned -- it says, "this law

17   firm represents US National Bank, the beneficiary, or

18   its servicer of the deed of trust."  Which is it?

19        MR. JONES:  That's the dilemma.  This is the

20   problem throughout this.  And here's the real issue

21   before the Court.  I understand this Court's concerns.

22   Lord knows, you know, we spent five days last summer

23   dealing with this.

24        THE COURT:  We did.

25        MR. JONES:  And I am more convinced today

                                                        29

1     that when you get -- when the Washington Supreme Court

2     says that we've got a party here that's ineligible and

3     other people purporting to act on its behalf relying --

4     they've got to rely upon the assignment of the deed of

5     trust and the concordant assignment of the note, aren't

6     they?  Or we just ignore what we find disagreeable.

7     That's what the defendants are asking you to do.  Never

8     mind about it.  It reminds me of Mr. Kratt's [phonetic]

9     presentation before the Supreme Court.  Never mind

10    about this.  Never mind about the assignment.  We've

11    always had the note.

12           I disagree with this Court --

13           THE COURT:  So you would say the presence of

14    that kind of assignment of deed of trust by itself

15    satisfies what I said in Reinke, that the borrower's

16    got to have some specific facts that would cause me,

17    under the plausibility standard, to question whether US

18    Bank was in fact the holder at any time.

19           MR. JONES:  When you combine that with the

20    other representations and other miscues along the way.

21    Remember, I'm also making a claim for bad faith under

22    RCW 61.24.010.

23           THE COURT:  By the trustee.

24           MR. JONES:  Yes.  Now, Mr. Stenman is

25    arguably an officer and director of Northwest Trustee

1      Service, signing documents that benefit his firm

2      ultimately in the form of the appointment of the

3      successor trustee.

4              I will point out that while, in fact --

5              MS. ANDERSON:  Your Honor, can I object?

6              THE COURT:  I don't know.

7              MS. BUCK:  It's actually incorrect.  Jeff

8      Stenman signed that assignment of deed of trust in this

9      case.  And as Mr. Roesch discussed, it's under --

10     either way, it's an nullity or it was done in an agency

11     capacity.  Mr. Stenman did not sign the appointment of

12     successor trustee in this case.

13             MR. JONES:  Never said he did.

14             THE COURT:  Yeah, I think he's talking about

15     something else.

16             MS. BUCK:  That's what you just said.

17             MR. JONES:  No.  I said your firm has

18     benefited from Mr. Stenman's misconduct and fraud.

19             THE COURT:  Okay.  Go ahead.

20             MR. JONES:  So what we have here, Your Honor,

21     is a closed circuit in which Northwest Trustee Services

22     purports to assign a note and deed of trust to the

23     servicer, US Bank.  Because I think Chuck Katz is right.

24     They're a servicer.  And so the servicer then says, Oh,

25     my goodness, we have a default.  There's no default.

                                                              31

1    Only the beneficiary can assert a default, the real

2    owner of the note and deed of trust.

3              And I do use the word owner, because I do

4    believe that before there can be a trustee's sale,

5    which was already set in this matter, the trustee must

6    have proof that the beneficiary is the owner, RCW

7    61.24.030.  That need not be established at the time

8    the notice of default has been filed, but it is a

9    condition of doing the notice of trustee's sale.  And

10   these declarations do not satisfy that.  They do not

11   say that they are the owners.

12             THE COURT:  So you think there is a

13   difference between being an owner and a holder.  That

14   makes a difference here.

15             MR. JONES:  No, they are one and the same.

16             THE COURT:  Right.  So the beneficiary

17   declaration says US Bank is the actual holder of the

18   promissory note or other obligation, evidencing the

19   above-referenced loan, or has requisite authority under

20   RCW 62.3-301 to enforce that obligation.

21             MR. JONES:  That's the UCC.  I would say that

22   US Bank is the actual owner and holder or beneficiary.

23   But that definition has been changed.  And the problem

24   that we have with this is that we have documents that

25   don't square at this point in time with the Bain

32

1    decision.

2            And, you know, unfortunately, Your Honor, on

3    a 12(b) motion where you have a significant change in

4    law between the time this complaint was filed, I think

5    that the Court should exercise a little bit more

6    caution.  And what we're really looking for here, from

7    my client's perspective, is I've got a lot of stuff

8    here that doesn't sit right.  It is not consistent.

9    Not consistent with Bain.  Not internally consistent

10   with each other.

11           As the Court points out, we have Wells Fargo

12   Bank as attorney in fact.  I've never seen the attorney

13   in fact document.  Where's the authority?  Did MERS

14   have express authority from the original holder or

15   whoever was holding at that time when Mr. Stenman

16   signed off on it?  What sort of documentation --

17           THE COURT:  Okay.  But from a pleading

18   perspective, doesn't that mean that you have to include

19   an allegation that Wells Fargo was not the attorney in

20   fact and did not have the authority --

21           MR. JONES:  I did.

22           THE COURT:  -- to sign that.

23           MR. JONES:  I did.  Throughout the --

24           THE COURT:  Okay.  I'm not seeing that.

25   Because now show me where you think it is.  Because you

1    say something different, slightly different.  I mean,

2    in paragraph 3.13, you say very clearly, "At no time

3    relevant to this cause of action was US Bank the true

4    and lawful holder of the subject promissory note."

5              MR. JONES:  I don't know how much --

6              THE COURT:  And at the end of that sentence,

7    you talk about Mr. Kinerty [phonetic] as the purported

8    attorney in fact.  And then in 3.14, you talk about all

9    this robo-signing and other cases.  And I'm not sure

10   that any of that's really relevant to this case.  But I

11   don't think you say, Wells Fargo was not -- had no

12   authority to act for the beneficiary and was not its

13   agent or attorney in fact.

14             MR. JONES:  I believe that allegation is

15   subsumed in what I think may be the relationship

16   between Wells Fargo and ASC.  Because I do make the

17   representation that at no time relevant to this cause

18   of action was ASC, as a wholly-owned subsidiary of

19   Wells Fargo Bank, a holder and owner of the promissory

20   note or deed of trust, at any time relevant.

21             So those would be -- now, if the Court -- and

22   I guess now in view of Bain, if I were to go back

23   through this complaint with what additional information

24   I have, I was to clean up the complaint to tighten up

25   those allegations and bullet points, I probably could.

34

1          THE COURT:  Well, the real issue is that for

2    the defendants to know that the borrower actually has

3    to have some meat on the bones of the complaint, that

4    the borrower has to take a stand and say, okay, even

5    though it says Wells Fargo as attorney in fact, even

6    though it says -- the notice of default says US Bank,

7    by its agent, Northwest Trustee Service, that you

8    actually have to take a stand and say that wasn't true.

9          MR. JONES:  The difficulty, as the Court is

10   well aware, the banks have all of the information, and

11   the point of it is that MERS has made it very easy for

12   the servicers and the property lenders to hide

13   information.  There is no public record any longer.

14          And so on a 12(b) motion -- let's put it on

15   the other foot.  While I understand that there is a

16   burden upon the plaintiff borrower in these

17   circumstances to come forward with facts sufficient to

18   at least raise a concern that there may be some

19   problems with the authority of the defendants who are

20   purporting to foreclose their house, their home, that

21   it is difficult to find the information.

22          I can tell you, based upon my experience, and

23   as a trustee myself, that this behavior does comport

24   with the behavior we expect in the State of Washington

25   of trustees.  After 30 years of doing this stuff, you

                                                        35

1          know, I've kind of got a sense of how things ought to

2          run and how the statute should be handled, as a lawyer.

3          My clients, on the other hand, have no way.  We tried

4          -- and I think this is pertinent -- we asked for a

5          qualified written request to get the very information

6          this Court is seeking, and it has never been responded

7          to, which is another claim that we have.

8                    So I apologize --

9                    THE COURT:  But if all they have to do -- I

10         mean, in Reinke and in Bain, we both talk about the

11         importance of furthering the goals of the nonjudicial

12         foreclosure process.  So we can have a situation where,

13         you know, a borrower can just come in and file a

14         complaint that doesn't really say anything other than,

15         you know, we don't think US Bank was the holder at any

16         time.  Without there being some meant on it, you know,

17         the nonjudicial foreclosure process really becomes

18         useless.  Because it's going to involve a judicial

19         determination every time.

20                   MR. JONES:  My suspicion is that's probably

21         going to be the case anyway.

22                   THE COURT:  Because?

23                   MR. JONES:  Because of the Bain decision.

24                   THE COURT:  So what you're saying is now what

25         we have is a situation where every nonjudicial

                                                        36

1    foreclosure that was conducted during this period of

2    time in this certain way is going to raise these

3    issues.

4              MR. JONES:  Oh, I'm just passing a comment

5    that the deed of trust statute provides for both

6    judicial and nonjudicial -- or 61.24 provides for both

7    judicial and nonjudicial means for foreclosing.  And it

8    may well be that, should the Washington Attorney

9    General file a class action on behalf of the citizens

10   of the State of Washington against MERS, that that may

11   be something that the legislature will take up and say

12   those transactions that occurred within a certain

13   period of time in which MERS was identified as the

14   beneficiary shall be handled in a way that's different

15   than we're dealing with them now.  That, you know, is

16   speculation.

17             THE COURT:  Well, in connection with another

18   case, I saw a TRO signed by a judge in Snohomish County

19   that basically said, I'm issuing the TRO because it is

20   our practice to do so in every case where MERS is

21   involved.

22             MR. JONES:  That is true.

23             THE COURT:  And there was no finding about

24   probable success on the merits.  There was no finding

25   of irreparable harm.  Just, It's now our practice to

                                                         37

1    issue these whenever MERS is involved.

2         MR. JONES:  That is true.  That's happening

3    in King County as well.

4         And the problem is is that, you know, what

5    we're faced with today.  I have made allegations in

6    this complaint that none of these defendants were true

7    and lawful holders of the notes and deed of trust, and

8    at no time relevant did they ever obtain the authority

9    as agents to do the actions.  And specifically the

10   actions I think are outlined in the statute.  Under RCW

11   61.24, only the beneficiary, the true holder and the

12   owner of the note, can declare a default.

13        I assert that none of these defendants can

14   allege that there's a default upon which a foreclosure

15   can be based.  There's a specific allegation.  Two,

16   that none of these defendants can appoint a successor

17   trustee because at no time relevant to this cause of

18   action were they holders and owners of the note and

19   deed of trust.  That's another specific statutory act

20   that only the beneficiary can do.

21        THE COURT:  But we saw -- even in Bain, the

22   Court said an agent can do it for the beneficiary.  So

23   don't you also have to allege that there was no agent

24   who did it, also?

25        MR. JONES:  That's why I used the language

38

1    they did not have the authority.  The authority

2    subsumes that it might well be -- and I agree with you

3    -- that in fact, an agency relationship can be

4    utilized.

5              My problem is that what we're dealing with --

6    and I think the Court in Bain was very clear -- that

7    agency requires disclosure of the principal.  There has

8    to be authority provided from the principal to the

9    agent for the action to be valid.  It could well be

10   ratification comes up and that, you know, we have MERS

11   running amuck, and US Bank or whoever might be involved

12   in transactions say, we did not specifically authorize

13   prior to the action, but we ratified the behavior of

14   our agents.

15             THE COURT:  But recall in the Reinke case,

16   when it came to BofA, BofA sent in an employee.  A

17   litigation specialist took the stand under oath and

18   said, Northwest Trustee Service was acting as our agent

19   at all times relevant hereto.  End of discussion.  So

20   the question is do you have to have a clear allegation

21   in the complaint that, you know, Northwest Trustee

22   Service was not acting as US Bank's agent when that

23   notice of default was issued.  Wells Fargo was not

24   agenting as the agent of US Bank when this beneficiary

25   declaration was signed.

39

1        I mean, we're here on a 12(b)(6) motion.  So

2   the question is what do you have to allege to get past

3   that.  Because it's not enough to say, US Bank never

4   declared a default if its agent did.  Or it's not

5   enough to say, US Bank didn't issue this notice of

6   default if its agent did so validly.

7        MR. JONES:  Well, you're asking some

8   questions I think -- I try not to be too damn clever.

9   I suppose I could put a lot of preparatory language in

10  these, but my practice has been generally -- and

11  probably to my detriment -- to be pretty plain

12  speaking.  If I don't have the goods, I don't make the

13  allegation.  I can do that, however, if that's what it

14  takes to at least ferret out the truth of the

15  transactions.  Because I think that we have a great

16  deal of concealment of, you know, what these parties

17  are doing and on what basis.

18        But having said that, the difficulty I have

19  now is that this complaint was drafted and filed prior

20  to Bain, and I'm now trying to adjust to that new

21  reality.  As this Court is as well.

22        The fact of the matter is is that I think

23  that the concerns that the Court has, certainly I can

24  say that at the time of the notice of default and the

25  notice of trustee's sales were filed and recorded, that

                                                      40

1    none of these defendants were acting as true and lawful

2    agents of the owner and holder of the note, that they

3    were -- I could put that in.  But it really gets me

4    around to the point that what we really need is some

5    discovery.

6           And while I understand that we have a fairly

7    Draconian decision from the U.S. Supreme Court with

8    regard to 12(b) motions and the requirements for

9    pleadings --

10          THE COURT:  You mean plausibility?

11          MR. JONES:  No, I'm thinking in terms of the

12    difference between state court causes of action and the

13    standard of review on a 12(b) motion, state court

14    versus federal court, quite a bit different.

15          But I believe that the complaint that has

16    been provided to this Court, to the best of the

17    information my clients had available, after they tried

18    to get information through a qualified written request,

19    is fair.  I can put in additional language that these

20    defendants are not only purporting to act on behalf of

21    entities that they had no authority to act on behalf

22    of, that they are utilizing their MERS stamp to

23    perpetrate a fraud, that they are working for their own

24    self interests between the servicing agent and the

25    trustee in a closed loop without any consideration

41

1    given to the real holder of the note and deed of trust
2    -- which, upon reflection, could well be a
3    mortgage-backed security with a bunch of shareholders
4    and another trustee.  I don't know.
5            But if there is sufficient information pled
6    for this Court to find that the complaint is sufficient
7    to raise concerns -- the Court made some of those
8    observations at the outset.  And now when you have my
9    declaration, which was not included -- that document
10   was not included in the complaint but certainly is
11   before the Court on this motion -- that where Mr. Katz,
12   who was acting as an attorney on behalf of US Bank is
13   suggesting that they may be something other than the
14   beneficiary, that contradicts what counsel was telling
15   you this morning before me, that they were always the
16   beneficiary.  There's been no contradiction whatsoever.
17           Now, given Bain, I think that if this Court
18   has some specific concerns about the allegations, my
19   clients should have the opportunity to amend its
20   complaint in accordance with federal rules.
21           Have I answered your questions, Your Honor?
22           THE COURT:  Yes.
23           MR. JONES:  Thank you.
24           MR. ROESCH:  Thank you, Your Honor.  Just a
25   few things.  First of all, I think that we need to

1    drill down to the actual facts that were alleged in the

2    case.  And I think Your Honor asked a particularly

3    telling question.  Upon what fact may the Court infer

4    that US Bank is not the beneficiary on the deed of

5    trust?  The answer was that MERS executed an assignment

6    of the deed of trust to US Bank.

7                Your Honor, I would put forward that that is

8    a circular and self-contradictory answer.  The idea

9    that an assignment of a deed of trust, whether valid or

10    annulled to a party, cannot state a claim that that

11    party is not, in fact, the beneficiary.

12                The same goes for the letter from Chuck Katz.

13    While perhaps it was put slightly in an unwieldly

14    fashion, the fact of the matter is that under FFA

15    mediations, the servicer regularly represents the

16    beneficiary of a loan at the mediation.

17                Moreover, I don't think we can look at this

18    letter and say, well, that raises some issue about

19    whether the previously-issued notice of default, which

20    clearly identifies the roles of both US Bank and

21    America's Servicing Company -- it says, the beneficiary

22    of the deed of trust is US Bank National Association,

23    as trustee for the structured asset trust -- I don't

24    think that you can take a letter from counsel and say,

25    well -- which does not state anything to the contrary;

43

1    it doesn't state that US Bank is not the beneficiary --

2    and say, well, now there's some question about whether

3    every document, every other document that was sent,

4    that was recorded, and in fact to which they stipulated

5    in the bankruptcy proceeding, is somehow incorrect.

6            Finally, Your Honor -- well, I think we need

7    to deal, too, with the idea of amending the complaint

8    to make allegations that agency relationships did not

9    exist, for example, that Wells Fargo is not, in fact,

10    US Bank's attorney in fact.  Mr. Jones stated that he

11    would happily amend his complaint to do so.  But the

12    offer, Your Honor, isn't to allege facts that would

13    lead to that conclusion, but simply -- and this is just

14    like the allegations, that US Bank isn't the

15    beneficiary in the first place -- simply say there's no

16    relationship there, without any evidence to suggest to

17    the contrary.

18            Recall that the beneficiary declaration

19    itself is signed under penalty of perjury and notifies

20    the Court of that relationship.

21            THE COURT:  Okay.  But if what you say is

22    true, I mean, plausibility just goes out the window,

23    doesn't it?  I mean, how much do they have to put in

24    the complaint?  I mean, we started with a short plain

25    statement of the plaintiff's entitlement to relief.

44

1      Now we're at plausibility.  And at some point, you

2      know, you're asking for a novel, you know, from the

3      plaintiff.  I mean, why should that be the case?

4            MR. ROESCH:  Well, I don't think that is the

5      case, Your Honor.

6            THE COURT:  At what point do you just prove

7      the simple fact of note-holdership on summary judgment?

8            MR. ROESCH:  Well, I think that there are two

9      answers, Your Honor.  The first goes to the language of

10     Iqbal, which states that there's facial plausibility

11     when the plaintiff pleads facts that allow the Court to

12     draw a reasonable inference that the defendant is

13     liable for the conduct alleged.  A bare allegation that

14     US Bank isn't the beneficiary isn't a fact.  It's a

15     conclusion.  And the Court's not required to take that

16     as true.  The same would be true of a bare allegation

17     that Wells Fargo is not US Bank's attorney in fact.

18            So then we switch to the second reason.  And

19     the reason that the Court imposed that standard is that

20     it recognized that the discovery burden that could be

21     placed on a defendant is substantial.

22            Now, you know, can we put forward that

23     evidence?  Certainly, we can.  But in the meantime,

24     plaintiffs will be taking discovery.  Certainly,

25     discovery not only related to that issue -- and the

1   Court recognized that unless there is a reasonable

2   inference that discovery would lead to something, there

3   is no point in burdening the Court, in burdening the

4   defendant with those costs.  That's completely

5   consistent with this Court's holding in Reinke and with

6   the purpose of the Deed of Trust Act, which says that

7   you don't have to come in and prove every single fact

8   every time you do a nonjudicial foreclosure.  That

9   would interfere with the legislature's purpose of

10  keeping things efficient.

11          And I think that standard that Iqbal sets out

12  certainly protects the ability of borrowers who have

13  legitimate problems with the nonjudicial foreclosure to

14  challenge the foreclosure.  But that doesn't mean that

15  every time there's a nonjudicial foreclosure somebody

16  wants to say, well, they're not the beneficiary.  We

17  have to go through this whole process of discovery and,

18  you know, bring someone in to testify or get a

19  declaration.  It's an unnecessary burden that

20  interferes with the purpose of the Deed of Trust Act.

21          Here, Your Honor, we don't have allegations

22  of facts that would support the idea that US Bank does

23  not have authority to foreclose.  We have conclusions

24  to that, and I would submit that that is insufficient

25  to support a claim under Rule 12(b)(6).

1          THE COURT:  Okay.  Ms. Buck?

2          MS. BUCK:  Let me -- I just have one point I

3     want to touch on.  In regard to the allegations that

4     the beneficiary declaration in this case does not

5     satisfy RCW 61.24-0307(a) and that somehow gives --

6     provides the basis of a claim for breach of duty of

7     good faith by Northwest Trustee Services, plaintiff's

8     argument overlooked the second sentence of 0307(a),

9     which provides that a declaration stating that that

10    entity is the actual holder -- it does not mention

11    ownership -- satisfies the proof requirement of 0307(a)

12    and again is -- Your Honor, read through the

13    beneficiary declaration, we don't need to read it

14    again.  On its face, it satisfies that requirement.

15          I'd also like to point out that under 030,

16    the trustee can rely on one of those declarations

17    unless it's violated its duty of good faith.  Here

18    plaintiff's argument seems to be circular.  Because the

19    breach of duty of good faith is based on allegations

20    that the beneficiary declaration is invalid or doesn't

21    meet the requirements of the statute.  But the only way

22    the breach of duty of good faith -- it's a circular

23    argument.  It's going around -- the trustee can rely on

24    the beneficiary declaration unless it has failed to

25    satisfy its duty of good faith.

1          Here the beneficiary declaration on its face

2   meet the requirements of 0307(a).  So it can rely on

3   it.  But plaintiff's basis for claiming that the

4   trustee breached its duty of good faith, it's alleging

5   that the beneficiary declaration doesn't meet the

6   requirements of that statute.

7          THE COURT:  I'm not sure I follow you.

8          MS. BUCK:  Well, how can it -- so --

9          THE COURT:  And I'm probably not following

10  you because all your motion said was, me, too.  So you

11  didn't file a motion under 12(b)(6) that laid out a

12  motion to dismiss your allegations.  And they didn't

13  argue your case for you.  All of this that you're

14  talking about is a bit brand new to me, I guess is what

15  I'm saying.

16         MS. BUCK:  Okay.  Fair enough.  My reading of

17  the motion to dismiss was that it laid out the --

18         THE COURT:  They don't represent the trustee.

19         MS. BUCK:  They don't represent the trustee.

20         THE COURT:  They didn't make a case for

21  you --

22         MS. BUCK:  They didn't make a case for us.

23         THE COURT:  -- as to whether or not I should

24  dismiss the claim against Northwest Trustee Service for

25  breach of good faith.

                                                    48

```
1          MS. BUCK:  Okay.  As far as, you know, I

2     think it is evident from the motion to dismiss that the

3     timing of all these documents.  And I would also just

4     finally point out that under the Deed of Trust Act, the

5     trustee must receive this beneficiary declaration only

6     prior to recording a notice of sale.

7          THE COURT:  Not at the time the notice of

8     default is used.

9          MS. BUCK:  Not at the time of the notice of

10    default.  Not at the time of appointment of a successor

11    trustee.

12         So if you follow -- all of the allegations

13    against Northwest Trustee Services are premised on this

14    idea that US Bank didn't have the authority.  So if

15    Your Honor, you know, finds that they haven't

16    sufficiently alleged that US Bank did not have the

17    authority, it's my position that all of the allegations

18    or claims that could possibly be made against Northwest

19    Trustee Services also fall away, and we wouldn't even

20    have to get into --

21         THE COURT:  Okay.  That's the argument that I

22    assumed you were making from the motion that you filed.

23         MS. BUCK:  That's the argument.

24         THE COURT:  Okay.

25         Okay.  Mr. Jones, you don't get to argue
```

1          again, because they start, you respond.

2                    MR. JONES:  Oh, Your Honor --

3                    THE COURT:  No.  I mean, what I'm going to do

4          is I'm going to allow Mr. Jones to amend the complaint.

5          And I really hadn't thought about the fact that Bain

6          intervened, but clearly it has.  So let me -- I'm going

7          to go through what I think he might be required to say,

8          in addition to what he said.  I'm just going to give

9          you my thoughts about it, Mr. Jones, and you can either

10         do it or not.  And if you don't do it or can't do it,

11         it's because you have Rule 11 that you need to be

12         concerned about.  And if you do it, it's at your peril.

13         But I think you've got to take a stand on some of these

14         things.

15                    Preliminarily, let me say that Mr. Jones

16         filed an overlength brief.  I didn't sign the order

17         authorizing the overlength brief.  It was 26 pages.  If

18         I take off the cover sheet and the signature page, I

19         figured it was close enough.  However, that

20         supplemental memorandum that you filed, Mr. Jones, to

21         which they objected and asked me to strike, I agreed.

22         It's stricken.  I didn't look at it.  I didn't read it.

23         It's not a permissible pleading under our rules.

24                    With regard to the defendant's urging that I

25         look at all this other stuff outside of the complaint,

50

1  same.  I didn't do it.  It's a 12(b)(6) motion.  And

2  I'm not going to take judicial notice of everything

3  filed in the case.  It needs to be more organized than

4  that.  On a 12(b)(6) motion, I'm looking at the

5  complaint.  I'm looking at what's attached to the

6  complaint.  And I am testing the sufficiency of the

7  complaint.  And I am testing it under Iqbal and

8  Twombly.

9          So as I read those cases, you start with Rule

10  8, which requires -- Federal Rule of Civil Procedure 8,

11  which requires a sufficient factual matter, accepted as

12  true, to state a claim to relief that is plausible on

13  its face.  That's what I'm supposed to apply.  And I

14  think Mr. Roesch stated it in his pleadings.  It's all

15  stated correctly.  A claim has facial plausibility when

16  the pleaded factual content allows the Court to draw

17  the reasonable inference that the defendant is liable

18  for the misconduct alleged.

19          Two working principles under Bell Atlantic

20  v. Twombly.  First, a court must accept a complaint's

21  allegations as true is inapplicable to threadbare

22  recitals of a cause of action's elements supported by

23  mere conclusory statements; second, determining whether

24  a complaint states a plausible claim is context

25  specific, requiring the reviewing court to draw on its

51

1    experience and common sense.

2           I said last Friday, in connection with

3    another case where I applied this standard, that I see

4    no reason to get too far afield of the standard

5    definition of the word "plausible." And I went to

6    Webster's dictionary, and the definition for

7    "plausible" in Webster's is, meaning -- it means that

8    it is "appearing worthy of belief." That's where you

9    start. And then Webster's gives some synonyms, which

10   include:  credible, likely, believable, probable and

11   presumptive.

12          So with this standard in mind, I turned to

13   the substance of these motions. Which I think,

14   although they appear to raise simple issues, have

15   far-reaching ramifications. Because as I said when we

16   started, we have this tension between the nonjudicial

17   foreclosure process, which we want to work efficiently

18   and we don't want it to become a judicial foreclosure

19   process only, on the one hand, and on the other, we

20   have to preserve the borrower's rights to bring a

21   legitimate challenge to a foreclosure.

22          I'd like to repeat what I said in my Reinke

23   opinion, 09-1541. My memorandum decision is at Docket

24   No. 197, and I'm quoting from page 27. "This court

25   does not hold that substantial documentation or

1    testimony as to the possession of the note is required

2    in cases likes this.  However, when the borrower has a

3    specific factual basis for challenging the standing of

4    the foreclosing entity, the burden shifts to that

5    entity to produce sufficient competent oral or written

6    evidence to persuade the Court that it is more probable

7    than not that the entity instigating the foreclosure

8    was the holder the note or an authorized agent of the

9    holder at the time the foreclosure was commenced."

10           I stated that after a trial as the burden of

11   proof.  Although it sounds a lot like plausibility,

12   too.  In other words, you've got to give me some

13   specific facts that convince me that it's plausible

14   that, here in this case, that US Bank was not the

15   holder of the note at the relevant times under the

16   complaint.  So whether the allegations are plausible is

17   something that I looked at in connection with each of

18   the causes of action.

19           And I think the plaintiff has pleaded some

20   specific facts that call into question the authority of

21   the foreclosing entity and make it plausible to me --

22   use synonyms:  probable, believable, credible -- that

23   US Bank may not have been an authorized foreclosing

24   entity.

25           The complaint alleges that the notice of

53

1    default, which is attached to the complaint as Exhibit

2    E, states that the beneficiary is US Bank and the

3    notice is signed by Northwest Trustee Service as the

4    duly authorized agent of US Bank.  Here's a place where

5    I think an allegation is missing.  I think that if the

6    plaintiff doesn't think Northwest Trustee Service had a

7    valid agency relationship with US Bank at that time,

8    then the complaint should so allege.

9           Now, Mr. Roesch characterizes that kind of

10   allegation as conclusory.  But I don't think I see it

11   as conclusory.  I think it is a fact.  The question is

12   US Bank either does -- or Northwest Trustee Service

13   either is or is not acting as the agent for US Bank at

14   the time this notice of default was issued.  That's

15   factual.  That's not conclusory.  But I think plaintiff

16   has to take a stand on that.  Because otherwise,

17   there's nothing wrong with that notice of default.  It

18   states US Bank is the beneficiary, and it is signed by

19   US Bank by its authorized agent.

20          Paragraph 3.12 alleges that attached to the

21   notice of default was a foreclosure loss mitigation

22   declaration signed by John Kinerty identified as the

23   vice president of loan documentation for ASC.  Yet, the

24   notice of default describes ASC as the servicer and not

25   the beneficiary.  RCW 61.24-031(b) requires the

                                                    54

1      beneficiary or an authorized agent to make initial

2      contact with the borrower by letter and by phone prior

3      to issuing the notice of default.

4              So again, I think that if you go further,

5      paragraph 3.13 then talks about the notice of default,

6      that attached to the notice of default was this

7      beneficiary declaration now required by Washington

8      State law, which is supposed to provide the foreclosing

9      trustee with evidence as to who the holder of the note

10     is.

11             The complaint alleges that the beneficiary

12     declaration shows that it is not signed by an officer

13     of US Bank, but is instead signed once again by

14     Mr. Kinerty, but this time he signs as the vice

15     president of Wells Fargo Bank NA, and stated there to

16     be the attorney in fact for US Bank.  There's no

17     statement within the body of that declaration that

18     Wells Fargo has authority as agent/attorney in fact for

19     US Bank.

20             I went on to Google just to sort of figure

21     out what's the difference between an attorney in fact

22     and an agent?  Why do the lenders use these terms,

23     which are not used in normal legal ways?  Google, some

24     of the sources I set -- maybe it's right; I don't have

25     to flush that out -- says that an attorney in fact can

                                                    55

1    be an agency that provides only for acting as an agent

2    in financial matters, I suppose versus other matters.

3    I don't know.

4           But to me, I think there's enough there.

5    These documents, they don't make any sense.  There

6    isn't a single document that's actually signed by US

7    Bank, vice president US Bank.  Not a single document.

8    Everything relies on an agency relationship.  So I

9    think that raises issues for me that get me over the

10    plausibility hurdle.

11           There's also a reference in paragraph 3.8

12    that the appointment of successor trustee is signed by

13    a vice president of Wells Fargo Bank who was acting,

14    again, as attorney in fact for US Bank.  So I think

15    here plaintiff has to take a stand.  If plaintiff --

16    plaintiff needs to say that Wells Fargo Bank was not

17    acting as attorney in fact and was not an agent for US

18    Bank at any time relevant or at the specific times

19    alleged.

20           Mr. Jones, you can go through and see what

21    you want to say.  But if you want to challenge what's

22    been said here, you have to make the allegation that in

23    fact there was no agency arrangement.  Otherwise, you

24    throw agency out entirely.  And both I said and <u>Bain</u>

25    said, agents work.  If agents do things for lenders, it

1    works.  So there's an allegation that I think is

2    missing.  If there was no agency agreement, then Wells

3    Fargo did not have authority to sign that document for

4    and on behalf of US Bank, and Northwest Trustee Service

5    is not a valid successor trustee.

6            In 2009, paragraph 3.5 of the complaint

7    alleges that Jeff Stenman, vice president and secretary

8    of Northwest Trustee Service -- I know that.  He

9    testified.  Iqbal, Twombly says, I'm to use my

10   knowledge and experience.  There it is.  He signs the

11   assignment of deed of trust as a vice president of

12   MERS.  I heard the testimony at the trial in Reinke,

13   and the testimony was that there were these

14   arrangements between Northwest Trustee Service and MERS

15   where they could sign.

16            So I think, however, Mr. Jones has alleged

17   that Mr. Stenman did not have authority to sign that.

18   If not, you need to do that.  You can't just say,

19   Mr. Stenman was known to be an employee of Northwest

20   Trustee Service at the time.  Let me just go look,

21   because you said, "Said assignment of trust was

22   prepared by Northwest Trustee Service without the

23   express and property authority from the holder and of

24   owner the subject promissory note."  Well, that's part

25   of it.  But I think you also have to say, Mr. Stenman

1    was not an authorized agent for MERS, if you want to

2    avoid the problem that Ms. Buck points out, which was

3    they have an agreement that he can act in a certain

4    capacity for MERS.

5            Now, in _Bain_, the Court called into question

6    whether MERS can transfer any interest under a document

7    like this, even if the document is properly executed,

8    if it is not the beneficiary as contemplated by

9    Washington state law.  That's on paragraph 13.

10   However, I can't tell from the language the Court used

11   whether it's just recognizing what I recognize in

12   _Reinke_, and that is that that assignment of deed of

13   trust has no effect on the transfer of the note.

14           The language in _Bain_ is not very precise.

15   And I can't tell from that whether the Court really

16   thinks that MERS' signing that particular document

17   doesn't work to transfer its beneficial interest as

18   nominee, or whether it doesn't work to transfer the

19   note.  I don't know.  I stand by what I said in _Reinke_.

20   Merely signing that kind of document does not do

21   anything for the note.  It doesn't transfer the note.

22   And I stand by my conclusion that it's not the deed of

23   trust that drives the process.  It's the note.

24           I think those allegations that I just

25   mentioned, together with the ones that I think are

1     missing, should they be added, I think they're enough

2     to pass muster under Iqbal and Twombly on a 12(b)(6)

3     motion.  I said earlier, I'll say it again, I really

4     want to keep 12(b)(6) and Rule 56 separate.  Lately I'm

5     seeing these motions that say, motion under 12(b)(6)

6     and 56.  And once I start looking at that side of the

7     complaint, I consider it a summary judgment motion.

8           So I'm not going to look at all the things

9     that are filed in the main case.  And I would invite

10    you, Mr. Roesch and Ms. Buck, if you want me to do

11    that, then file a motion for summary judgment and take

12    me through it and argue that they're judicially

13    estopped to say what they're saying in the complaint.

14    That's how I would approach it.

15          Looking at the specific causes of action, I

16    think there are some problems.  But, oh, I'm so tired

17    of dealing with the wrongful foreclosure, common law

18    cause of action argument.  And I know that Mr. Jones is

19    presenting -- he calls it wrongful foreclosure,

20    violation of RCW 61.24.  And he's going to do that

21    because he's preserving what he wants to preserve on

22    appeal.

23          And I know, Mr. Roesch, that you're just

24    going to keep citing all of these cases that say,

25    there's no common law cause of action for wrongful

1    foreclosure.  And so I will merely say, I dealt with

2    that at length in Reinke, and I don't intend to deal

3    with it again.  I have concluded that there is a cause

4    of action when RCW 61.24 is violated.

5           And I think Bain says the same thing.  If you

6    don't comply with the terms of the statute, you

7    violated it.  And I don't think there's anything wrong

8    with that cause of action.  I will say that it depends,

9    however, upon US Bank not being the holder of the

10   promissory note.  But once Mr. Jones crosses that

11   pleading hurdle, I don't see any basis upon which I

12   would dismiss that particular cause of action.

13          The CPA claim we talked about in oral

14   argument.  I think Bain has given the plaintiff some

15   meat.  Bain says that the use of MERS, although not per

16   se deceptive -- not per se deceptive.  The Court goes

17   on to say that if MERS claims to be a beneficiary when

18   it is not, the deception element of the CPA is met.

19   And in this case, the assignment of deed of trust

20   attached to the complaint, MERS represents that it's

21   the beneficiary.  It's exactly that which Bain was

22   talking about.  I didn't have that in Reinke.  That

23   wasn't the basis for the CPA claim there.

24          The Court in Bain also goes on to indicate

25   that the public impact element is presumptively met in

                                                      60

1        a case like this because there is considerable evidence

2        that MERS is involved with an enormous number of

3        mortgages in the country and in our state.

4              So that leaves the defendants to plead

5        injury.  And damages and injury are a real issue for me

6        now, Mr. Jones.  Because as you saw in my Reinke

7        opinion, we went through that whole process, and then I

8        found no damages.  We're at the pleading stage here.

9        And I think in this complaint you've done enough to

10       allege damages.  It says, "distraction, loss of time,

11       loss of business opportunities, other expenses due to

12       the defendant's wrongful conduct."  So I think the

13       allegations are sufficient.

14             So I think the CPA allegation, as long as the

15       new things are added to the complaint, which I have

16       suggested, I think the CPA cause of action passes

17       12(b)(6) muster.

18             The Fair Debt Collection Practices Act, I did

19       not go beyond defendant's argument that it fails if US

20       Bank is the holder.  So it doesn't fail if US Bank --

21       if the allegations are that US Bank was not the holder.

22       So I haven't -- that one I don't see any basis to

23       dismiss that, assuming the complaint is amended.

24             I guess the defamation of title, quiet title,

25       the problem that I have with this one, Mr. Jones, is

61

1    that I don't know what you mean.  First of all, you
2    haven't asserted a pending sale.  That's absolutely
3    critical.  That is one of the elements.  So when you do
4    your amendment, if you don't include that, then I
5    agree.  It has to be dismissed.  And in the past, I
6    have dismissed this particular cause of action.
7              Let's see, RICO.  I'm not seeing anything in
8    the complaint that goes far enough to allege specific
9    acts, which include anticipatory or completed offenses
10   committed for financial gain, that is chargeable or
11   indictable under the laws of the state in which the act
12   occurred, that would be chargeable or indictable and
13   punishable as a felony or by imprisonment for more than
14   one year."
15             So there is a list of crimes that is in 9(a)
16   82.010, none of which are alleged in the complaint.  So
17   you're going to amend the complaint, Mr. Jones.  But if
18   you're not going to allege those crimes in here, then I
19   think this claim ought to be dismissed.
20             RESPA I think needs to be more specific.
21   RESPA requires a statement of damages that arise from
22   the violation of RESPA.  So the damages that have to do
23   with the unlawful conduct of, you know, US Bank and
24   others in connection with the foreclosure doesn't
25   count.  I think, Mr. Jones, you have to have a separate

                                                            62

1    allegation that alleges damages that resulted from the

2    violation of RESPA, which under your complaint, has to

3    do with your allegation that your client sent a

4    qualified request and they didn't respond.

5          So I don't think you have a specific

6    allegation in that cause of action as to how your

7    clients have been damaged as a result of the violation

8    of RESPA, which is alleged.  So you need to shore that

9    up as well.

10         I don't understand the quiet title one, and

11   so therefore I don't think it's plausible.  I think

12   you've got to state what you're trying to do there.

13   Are you arguing that the deed of trust is completely

14   void, and therefore, your clients want title quieted in

15   their name solely?  Or like in the Bain case, the Court

16   said in Bain, hey, the plaintiff here isn't saying --

17   Bain isn't saying, she's not going to pay the mortgage.

18   She is.  She's not trying to bounce the whole mortgage.

19   She's just saying, I don't understand who to pay, and I

20   think the foreclosure was wrong.

21         So I think you've got to state in that cause

22   of action, what is it your clients really want.  Or is

23   this a recast of the argument that the note and the

24   deed of trust have been irreparably split and,

25   therefore, the deed of trust is invalid.  I think you

63

1    need to say it in here because otherwise it doesn't

2    tell the defendants the claim that's being made against

3    them.

4            I would like to state what I think the

5    standard for amendment of complaints is because I think

6    it's pretty liberal.  The case I use is Cafasso v.

7    General Dynamics, 637 F3d 1047.  It's a 2011 9th

8    Circuit case which says normally when a viable case may

9    be pled, a district court should freely grant leave to

10    amend.  However, liberality in granting leave to amend

11    is subject to several limitations.  These limitations

12    include undue prejudice to the opposing party, bad

13    faith by the movant, futility and undue delay.

14            Further, the district court's discretion to

15    deny leave to amend is particularly broad where

16    plaintiff has previously amended the complaint.  In

17    this case the complaint has not been amended before.

18    There is a very important state court case that came

19    down in the interim which bears on these issues.  I

20    don't find that the defendants would be in any way

21    prejudiced by allowing an amendment to the complaint,

22    nor do I find any bad faith on the part of the

23    plaintiffs.

24            So all that remains for me to do, Mr. Jones,

25    is to ask you to give me a reasonable deadline by which

64

1        time you would file an amended complaint.

2                    MR. JONES:  30 days, Your Honor.

3                    THE COURT:  30 days it is.  Let's give it a

4        number.  If today is the 28th, Phyllis's day of

5        retirement, let's make it be the 26th of October.

6                    MS. BUCK:  Your Honor --

7                    THE COURT:  Oh, let me address that.

8                    MS. BUCK:  I was just going to say, we also

9        represent MERS.  Can we preserve that we can wait to

10       respond or otherwise answer the complaint until that

11       date has passed?

12                   THE COURT:  Has MERS not responded to the

13       initial complaint?

14                   MR. ROESCH:  That's right.  I believe there

15       were service issues.

16                   THE COURT:  Oh, any problem with that,

17       Mr. Jones?  Let's just have MERS respond to the new

18       complaint.

19                   MR. JONES:  That's fine.

20                   THE COURT:  So MERS respond to new complaint

21       only.  And I do want to say about Northwest Trustee

22       Service, Ms. Buck, that I did not look at any of the

23       issues you talked about today.  Because your motion

24       relied completely on US Bank is either the holder or

25       not.  And that's how I looked at it.  So you know, when

1    he amends the complaint, if you want to move on those

2    issues, then I'll look at them.

3           But honestly I didn't look at any of the

4    things that you talked about today enough to -- and

5    certainly, since Mr. Jones didn't have notice of what

6    you were arguing, I'm not going to pin that on him

7    either.

8           So I would like to have an order.  I guess,

9    Mr. Jones, you can give me an order, and it can be

10    simple.  The motion to dismiss is denied.  Plaintiff

11    shall file an amended complaint on or before October

12    26th, 2012.

13           MR. JONES:  It will be done, Your Honor.

14           THE COURT:  Okay.  And with that, we are at

15    recess.

16           MR. JONES:  Thank you, Your Honor.

17           * * * * * * * * * *

18

19

20

21

22

23

24

25

66

```
 1                        CERTIFICATE

 2

 3           ROBYN OLESON FIEDLER certifies that:

 4

 5           The foregoing pages represent a complete

 6      transcript of the digitally-recorded proceedings.

 7

 8           These pages constitute the original or a copy

 9      of the original transcript of the proceedings to the

10      best of my ability.

11

12           Signed and dated this 25th day of October,

13      2012.

14

15

16

17

18                        by |s| Robyn Oleson Fiedler
                          ROBYN OLESON FIEDLER,
19                        Certified Court Reporter.

20

21

22

23

24

25
```